EXHIBIT 1

U.S. Department of Justice complaint by Neil J. Gillespie alleging U.S. Judge Sheri Polster Chappell and U.S. Magistrate Judge Philip R. Lammens violated 18 U.S.C. § 241, Conspiracy against rights, submission number **665324-SWD**.

mail.com

# Thank you for submitting a report to the Civil Rights Division

**From:** "DOJ Civil Rights - Do Not Reply" <civilrightsdonotreply@mail.civilrights.usdoj.gov>
**To:** NeilGillespie@mail.com
**Date:** Sep 16, 2025 1:58:53 PM

U.S. Department of Justice
Civil Rights Division
civilrights.justice.gov

*Please do not reply to this email. This is an unmonitored account.*

Thank you for submitting a report to the Civil Rights Division. Please save your record number for tracking. Your record number is: 665324-SWD.

If you reported an incident where you or someone else has experienced or is still experiencing physical harm or violence, or are in immediate danger, please call 911 and contact the police.

## What to Expect

### 1. We review your report

Our specialists in the Civil Rights Division carefully read every report to identify civil rights violations, spot trends, and determine if we have authority to help with your report.

### 2. Our specialists determine the next steps

We may decide to:

- Open an investigation or take some other action within the legal authority of the Justice Department.
- Collect more information before we can look into your report.
- Recommend another government agency that can properly look into your report. If so, we'll let you know.

In some cases, we may determine that we don't have legal authority to handle your report and will recommend that you seek help from a private lawyer or local legal aid organization.

### 3. When possible, we will follow up with you

We do our best to let you know about the outcome of our review. However, we may not always be able to provide

you with updates because:

- We're actively working on an investigation or case related to your report.
- We're receiving and actively reviewing many requests at the same time.

If we are able to respond, we will contact you using the contact information you provided in this report. Depending on the type of report, response times can vary. If you need to reach us about your report, please refer to your report number when contacting us. This is how we keep track of your submission.

## What You Can Do Next

### 1. Contact local legal aid organizations or a lawyer if you haven't already.

Legal aid offices or members of lawyer associations in your state may be able to help you with your issue.

- Legal Services Corporation (or Legal Aid Offices),to help you find a legal aid lawyer in your area visit www.lsc.gov/find-legal-aid

### 2. Learn More

Visit civilrights.justice.gov to learn more about your rights and see examples of violations we handle.

---

*Please Note: Each week, we receive hundreds of reports of potential violations. We collect and analyze this information to help us select cases, and we may use this information as evidence in an existing case. We will review your letter to decide whether it is necessary to contact you for additional information. We do not have the resources to follow-up on every letter.*

### Contact

civilrights.justice.gov

U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

(202) 514-3847
1-855-856-1247 (toll-free)
Telephone Device for the Deaf
(TTY) (202) 514-0716

Gregory W. Kehoe
United States Attorney
Middle District of Florida
U.S. Attorney's Office
400 North Tampa Street
Suite 3200
Tampa, FL 33602
Office: 813-274-6000
Email: gregory.kehoe@usdoj.gov

September 16, 2025

RE: Civil Rights Complaint against Sheri Polster Chappell, United States District Judge
*Neil J. Gillespie v. Wesley Wilcox, Marion County Supervisor of Elections, et al*,
U.S. District Court, Middle District Florida, Ocala Division, Case 5:25-cv-486-SPC-PRL

Dear U.S. Attorney Kehoe:

District Judge Sheri Polster Chappell has violated my civil rights by failing to rule on my amended complaint (DOC 10) filed August 12, 2025 for my right to vote in the City of Ocala, Florida, and to appear on the ballot as a candidate for Mayor. The election is today.

My amended complaint further alleges the Special Election in the City of Ocala being held today September 16, 2025 violates Florida Election Law thereby affecting every voter in the City of Ocala. My amended complaint (DOC 10) is attached. The complaint alleges violation of USC Title 52, Voting and Elections, FRCP 57 Declaratory Judgment, 28 U.S.C. § 2201 Creation of remedy, FRCP 65 Injunctions and Restraining Orders, FRCP 5.1 Constitutional Challenge. The court has supplemental jurisdiction for Florida Election Law under 28 U.S.C. § 1367.

Judge Chappell has not ruled on my amended application to proceed in district court without prepaying fees or costs. (DOC 3). The court has refused to issue summons. (DOC 7). The court has ignored my notice under FRCP 73 and 28 USC 636 that I do not consent to a trial or rulings by a U.S. Magistrate Judge. (DOC 5). U.S. Magistrate Judge Philip R. Lammens denied (DOC 9) my motion (DOC 6) to e-file on the Court's CM/ECF system. Judge Chappell wrongly denied my objection to rulings by a U.S. Magistrate Judge, and wrongly prohibited me from filing on the Court's CM/ECF system. (DOC 13).

Judge Chappell and Magistrate Lammens violated 18 U.S.C. § 241, Conspiracy against rights:

> "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same;..."
>
> https://www.law.cornell.edu/uscode/text/18/241

Judge Chappell has also engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts. (28 U.S.C. § 351).

Civil Rights Complaint against Sheri Polster Chappell, United States District Judge

Judge Chappell was appointed by President Obama. I have made legal filings showing Donald J. Trump, a nonlawyer, was the only major constitutionally qualified candidate in the 2016, 2020, and 2024 presidential elections, because lawyers admitted to practice law are officers of the court and members of the judicial branch of government (Ex parte Garland, 71 U.S. 333 (1866), and cannot under the separation of powers doctrine serve in an elected executive branch office such as president, or vice president, an elected legislative branch office, President of the Senate. See, https://neil2024.blogspot.com/2025/02/donald-j-trump-president-of-united.html

> "Lawyers have turned our political system into a never-ending legal contest of lawsuits and court battles, investigations, subpoenas, depositions, and impeachment threats and trials. This is the Democratic Party. Bill Clinton, lawyer. Hillary Clinton, lawyer. Barack Obama, lawyer. Michelle Obama, lawyer. Joe Biden, Lawyer. Kamala Harris, lawyer. A Republican lawyer corrupting our political system is Ron DeSantis, a member of The Florida Bar."

Apparently President Obama facilitated the Russiagate hoax against President Trump.

> "Director of National Intelligence Tulsi Gabbard contends that new declassified documents show that former President Barack Obama engaged in the plot to create the lie that President Donald Trump had conspired with Russia to steal the 2016 presidential election." - Real Clear Politics, by David Harsanyi, July 25, 2025 (copy attached)

Finally, The Federal Election Commission has not provided records in response to my Freedom of Information Act (FOIA) request of May 9, 2025. U.S. Congresswoman Kat Cammack has not been able to assist me either, see the attached documents. Sarah Thompson, an associate of mine who died May 12, 2021 in Ocala, Florida, was named in my emails to the Commission. I will provide evidence showing the death of Sarah Thompson was a politically motivated homicide.

Sincerely,

Neil J. Gillespie
2801 SW College Rd., STE 3
Ocala, FL 34474
Tel: 352-239-9037
Email: Neil4OcalaMayor@yahoo.com
Email: Neil4Justice@yahoo.com
Email: NeilGillespie@mail.com (Florida Portal Eservice)

Enclosures

Service list

Service List September 16, 2025

Gregory W. Kehoe
United States Attorney
Middle District of Florida
U.S. Attorney's Office
400 North Tampa Street
Tampa, FL 33602
Office: 813-274-6000
Email: gregory.kehoe@usdoj.gov

U.S. Department of Justice
Civil Rights Division, MDFL
Email: USAFLM.Civil.Rights@usdoj.gov

Frank Talbot
Assistant U.S. Attornry
U.S. Attorney's Office
300 N. Hogan Street
Jacksonville, FL 32202
Office: 904-301-6284
Email: frank.m.talbot@usdoj.gov

Cord Byrd, Secretary of State
Florida Department of State
Office of the General Counsel
1st Floor, R.A. Gray Building
500 S. Bronough Street
Tallahassee, Florida 32399-025
DOS.GeneralCounsel@DOS.MyFlorida.com
ElecRecords@DOS.MyFlorida.com

Wesley Wilcox, CERA
Supervisor of Elections
Marion County, Florida
981 NE 16th Street
Ocala, Florida 34470
Phone: 352.620.3290
Fax: 352.620.3286
Email: wwilcox@votemarion.gov

Marissa Duquette, General Counsel
Marion County Sheriff's Office
mduquette@marionso.com
Colbert, Brittany
bcolbert@marionso.com
Legal@marionso.com

Chief Mike Balken
mbalken@ocalapd.org
Ocala Police Department

Angel B. Jacobs, CMC
Ocala City Clerk
110 SE Watula Avenue
Tel: 352-629-8403
Fax: 352-629-5208
Email: ajacobs@ocalafl.org

William Sexton, City Attorney
City if Ocala, Florida
110 SE Watula Ave
Ocala, FL 34471-2180
Office: 352-401-3972
Email: wsexton@ocalafl.gov

Orlando Sentinel Editorial Board
insight@orlandosentinel.com

Ocala Star-Banner, Austin Miller
austin.miller@starbanner.com

Ocala Gazette, Jennifer Hunt Murty
jennifer@ocalagazette.com
tips@ocalagazette.com

Ocala-News, Meta Minton
metaminton@aol.com,
mm@villages-news.com
jd@villages-news.com

**U.S. District Court**
**Middle District of Florida (Ocala)**
**CIVIL DOCKET FOR CASE #: 5:25-cv-00486-SPC-PRL**

Gillespie v. Wesley Wilcox, Marion County Supervisor of Elections et al
Assigned to: Judge Sheri Polster Chappell
Referred to: Magistrate Judge Philip R. Lammens
Demand: $1,000,000
Cause: 42:1973 Voting Rights Act

Date Filed: 08/05/2025
Jury Demand: None
Nature of Suit: 441 Civil Rights: Voting
Jurisdiction: Federal Question

**Plaintiff**

**Neil Joseph Gillespie** represented by **Neil Joseph Gillespie**
2801 SW College Road
Suite 3
Ocala, FL 34474
PRO SE

V.

**Defendant**

**Wesley Wilcox, Marion County Supervisor of Elections**
*Official Capacity*

**Defendant**

**Mayor Ben Marciano**
*Official Capacity*

**Defendant**

**City Attorney William E. Sexton**
*Official Capacity*

**Defendant**

**City Clerk Angel B. Jacobs**
*Official Capacity*

**Defendant**

**City Council Kristen Dreyer**
*Official Capacity*

**Defendant**

**City Council Ira Bethea , Sr.**
*Official Capacity*

**Defendant**

**City Council James Hilty**
*Official Capacity*

**Defendant**

**City Council Jay Musleh**
*Official Capacity*

**Defendant**

**Fl Sec. of State Cord Byrd**
*Official Capacity*

**Defendant**

**The Florida Department of State**

**Defendant**

**Governor Ron DeSantis**
*Official Capacity*

**Defendant**

**City Council Barry Mansfield**
*Official Capacity*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/05/2025 | 1 | COMPLAINT against Wesley Wilcox, Marion County Supervisor of Elections filed by Neil Joseph Gillespie. (No service copies provided) (Attachments: # 1 Exhibit, # 2 Civil Cover Sheet)(MGB) (Entered: 08/07/2025) |
| 08/05/2025 | 2 | MOTION to Proceed In Forma Pauperis by Neil Joseph Gillespie. (MGB) Motions referred to Magistrate Judge Philip R. Lammens. (Entered: 08/07/2025) |
| 08/06/2025 | 3 | Amended MOTION to Proceed In Forma Pauperis by Neil Joseph Gillespie. (Attachments: # 1 Supplement) (MGB) Motions referred to Magistrate Judge Philip R. Lammens. (Entered: 08/08/2025) |
| 08/06/2025 | 4 | SUPPLEMENT re 1 Complaint by Neil Joseph Gillespie. (MGB) (Entered: 08/08/2025) |
| 08/07/2025 | 5 | NOTICE of Non-Consent (Objection) to U.S. Magistrate Judge by Neil Joseph Gillespie. (MGB) Modified docket text on 8/8/2025 (JG). (Entered: 08/08/2025) |
| 08/07/2025 | 6 | MOTION for Miscellaneous Relief, specifically to E-file by Neil Joseph Gillespie. (MGB) Motions referred to Magistrate Judge Philip R. Lammens. (Entered: 08/08/2025) |
| 08/07/2025 | 7 | PROPOSED summons to be issued by Neil Joseph Gillespie. (MGB) (Entered: 08/08/2025) |
| 08/11/2025 | 8 | **NOTICE to pro se litigant. Signed by Magistrate Judge Philip R. Lammens on 8/11/2025. (MGB)** (Entered: 08/11/2025) |
| 08/11/2025 | 9 | **ORDER denying 6 Plaintiff's Motion to E-File. See Order for details. Signed by Magistrate Judge Philip R. Lammens on 8/11/2025. (JMA)** (Entered: 08/11/2025) |
| 08/12/2025 | 10 | AMENDED COMPLAINT against Ira Bethea, Sr, Cord Byrd, Ron DeSantis, Kristen Dreyer, James Hilty, Angel B. Jacobs, Barry Mansfield, Ben Marciano, Jay Musleh, William E. Sexton, The Florida Department of State, Wesley Wilcox, Marion County Supervisor of Elections filed by Neil Joseph Gillespie. Related document: 1 Complaint filed by Neil Joseph Gillespie.(MGB) (Additional attachment(s) added on 8/12/2025: # 1 Exhibit, # 2 Civil Cover Sheet) (MGB). (Entered: 08/12/2025) |
| 08/12/2025 | 11 | MOTION for Miscellaneous Relief, specifically For an Article III Judge by Neil Joseph Gillespie. (MGB) Motions referred to Magistrate Judge Philip R. Lammens. (Entered: 08/12/2025) |
| 08/12/2025 | 12 | DECLARATION of by Neil Joseph Gillespie. (Attachments: # 1 Exhibit)(MGB) (Entered: 08/12/2025) |
| 08/13/2025 | 13 | **OPINION and ORDER Overruling 11 Plaintiff's Objection. Signed by Judge Sheri Polster Chappell on 8/13/2025. (LF)** (Entered: 08/13/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 09/16/2025 09:43:50 | | | |
| PACER Login: | NeilGillespie | Client Code: | |
| Description: | Docket Report | Search Criteria: | 5:25-cv-00486-SPC-PRL |
| Billable Pages: | 2 | Cost: | 0.20 |

**United States Department of Justice**
**Civil Rights Division**
civilrights.justice.gov

# Thank you for submitting a report to the Civil Rights Division.

## Report successfully submitted

*Please save your record number for tracking.*

Your record number is: **665324-SWD**

Save report

---

## What to expect

### ① We review your report

Our specialists in the Civil Rights Division carefully read every report to identify civil rights violations, spot trends, and determine if we have authority to help with your report.

### ② Our specialists determine the next step

We may decide to:
**Open an investigation** or take some other action within the legal authority of the Justice Department.
**Collect more information** before we can look into your report.
**Recommend another government agency** that can properly look into your report. If so, we'll let you know.

In some cases, we may determine that we don't have legal authority to handle your report and will recommend that you seek help from a private lawyer or local legal aid organization.

### ③ When possible, we will follow up with you

We do our best to let you know about the outcome of our review. However, we may not always be able to provide you with updates because:
We're actively working on an investigation or case related to your report.
We're receiving and actively reviewing many requests at the same time.

If we are able to respond, we will contact you using the contact information you provided in this report. Depending on the type of report, response times can vary. If you need to reach us about your report, please refer to your report number when contacting us. This is how we keep track of your submission.

# What you can do next

## ① Contact local legal aid organizations or a lawyer if you haven't already

Legal aid offices or members of lawyer associations in your state may be able to help you with your issue.
Legal Services Corporation (or Legal Aid Offices), to help you find a legal aid lawyer in your area visit www.lsc.gov/find-legal-ai

## ② Get help immediately if you are in danger

If you reported an incident where you or someone else has experienced or is still experiencing physical harm or violence, or are in immediate danger, please call 911 and contact the police.

# Your submission

## Contact

### Contact information

**Your name**

Neil Gillespie

**Email address**

NeilGillespie@mail.com

**Phone number**

+13522399037

**Address**

2801 SW College Rd
STE 3
Ocala, Florida 34474

**Are you now or have ever been an active duty service member?**

No

## Primary concern

### What is your primary reason for contacting the Civil Rights Division?

Voting rights or ability to vote affected

---

## Location

### Where did this happen?

### Organization name
U.S. District Court, M.D. Florida, Ocala Division

### Address
207 Northwest Second Street
-
Ocala, Florida

---

## Personal characteristics

### Do you believe any of these personal characteristics influenced why you were treated this way?

Other reason

---

## Date

### When did this happen?

9/16/2025

---

## Personal description

### In your own words, describe what happened

District Judge Sheri Polster Chappell has violated my civil rights by failing to rule on my amended complaint (DOC 10) filed August 12, 2025 for my right to vote in the City of Ocala, Florida, and to appear on the ballot as a candidate for Mayor. The election is today.
My amended complaint further alleges the Special Election in the City of Ocala being held today September 16, 2025 violates Florida Election Law thereby affecting every voter in the City of Ocala. My amended complaint (DOC 10) is attached. The complaint alleges violation of USC Title 52, Voting and Elections, FRCP 57 Declaratory Judgment, 28 U.S.C. § 2201 Creation of remedy, FRCP 65 Injunctions and Restraining Orders, FRCP 5.1 Constitutional Challenge. The court has supplemental jurisdiction for Florida Election Law under 28 U.S.C. § 1367.
Judge Chappell has not ruled on my amended application to proceed in district court without prepaying fees or costs. (DOC 3). The court has refused to issue summons. (DOC 7). The court has ignored my notice under FRCP 73 and 28 USC 636 that I do not consent to a trial or rulings by a U.S. Magistrate Judge. (DOC 5). U.S. Magistrate Judge Philip R. Lammens denied (DOC 9) my motion (DOC 6) to e-file on the Court's CM/ECF system. Judge Chappell wrongly denied my objection to rulings by a U.S. Magistrate Judge, and wrongly prohibited me from filing on the Court's CM/ECF system. (DOC 13).
Judge Chappell and Magistrate Lammens violated 18 U.S.C. § 241, Conspiracy against rights:
"If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State

"If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same;..." https://www.law.cornell.edu/uscode/text/18/241

Judge Chappell has also engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts. (28 U.S.C. § 351).

Judge Chappell was appointed by President Obama. I have made legal filings showing Donald J. Trump, a nonlawyer, was the only major constitutionally qualified candidate in the 2016, 2020, and 2024 presidential elections, because lawyers admitted to practice law are officers of the court and members of the judicial branch of government (Ex parte Garland, 71 U.S. 333 (1866), and cannot under the separation of powers doctrine serve in an elected executive branch office such as president, or vice president, an elected legislative branch office, President of the Senate. See, https://neil2024.blogspot.com/2025/02/donald-j-trump-president-of-united.html

The Federal Election Commission has not provided records in response to my Freedom of Information Act (FOIA) request of May 9, 2025. U.S. Congresswoman Kat Cammack has not been able to assist me either, see the attached documents. Sarah Thompson, an associate of mine who died May 12, 2021 in Ocala, Florida, was named in my emails to the Commission. I will provide evidence showing the death of Sarah Thompson was a politically motivated homicide.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

NEIL JOSEPH GILLESPIE,

Plaintiff,

vs. CASE No. 5:25-cv-486-SPC-PRL

WESLEY WILCOX, in his official capacity as
Marion County Supervisor of Elections, Florida,
BEN MARCIANO, in his official capacity as
Mayor of the City of Ocala, Florida
WILLIAM E. SEXTON, in his official capacity as
City Attorney, City of Ocala, Florida,
ANGEL B. JACOBS, in her official capacity as
City Clerk, City of Ocala, Florida,
KRISTEN DREYER, in her official capacity as
President, City Council, City of Ocala, Florida,
IRA BETHEA, Sr, in his official capacity as
President Pro-Tem, City Council, City of Ocala, Florida,
BARRY MANSFIELD, in his official capacity as
City Council Member, City of Ocala, Florida,
JAMES HILTY, Sr, in his official capacity as
City Council Member, City of Ocala, Florida,
JAY MUSLEH, in his official capacity as
City Council Member, City of Ocala, Florida,
CORD BYRD, in his official capacity as
Florida Secretary of State, the FLORIDA
DEPARTMENT OF STATE,
RON DESANTIS, in his official capacity
as Governor of Florida,

FILED - USDC - FLMD - OCA
AUG 12 2025 PM12:25

Defendants.
_______________________________________/

PLAINTIFF'S FIRST AMENDED COMPLAINT

The Plaintiff, Neil Joseph Gillespie ("Gillespie"), a nonlawyer appearing pro se, states:

1. Gillespie filed this action 8 days ago as a voting rights case under USC Title 52, Voting and Elections. Process has not been issued by the Court. The complaint has not been served.

2. Pursuant to FRCP 15, Gillespie hereby files his First Amended Complaint, adds Defendants, seeks declaratory and injunctive relief, and makes a constitutional challenge. This First Amended Complaint makes no demand for money damages. Gillespie filed this action for the right to vote where he works and lives, and to run for the office of mayor.

Jurisdiction and Venue

3. Federal question jurisdiction arises under Article III, Section 2, U.S. Constitution, U.S.C. Title 52 Voting and Elections, FRCP 57 Declaratory Judgment, 28 U.S.C. § 2201 Creation of remedy, FRCP 65 Injunctions and Restraining Orders, FRCP 5.1 Constitutional Challenge.

4. Venue is proper in the Ocala Division under 28 USC 1391(b)(1). The Plaintiff resides in the City of Ocala, the cause of action rises in the City of Ocala, 9 of 11 Defendants are located in Ocala, and relief is sought in a Special Election in the City of Ocala.

The Parties

5. Plaintiff Gillespie is a resident of the City of Ocala, age 69, living and working since January 2, 2023, at 2801 SW College Rd, STE 3, Ocala, Florida, 34474. Gillespie has resided in Marion County, Florida for 20 years. On May 19, 2022 Gillespie was evicted at gunpoint after foreclosure of his home on a federal HECM reverse mortgage. Gillespie was homeless from May 19, 2022 until January 2, 2023, when he rented and occupied space in an office condominium in the Starting Gate Executive Office. Gillespie relies on Social Security retirement income to survive and is unable obtain other adequate housing. The office is home to Justice Network, a fictitious name owned by Gillespie. Justice Network is engaged in advocacy, education, news gathering and dissemination, and helping people fight injustice. Gillespie's clients are poor, disabled, forgotten and dammed; and his causes unpopular with the local authorities, including:

- A 15 year-old African-American schoolgirl in a 2016 racial incident at West Port High School, harassed by white supremacists waving Confederate flags in the school. Gillespie is a critic of Neo-Confederates, and the historic lynching of 19 people in Marion County.
- Sarah Thompson, age 35, who died in 2021 of a drug overdose in the hotel room of a convicted drug trafficker at the Stay & Save Extended Stay Hotel in the City of Ocala. Gillespie has evidence that Sarah's death may have been a politically motivated homicide.
- Harold Minnis, age 63, a man on probation with End-Stage Kidney Disease (ESKD) who's benefits were blocked, was denied legal counsel, and denied voluntary surrender at the MCJ. See Florida v. Harold Minnis, Case No. 2025-CF-0383, Marion County Circuit Court.
- Ronnie Cooper, age 63, an amputee in a wheelchair since age 19, pled NGI, convicted at trial without legal counsel, sentenced to life in prison for robbery of a vehicle at a gas station. See State v. Cooper, Case No. 2019-CF-1050, Marion County; Fifth DCA Appeal 5D2024-3513.

Gillespie is now and has been a No Party Affiliation (NPA) candidate for public office.

6. Defendant WESLEY WILCOX ("SOE Wilcox") is the Marion County Supervisor of Elections, Marion County Election Center, 981 NE 16th St., Ocala, FL 34470.

7. Defendant BEN MARCIANO, is the Mayor of the City of Ocala, 110 SE Watula Avenue, Ocala, FL 34471.

8. Defendant WILLIAM E. SEXTON, is the City Attorney, City of Ocala, 110 SE Watula Avenue, Ocala, FL 34471, Florida Bar ID 37197.

9. Defendant ANGEL B. JACOBS, is the City Clerk, City of Ocala, 110 SE Watula Avenue, Ocala, FL 34471.

10. Defendant KRISTEN DREYER, is President, City Council, City of Ocala, 110 SE Watula Avenue, Ocala, FL 34471.

11. Defendant IRA BETHEA, Sr, is President Pro-Tem, City Council, City of Ocala, 110 SE Watula Avenue, Ocala, FL 34471.

12. Defendant BARRY MANSFIELD, is a City Council Member, City of Ocala, 110 SE Watula Avenue, Ocala, FL 34471.

13. Defendant JAMES HILTY, Sr, is a City Council Member, City of Ocala, 110 SE Watula Avenue, Ocala, FL 34471.

14. Defendant JAY MUSLEH, is a City Council Member, City of Ocala, 110 SE Watula Avenue, Ocala, FL 34471.

15. Defendant CORD BYRD, is the Secretary of State, the Florida Department of State (DOS), 500 South Bronough Street, Tallahassee, Florida 32399-0250, Florida Bar ID 134406.

16. Defendant RON DESANTIS, is the Governor of Florida, Executive Office of Governor Ron DeSantis, 400 S Monroe St., Tallahassee, FL 32399, Florida Bar ID 15976. (Exhibit 6).

The Facts

17. Gillespie is a candidate who failed to qualify on July 11, 2025 for the General Election set for September 16, 2025 for election as mayor the City of Ocala, Marion County, Florida.

18. Gillespie is a candidate who failed to qualify on July 18, 2025 for a Special Election set for September 16, 2025 for election as mayor of the City of Ocala, Marion County, Florida.

19. In the City of Ocala, Marion County, Florida, the qualifying period ended at Noon on Friday July 11, 2025, for the General Election September 16, 2025 with none of the seven candidates qualifying. Per the City Charter and the Code of Ordinances, the offices are again considered vacant and must be filled through a Special Election. Pursuant to Fla. Stat. 100.141, Notice of special election to fill any vacancy in office, the Governor, after consultation with the Secretary of State, is required to issue an order, as required by Fla. Stat. 100.141(1):

> 100.141 Notice of special election to fill any vacancy in office.—
> (1) Whenever a special election is required to fill any vacancy in office, the Governor, after consultation with the Secretary of State, shall issue an order declaring on what day the election shall be held and deliver the order to the Department of State.
>
> (2) The Department of State shall prepare a notice stating what offices are to be filled in the special election, the dates set for the special primary election and the special election, the dates fixed for qualifying for office, the dates fixed for qualifying by the petition process pursuant to s. 99.095, and the dates fixed for filing campaign expense statements.
>
> (3) The department shall deliver a copy of such notice to the supervisor of elections of each county in which the special election is to be held. The supervisor shall have the

> notice published two times in a newspaper of general circulation in the county at least 10 days before the first day set for qualifying for office or, for at least 10 days before the first day set for qualifying for office, publish notice on the county's website as provided in s. 50.0311 or on the supervisor's website.

Pursuant to Fla. Stat. 100.151 Special elections called by local governing bodies, notice:

> 100.151 Special elections called by local governing bodies, notice.— County commissioners or the governing authority of a municipality shall not call any special election until notice is given to the supervisor of elections and his or her consent obtained as to a date when the registration books can be available.

20. Contrary to the above cited Florida election law, Ocala Mayor Ben Marciano issued a Proclamation signed and sealed on July 14, 2025 (Exhibit 1) that knowingly violated the law and authority of the Governor and Secretary of State under Fla. Stat. 100.141(1) to issue an order declaring on what day the special election shall be held. No notice was prepared by the Department of State (DOS) under 100.141(2) for the offices to be filled in the special election. The DOS did not set the dates for the special election and qualifying for the special election, and no dates were fixed by the DOS for filing campaign expense statements; the DOS failed under 100.141(3) to deliver a copy of the notice to SEO Wilcox, and no DOS notice was published two times in a newspaper of general circulation giving 10 days notice before the first day set for qualifying for office, and publish the notice per 50.0311 on the supervisor's website.

21. Instead, Mayor Marciano's Proclamation of July 14, 2025 that purports to comply with the requirements of election law actually violates the law. The Proclamation (Exhibit 1) may correctly recite the need for a special election, **then goes off the rails into election fraud because the Department of State, not the City of Ocala, is authorized to notify Wesley Wilcox, Marion County Supervisor of Elections, of a Special Election**. Here is the violation:

> WHEREAS, pursuant to the requirements of Section 100.151, Florida Statutes, the City of Ocala has notified the Marion County Supervisor of Elections of its intent to hold a Special Election on Tuesday, September 16, 2025, and has obtained from him his consent for the same; and

WHEREAS, following issuance of this Proclamation, the City Clerk of the City of Ocala, Florida shall ensure that this Proclamation and the Special Election called for herein are properly advertised in accordance with the requirements of the *Charter* and *Code of Ordinances, Ciry of Ocala, Florida* as well as Chapter 100, *Florida Statutes,* and any other relevant provisions of Florida law.

NOW THEREFORE, by virtue of the authority vested in me as Mayor of the City of Ocala, Florida, I hereby proclaim that:

1. The recitals outlined above are ratified as true and correct and are adopted and incorporated herein as part and parcel of this Proclamation.

2. A Special Election, pursuant to the Charter and Code of Ordinances, Ciry of Ocala, Florida and in accordance with Chapter 100, Florida Statutes, and other relevant provisions of Florida law, shall be held in and for the City of Ocala, Florida on Tuesday, September 16, 2025;

3. A Run-Off Election, if necessary, for the aforementioned Special Election, shall be held on Tuesday, November 18, 2025.

4. The aforementioned Special Election shall be for the vacant seats for the following Offices of the City of Ocala, Florida:

A. Mayor;
B. City Council, District I;
C. City Council, District III; and
D. City Council, District V.

5. The qualifying dates for the aforementioned Special Election shall be established by the City Council of the City of Ocala, Florida at their regularly-scheduled City Council meeting on Tuesday, July 15, 2025 at 4:00 P.M. in the City Council Chambers on the Second Floor of City Hall, located at 110 S.E. Watula Avenue, Ocala, Florida 34471.

IN WITNESS WHEREOF, I have hereunto set my hand and caused to be affixed hereto the Seal of the City of Ocala, Florida, this 14th day of July, 2025.

BEN MARCIANO, as Mayor
City of Ocala, Florida

22. The forgoing election fraud was confirmed by the Minutes of the Ocala City Council meeting July 15, 2025 appearing at <u>Exhibit 2</u>. The Defendants present on July 15, 2025:

Mayor Ben Marciano
Pro Tem Ire J. Bethea Sr
Council Member James P. Hilty Sr

Council Member Barry Mansfield
Council Member Jay A. Musleh
Council President Kristen M. Dreyer
City Attorney William E. Sexton
City Clerk, Angel Jacobs
SOE Wilcox

5. Presentations
15. City Attorney's Report

15a. Approve the Special Election Qualifying Procedures and Schedule
City Attorney Sexton discussed the approval of the special election qualifying procedures and schedule. The City is proposing to hold the special election on September 16, 2025, which is the same date of the original election. Mayor Marciano issued a proclamation calling for a special election to be held on September 16, 2025. The City is requesting City Council approve a qualifications period from 8:00 a.m. Wednesday, July 16, 2025, to 12:00 p.m. noon, Friday July 18, 2025, and qualification requirements used for the general election

Mark Clark, 4989 SE, 5th Avenue, Ocala, FL, expressed concern the proposed special election qualifying procedures negatively impact City Council's ability to vote, due to conflict of interest.

Mr. Sexton confirmed Council Member Hilty does not need to be recused from the vote. Furthermore, he clarified the qualification regulations.
There being no further discussion the motion carried by roll call vote.

RESULT: APPROVED
MOVER: James P. Hilty Sr
SECONDER: Ire J. Bethea Sr
AYE: Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer

23. The above cited election fraud was confirmed by the Affidavit of Publication July 23, 2025 (Exhibit 3). The Affidavit of Publication for the Special Election, Mayor Ben Marciano's Proclamation of July 14, 2025, was only published one time on July 23, 2025 in the Ocala Star-Banner, a date five days after the qualifying period ended on July 18, 2025. Election law requires publication of the notice two times, and 10 days prior to the end of the qualifying period. The Affidavit of Publication is addressed to Pamela Omichinski, City of Ocala Clerk's Office, 110 SE Watula Avenue, Ocala, FL 34471.

24. The forgoing election fraud was confirmed in Press Releases by the City of Ocala:

- Press Release July 14, 2025: City of Ocala Announces Special Election (Exhibit 4)

  In part: "Following a thorough review by the City Clerk and City Attorney, in consultation with the Marion County Supervisor of Elections, it was determined that none of the candidates strictly complied with the requirements of Florida law as it pertains to the payment of their qualifying fee."

  "The Mayor has now issued a new Proclamation on July 14, officially calling for the Special Election."

  "The City Council will establish the dates, times, procedures, and requirements for the qualifying period for the Special Election during its regularly scheduled meeting on Tuesday, July 15, at 4 p.m. at Ocala City Hall (110 SE Watula Ave.)."

- Press Release July 18, 2025: City of Ocala Election Back on Track; Seven Candidates Qualify for Special Election (Exhibit 5)

  "OCALA, Fla. (July 18, 2025) – The City of Ocala has confirmed the candidates who have officially qualified for the upcoming Special Election scheduled for Tuesday, Sept. 16. The Special Election will fill the offices of Mayor, City Council District 1, City Council District 3, and City Council District 5.

  The qualifying period for the Special Election concluded at noon today following a thorough review of each candidate's qualification materials by the City Clerk and City Attorney, as well as petition verification conducted by the Marion County Supervisor of Elections Office…"

25. Therefore, the Special Election set by SEO Wilcox for September 16, 2025 in the City of Ocala failed to comply with sections 100.151 and 100.141 of the Florida Statutes, and notice thereof was NOT published two times in a newspaper of general circulation in the county at least 10 days before the first day set for qualifying for office or, for at least 10 days before the first day set for qualifying for office, publish notice on the county's website as provided in s. 50.0311 or on the supervisor's website. The record shows notice of the Special Election was only published one time, on July 23, 2025 in the Ocala Star-Banner, five days AFTER the qualifying period closed on July 18, 2025 for the Special Election set for September 18, 2025.

26. WHEREFORE, pursuant to the provisions of Title 52 of the U.S.C., Voting and Elections, the Court must strike the Special Election as a fraud on the voters of the City of Ocala.

GILLESPIE SEEKS DECLARATORY JUDGMENT - RULE 57 AND 28 USC 2201
To register to vote in the City of Ocala, where he works and lives:
2801 SW College Rd., STE 3, Ocala, Florida 34474

27. Gillespie is currently registered to vote. SOE Wilcox assigned Gillespie's voting address as the Marion County Election Center, 981 NE 16th St, Ocala, FL 34470. SOE Wilcox has repeatedly refused to register Gillespie to vote where he works and lives since January 2, 2023 in the City of Ocala at 2801 SW College Rd, STE 3, Ocala, Florida, 34474.

28. Gillespie's voter registration at the Marion County Election Center, 981 NE 16th St., Ocala, FL 34470, prevents him from voting or participating in City of Ocala elections, according to SOE Wilcox. Recently Gillespie's voter registration, *inter alia*, prevented him from qualifying as a candidate in the City of Ocala General Election and Special Election for mayor.

29. On July 28, 2025 Gillespie filed a DS-DE 34 complaint with the Florida Department of State, Division of Elections, alleging SOE Wilcox has willfully refused or willfully neglected to perform his duty to register Gillespie to vote in the City of Ocala, Florida, in violation of Fla. Stat. s. 104.051, Violations; neglect of duty; corrupt practices. The DOS has not responded to, or acknowledged Gillespie's complaint, and he now knows why: The Governor, the Secretary and the DOS are part of the election fraud concocted by SEO Wilcox, and City of Ocala Defendants described in this First Amended Complaint.

30. Gillespie believes a more likely response may come from Gov. DeSantis and his election police force: Lawfare, in violation of 18 U.S.C. § 241 - Conspiracy against rights:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same;...

https://www.law.cornell.edu/uscode/text/18/241

31. On Friday August 1, 2025, Gillespie hand-delivered a letter and voter registration application to SOE Wilcox. (DOC 1-1, pages 8-22). The application states in relevant part:

> Wesley Wilcox, CERA
> Supervisor of Elections
> Marion County, Florida
> 981 NE 16th Street
> Ocala, Florida 34470
> Phone: 352.620.3290
> Fax: 352.620.3286
> Email: wwilcox@votemarion.gov
>
> August 1, 2025
>
> VIA HAND DELIVERY, FAX and EMAIL
>
> Dear Mr. Wilcox:
>
> Enclosed is your letter dated "July 2025" where you wrote in relevant part:
>
> > Your voter registration application was received incomplete and could not be processed because it was missing some of the information required by law. The post office did not recognize your address as a residential address.
>
> Mr. Wilcox, Florida law does not require the post office to recognize my address as a residential address. Therefore, enclosed is another application to register to vote at 2801 SW College Rd, STE 3, Ocala, FL 34474. Also enclosed:
>
> 1. My Declaration of Domicile recorded with the Marion County Clerk and Comptroller, showing my legal address where I live, 2801 SW College Rd., STE 3, Ocala, FL 34474.
>
> 2. A 3 page publication by the Florida Division of Elections, Voter Residency In Florida, *DE Reference Guide 0003 (Updated 06-2019; supersedes all prior versions)*. Once again, Florida law does not require the post office to recognize my address as a residential address. See paragraph 1 of the enclosed publication, the last sentence:
>
> > A business address is not a satisfactory legal residential address. However, although not the rule, if the person is able to prove residence there despite the zoning ordinance, a fact-finding body could determine that the business address is the person's legal residential address. Footnote 4: Andrews v. Hartzog, Case No. 38-2008-CA-000032 (8th Cir. Levy County, Florida 2008)
>
> My legal address, 2801 SW College Rd, STE 3, Ocala, Florida 34474, is an office condo zoned B2 according to the Marion County Property Appraiser (MCPA) property card.
>
> B2 zoning means COMMUNITY BUSINESS, according to the MCPA zoning code descriptions. The City of Ocala Municode for B2 Community Business zoning, Sec. 122-

622 Permitted principal uses, shows my use as an Residence Office is permitted without exception in the community business (B-2) district. There are additional residential uses permitted in B2, but for now I rely upon Sec. 122-622 - Permitted principal uses. (1) Residential uses, a. Residential operation, 5. Residence—Office.



Neil J. Gillespie at 2801 SW College Rd., STE 3, Ocala, FL 34474

Please see attached my fictitious name certification for Justice Network. The Florida Department of State certified that JUSTICE NETWORK is a Fictitious Name registered with the Department of State on January 25, 2018. The Registration Number of this Fictitious Name is G18000014506. The certification was signed and sealed by Secretary of State Cord Byrd on September 9, 2023. Secretary Byrd further certified as follows: "I further certify that said Fictitious Name Registration is active. I further certify that said Fictitious Name Registration filed a renewal on September 7, 2023, and expires on December 31, 2028."

> Owner Information
> GILLESPIE, NEIL JOSEPH
> 2801 SW COLLEGE RD, STE 3
> OCALA, FL 34474

Also attached is my Employer identification number (EIN) 22-3884681 issued by the IRS.

Should this matter proceed to civil rights litigation, please designate who is authorized to accept service of process on your behalf. Thank you.

Sincerely,
(signature)
Neil J. Gillespie

2801 SW College Rd., STE 3
Ocala, FL 34474
Tel: 352-239-9037
NeilGillespie@mail.com (E-Filing Portal)
Enclosures

32. On Monday, August 4, 2025, Mr. Wilcox responded by email:

Thanks for alerting us to the inaccuracy in our document.
We have updated it, to more accurately reflect the facts.
If you would like to get the zoning changed on that address, please contact the zoning authority.

Wesley
Wesley Wilcox, CERA
Supervisor of Elections
Marion County, Florida
PO Box 289
Ocala, Florida 34478-0289
Phone: 352.620.3290
Fax: 352.620.3286
Web: www.VoteMarion.Gov

33. Gillespie checked his online voter registration after getting the email from SOE Wilcox. The registration still shows Gillespie's voting address as the Marion County Election Center, 981 NE 16th St, Ocala, FL 34470. (DOC 1-1, page 23).

34. Gillespie checked his online voter registration status through the DOS Voter Information Lookup website on August 12, 2025. Gillespie's "Voter Status" shows "Active*" (*An active voter means the person is registered to vote.), but his voting address still appears as "981 NE 16TH ST, OCALA, 34470", the address of the Marion County Election Center.

35. Pursuant to 52 U.S. Code § 10504, Gillespie seeks judicial relief to register to vote in the City of Ocala where he works and lives: 2801 SW College Rd., STE 3, Ocala, FL 34474. The Florida Division of Elections publication, Voter Residency In Florida, *DE Reference Guide 0003 (Updated 06-2019; supersedes all prior versions)*, states:

> A business address is not a satisfactory legal residential address. However, although not the rule, if the person is able to prove residence there despite the zoning ordinance, a fact-finding body could determine that the business address is the person's legal residential address. Footnote 4: Andrews v. Hartzog, Case No. 38-2008-CA-000032 (8th Cir. Levy County, Florida 2008)

36. In Andrews v. Hartzog, Case No. 2008-CA-0032 (8th Cir. Levy County, Florida 2008), the Plaintiff Andy Andrews allegedly resided in the A.D. Andrews Nursery office at 13 S.E. First St., Chiefland, FL. The issue presented to the Court is whether Plaintiff, AD. Andrews, was a resident of Chiefland, Florida and therefore properly registered and entitled to vote as an elector of the municipality of Chiefland, Florida under F.S. Chapter 97.

37. In the context of voting, "legal residence" means domicile, which " ... is the place where a person has a fixed abode with the present intention of making it their permanent home." Walker v. Harris, 398 So. 2d 955 (Fla. 4th DCA 1981). The Plaintiffs subjective intent is a significant factor, but there must be a concurrence of both fact and intention. Bloomfiled v. St Petersburg Beach, 82 So. 2d 364 (Fla. 1955); Perez v. Marti, 770 So. 2d 284 (Fla. 2000)(Legal residence consists of the concurrence of both fact and intention.); Kevloh v. Carter, 699 So 2d 285 (Fla. 5th DCA 1997). The Plaintiff proved his case. Summary Final Judgment granted.

38. Pursuant to 52 U.S. Code § 10504, Gillespie believes the Court can act as a "fact-finding body" to determine that the business address is Gillespie's legal residential address.

39. Gillespie's Declaration pursuant to 28 U.S.C. § 1746(2) accompanies this First Amended Complainant for the purpose of a Rule 57 Decaratory Judgment under 28 U.S.C. § 2201 to further establish his residency in the City of Ocala at 2801 SW College Rd, STE 3, Ocala 34474.

40. Gillespie previously informed City Clerk Angel Jacobs that he was technically homeless upon eviction at gunpoint after foreclosure on a HECM reverse mortgage. Gillespie told Clerk Jacobs that he slept in his office and showered at Planet Fitness under his health plan.

41. The Declaration of Neil Joseph Gillespie accompanies this pleading, and states

- My name is Neil Joseph Gillespie. I make this declaration within the United States pursuant to 28 U.S.C. § 1746(2) on personal knowledge unless otherwise stated.

- My Declaration of Domicile August 6, 2025 appears at Exhibit A.

- Evidence of my homelessness appears at Exhibit B: Writ of Possession served on me May 19, 2022 at 8092 SW 115th Loop, Ocala, FL 34481, with eviction photos.

- Email June 9, 2022 from Cynthia Paddock, Joint Office on Homelessness, City of Ocala, to Neil J. Gillespie at celticein@yahoo.com appears at Exhibit C. Ms. Paddock wrote in relevant part, "The only immediate housing if needed would be to go to a shelter and there is currently shelter available for men at the Salvation Army Center of Hope, located at 320 NW 1 st Ave., Ocala, and their number is (352)732-8326."

- On July 21, 2022 I submitted, as Neil Joseph Gillespie d/b/a Justice Network, an application with a $35 fee to rent a Neighborhood Workspace unit located at 1535 NE 8th Avenue, Ocala, FL. Page 1 of the application, and page 1 of the screening, appear at Exhibit D. On July 29, 2022 Todd Rudnianyn called me and said in essence, 'Getting a lot of interest in the property, so we can't rent to you, will refund your application fee." Todd Rudnianyn manages NSC 8TH AVE, LLC shown on the property card for the Neighborhood Workspace address.

- On August 2, 2022, Stacy Collier, Executive Director of Saving Mercy Incorporated, affiliated with Blessed Trinity Catholic Church, a referral from United Way of Marion County, refused to lease me a room at Saving Mercy Village, 3601 W. Silver Springs Blvd., Ocala, FL.

- Marion Senior Services, 1101 SW 20 Ct. Ocala, FL 34471, refused to provide me services while homeless, and trespassed me from the property in 2022. Marion County Sheriff Billy Woods was vice president of Marion Senior Services, Inc. Attorney Samantha Shealy Rauba, FL Bar #59503, served on the Board of Directors of Marion Senior Services, Inc.. Mrs. Shealy Rauba is married to Erik John Rauba, FL Bar # 59429. Mr. Rauba is employed by the State Attorney for the Fifth Judicial Circuit, 110 NW 1st Ave. Ste 5000, Ocala, FL 34475. Also see Neil J. Gillespie v. Florida, US. Supreme Court Petition No. 20-929 for writ of certiorari.

- My 2025-2026 Florida Vehicle Registration appears at Exhibit E: Tag # HYHG09, 2013 Dodge Grand Caravan, Neil Joseph Gillespie, 2801 SW College Rd., STE 3, Ocala, FL 34474.

- My Florida drivers license #G421-630-56-099-0, replaced April 7, 2023, shows Neil Joseph Gillespie, 2801 SW COLLEGE RD STE 3 OCALA, FL 34474.

- A 2024 Jury duty notice appears at Exhibit F, from the Marion County Clerk, addressed and mailed to Neil Joseph Gillespie, 2801 SW College Rd., STE 3, Ocala, FL 34474-4430.

- The Social Security Administration provided a 2025 benefit letter addressed to Neil J. Gillespie, 2801 SW College Rd., Suite 3, Ocala, FL 34474-4430. (Exhibit G).

- The Social Security Administration provided a July 10, 2023 benefit letter addressed to Neil J. Gillespie, 2801 SW College Rd Suite 3, Ocala, FL 34474-4430 (Exhibit H)

- The Social Security Administration provided a December 21, 2023 benefit letter addressed to Neil J. Gillespie, 2801 SW College Rd., Suite 3, Ocala, FL 34474-4430. (Exhibit I).

- The Social Security Administration provided a May 15, 2024 benefit letter addressed to Neil J. Gillespie, 2801 SW College Rd., Suite 3, Ocala, FL 34474-4430 (Exhibit J)

- A Wells Fargo Everyday Checking statement May 31, 2024 (page 1, redacted) addressed to Neil J. Gillespie, 2801 SW College Rd., STE 3, Ocala, FL 34474-4430 appears at Exhibit K.

- A Wells Fargo Everyday Checking statement July 31, 2025 (page 1) addressed to Neil J. Gillespie, 2801 SW College Rd., STE 3 Ocala, FL 34474-4430 appears at Exhibit L

- A July 2024 benefit report from Ultimate Health Plans addressed to Neil Gillespie, 2801 SW College Rd, STE 3, Ocala, FL 34474, appears at Exhibit M, and shows on page 9 of 13 Gillespie requires dental treatment in the amount of $173,280. (page 1, 9 and envelope)

- A July 10, 2025 plan information letter from Freedom Health to Neil J. Gillespie, 2801 SW College Road, STE 3, Ocala, FL 34474 appears at Exhibit N. (page 1 redacted, envelope)

- A letter from Wesley Wilcox, Marion County Supervisor of Elections to Neil J. Gillespie, 2801 SW College Rd, Unit 3, Ocala, FL 34474, rejecting Gillespie's application to vote, dated "August 2025" by Wilcox, Received August 7, 2025 by Gillespie, with envelope. (Exhibit O)

- A letter from Wesley Wilcox, Marion County Supervisor of Elections to Neil J. Gillespie, 2801 SW College Rd, Unit 3, Ocala, FL 34474, rejecting Gillespie's application to vote, dated "August 2025" by Wilcox, Received August 8, 2025 by Gillespie, with envelope. (Exhibit P)

I declare under penalty of perjury that the foregoing is true and correct. Executed this 11th day of August, 2025, in the City of Ocala, Marion County, Florida. Signed, Neil Joseph Gillespie

42. The Florida Division of Elections publication, Voter Residency In Florida, *DE Reference Guide 0003 (Updated 06-2019; supersedes all prior versions)* (DOC 1-1, pp 5-7), paragraph 4:

> 4. Legal residence - Homeless. It is against Florida and federal laws to discriminate against a homeless person. The voter registration laws cannot be applied in a manner to deny such person the right to register to vote.[fn6] Therefore, a person who is homeless or without a permanent 'traditional' home but intends to remain permanently in the locale can register using an address for: 1) place where he or she regularly receives messages, 2) the church if it agrees to accept mail or messages on the person's behalf, 3) the shelter or other local that a person frequents and could be reached, 4) the specific post office for general delivery. It may even be a specific street corner, park bench, vacant lot, etc., to where the person frequently rests or returns and intends to serve as the "home-base".[fn7] The point is to be able to locate and assign a precinct to correspond with that location.
>
> FN6: Advisory Opinions DE 89-04 (Jun-01-1989) and DE 90-07 (Obsolete)
>
> Also see, U.S. Department of Justice: Statutes Enforced By The Voting Section https://www.justice.gov/crt/statutes-enforced-voting-section

43. Gillespie is homeless but not unsheltered; he works and lives in his office. While Gillespie does not have a 'traditional' home, he has since January 2, 2023 worked and lived at 2801 SW College Rd. STE 3, Ocala, FL 34474 serving the people of the City of Ocala.

WHEREFORE, The Court may act as a "fact-finding body" under 52 U.S.C. § 10504 and enter a Summary Final Judgment under Rule 57 and 28 U.S.C. 2201 to establish Gillespie's legal address for voting in the City of Ocala as 2801 SW College Rd., STE 3, Ocala, FL, 34474.

FRCP 5.1 CONSTITUTIONAL CHALLENGE 28 U.S.C. § 2403

City of Ocala, Florida Mayoral Special Election

44. The Ocala Star-Banner reported July 14, 2025, "None of the candidates for the city of Ocala election qualified. Here's what happens next". Gillespie is shown as a candidate for mayor.

> "Incumbent Mayor Ben Marciano, and challenging him were Zackary Feliciano and Neil J. Gillespie." (DOC 1-1, page 17) and at the URL

https://www.ocala.com/story/news/local/2025/07/14/ocala-city-council-to-discuss-special-election-in-september-2025/85198041007/

Special Election for Mayor is Unconstitutional

45. The office of Ocala mayor is nonpartisan. See the Ocala City Code, Chapter 26 Elections, Sec. 26-10. - Nonpartisanship required: Municipal elections shall be nonpartisan and the offices of mayor and city council shall be elected without reference to their registration status.

46. The definition of a "special election", found in Fla. Stat. 97.021(36), is partisan:

> "Special election" is a special election called for the purpose of voting on a party nominee to fill a vacancy in the national, state, county, or district office.

47. Therefore the special election is unconstitutional in a nonpartisan mayoral election.

48. Fla. Stat. § 97.0115 governs preemption:

> 97.0115 Preemption.—All matters set forth in chapters 97-105 are preempted to the state, except as otherwise specifically authorized by state or federal law. The conduct of municipal elections shall be governed by s. 100.3605.

49. Fla. Stat. 100.3605 governs conduct of municipal elections:

> 100.3605 Conduct of municipal elections.—
> (1) The Florida Election Code, chapters 97-106, shall govern the conduct of a municipality's election in the absence of an applicable special act, charter, or ordinance provision. No charter or ordinance provision shall be adopted which conflicts with or exempts a municipality from any provision in the Florida Election Code that expressly applies to municipalities.
> (2) The governing body of a municipality may, by ordinance, change the dates for qualifying and for the election of members of the governing body of the municipality and provide for the orderly transition of office resulting from such date changes.

Also see Ocala City Code Sec. 26-17. - Florida Election Code applicable.

50. A Special Election was called when no candidates qualified. Gillespie's request for candidate petitions (DOC 1-1 pp21-22): "Under the special election rules I must obtain 25 petitions signed by eligible voters who live within the city limits of the City of Ocala, Florida, and provide them to the City Clerk, Angel B. Jacobs, by 12 Noon on Friday, July 18, 2025."

51. The Ocala City Code Sec. 26-4(1) provides for "nominating petitions" but not the "candidate petitions" required of Gillespie by the City Clerk in the General and Special elections.

> (1) There shall be presented to the city clerk during the qualifying period for an election the qualifying papers required by the Florida Election Code along with the nominating petitions requesting that they become a candidate for such office, such petition to be signed by at least 25 qualified electors of the city. It shall be the duty of each candidate to insure that the petitioning electors are duly qualified electors. Failure to insure that at least 25 petitioning electors are qualified electors shall preclude that candidate from qualifying and having his or her name put on the election ballot.

52. Under Florida election law, a candidate generally has the option to either pay the filing fee, or obtain candidate petitions. However in the City of Ocala, a candidate must pay the filing fee AND obtain 25 petitions. Gillespie paid the filing fee for the General Election, and for the Special Election. Gillespie turned in 41 candidate petitions on July 18, 2025. SEO Wilcox only accepted 12 out of Gillespie's 41 candidate petitions. Gillespie contends the petition requirement is unconstitutional because he paid the filing fee for each election.

NOTICE PROVIDED TO CITY ATTORNEY WILLIAM SEXTON
Candidate Petitions Violate the Florida Election Code and the Vagueness Doctrine
Ocala Municode Chapter 26 - Elections

53. On July 19, 2025, Gillespie made a records request to the City Attorney. (Exhibit 7). Mr. Sexton responded that he could provide a cost estimate for the records by August 13, 2025, so Gillespie modified his request for fewer records. This is Gillespie's original request:

> Dear Mr. Sexton,
>
> This is a request for public records showing the Proclamation of Mayor Marciano signed July 14, 2025, and the Special Election called for therein, was properly advertised in accordance with the requirements of the Charter and Code of Ordinances, City of Ocala, Florida as well as Chapter 100, Florida Statutes, and any other relevant provisions of Florida law.
>
> Regarding the Special Election for the vacant seat for Mayor of Ocala, provide public records showing that the qualifying dates for the aforementioned Special Election were lawfully established by the City Council of the City of Ocala, Florida at their regularly-scheduled City Council meeting on Tuesday, July 15, 2025 at 4:00 P.M. in the City

Council Chambers on the Second Floor of City Hall, located at 110 S.E. Watula Avenue, Ocala, Florida 34471. Provide a video of the meeting if available.

I believe the qualifying dates of July 16, 2025 to Noon July 18, 2025, 3 days, was insufficient. The previous qualifying dates announced in the mayor's proclamation of April 15, 2025, Noon, July 7, 2025, to Noon July 11, 2025, allowed 5 days to qualify. The shortened qualifying time denied me due process to qualify. Of my 41 Candidate Petitions submitted July 18, 2025, only 12 were accepted, according to a Candidate Petition Signature List provided to me by Ms. Jacobs. I believe at least one rejected Candidate Petition should have been accepted, the Candidate Petition of Neil J. Gillespie, ID 105766466, my petition for myself. So far Mr. Wilcox has not explained why my Candidate Petition was rejected. Attached you will find a copy of my Candidate Petition, showing the residence address assigned to me by Mr. Wilcox on my voter card October 11, 2024: 981 NE 16TH ST, OCALA FL 34470. Mr. Wilcox mailed my voter card to me at 2801 SW College Rd., STE 3, Ocala, FL 34474.

On July 11, 2025 I paid the City of Ocala $2.50 to verify the Candidate Petitions submitted on July 11, 2025, but did not get a Candidate Petition Signature List for those petitions, so I do not know how many were accepted, or if there was a problem to rectify.

It now appears to me that the requirement for 25 Candidate Petitions is an unconstitutional scheme to deny ballot access to an otherwise qualified candidate. Eighteen of my Candidate Petitions were rejected for "Wr Dist" (wrong district?), petitions signed by eligible voters in Marion County who reasonably believe they lived in the City of Ocala, because their address is Ocala, Florida. Here, the shortened qualifying time denied me due process to qualify, and further verify and correct the rejected petitions. In my view the requirement for 25 Candidate Petitions violates the vagueness doctrine, because the average citizen, eligible voters in Marion County, reasonably believe they live in the City of Ocala, but in fact do not. See Vagueness doctrine, Wikipedia https://en.wikipedia.org/wiki/Vagueness_doctrine

> "In American constitutional law, a statute may be void for vagueness and unenforceable if it is too vague for the average citizen to understand what acts or duties are required or restricted. This is because constitutionally permissible activity may not be chilled because of a statute's vagueness (either because the statute is a penal statute with criminal or quasi-criminal civil penalties, or because the interest invaded by the vague law is sufficiently fundamental to subject the statute to strict scrutiny by a court determining its constitutionality)."

Yesterday an officer of the Ocala Police Department acknowledged to me the public may not know if they live within the city limit or not, and he added, the police certainly know exactly where the city boundaries lie. On July 18, 2025 I visited the Ocala Police Department, 402 South Pine Ave., Ocala, FL 34471, to obtain signed Candidate Petitions. I was refused by both police officers and police staff on two different grounds. Police staff cited the requirement to disclose their home address. I found this objection by the

public also in Ocala. Residents who would like to sign a Candidate Petition do not sign because of the address reporting requirement.

One police officer I spoke with, a resident of the city, said he was prevented from signing a Candidate Petition while on duty/in uniform. The other officer with whom I spoke said he lived outside the city limit.

Please provide a record of my text message to you sent Monday July 14, 2025, that stated:

> "Hello Mr. Sexton, got your message, please clarify your request that I open another campaign account, does the city not want Regions Bank? What is the requirement regarding campaign checks, temporary checks, or ??? What happens to money already paid? Can I use the petitions I already obtained? Has the number of petitions required changed?"

As of today I do not show a response from you.

Please provide a record of my second text message to you sent Monday July 14, 2025, that stated:

"Ms Sexton, on Friday Angel Jacobs provided me an opinion letter of the Division of Elections dated March 18, 2013 that appears to allow debit cards in lieu of checks, is that your view? Thanks, Neil Gillespie"

As of today I do not show a response from you.

When I spoke with you on Friday, July 11, 2025, you said there would likely be a special election on a shortened timeline, and as such, the number of Candidate Petitions needed might be less than 25. Provide records showing why the number of Candidate Petitions remained at 25 for the shortened qualifying time.

Provide the benefit package for the Mayor of Ocala, including the salary, healthcare benefits, vacation time, etc. Also provide the duties required of the Mayor of Ocala.

This public records request is submitted pursuant to section 119.07(1) Florida Statutes, Rule 2.420(2), Florida Rules of General Practice and Procedure, and Article I, Section 24a of the Florida Constitution. All public records requests shall be acknowledged promptly and in good faith, F.S. § 119.07(1)(c).

Thank you.
Sincerely,
Neil J. Gillespie (Signature block omitted)

Records of the Candidate Petition Signature List Show a Pattern

54. Candidate Petition Signature List, General Election (qualifying ended July 11, 2025)

Mark Clark, 26 of 34 Candidate Petitions accepted
Neil Gillespie, 1 of 17 Candidate Petitions accepted
Zachary Feliciano, 20 of 38 Candidate Petitions accepted (batch 1)
Zachary Feliciano, 2 of 5 Candidate Petitions accepted (batch 2)
Zachary Feliciano, 6 of 10 Candidate Petitions accepted (batch 3)
James Hilty, 28 of 31 Candidate Petitions accepted
TamBoura Jenkins, 25 of 30 Candidate Petitions accepted
Barry Mansfield, 41 of 48 Candidate Petitions accepted
Ben Marciano, 22 of 28 Candidate Petitions accepted (batch 1)
Ben Marciano, 6 of 6 Candidate Petitions accepted (batch 2)

55. Candidate Petition Signature List, Special Election (qualifying ended July 18, 2025)

Mark Clark, 39 of 41 Candidate Petitions accepted
Neil Gillespie, 12 of 41 Candidate Petitions accepted
Zachary Feliciano, 26 of 62 Candidate Petitions accepted
James Hilty, 31 of 34 Candidate Petitions accepted
TamBoura Jenkins, 12 of 33 Candidate Petitions accepted (batch 1)
TamBoura Jenkins, 16 of 27 Candidate Petitions accepted (batch 2)
Barry Mansfield, 43 of 48 Candidate Petitions accepted
Ben Marciano, 31 of 34 Candidate Petitions accepted
Jay Musleh, 29 of 32 Candidate Petitions accepted

56. The Ocala City Code Sec. 26-4(1) requirement for nominating petitions from candidates who paid a filing fee is in conflict with and violates the Florida Election Code and is an unconstitutional encroachment on the Florida Election Code and the election process.

57. The Ocala City Code Sec. 26-4(1) requirement for 25 nominating petitions from candidates violates the Vagueness Doctrine due to the vagaries shown on the map of the City of Ocala (Exhibit 8) and Gillespie's discussion with police officers in the Ocala Police Department who know the city limits, and the average citizen, eligible voters in Marion County, who reasonably believe they live in the City of Ocala, but in fact do not live in the city.

58. In addition, Police staff cited the requirement to disclose their home address as an obstacle to signing a nominating petition. Gillespie found this objection by the public also in Ocala. Residents who would like to sign a nominating petition do not sign because of the address

reporting requirement. A review of the Candidate Petition Signature Lists for the General Election and the Special Election show a pattern: Fewer rejected incumbent petitions. In some cases one incumbent signs a petition for another incumbent, and vice versa, showing the petition requirement is rigged to favor incumbents, an insiders game, not a free and fair election.

59. The definition of a "special election", found in Fla. Stat. 97.021(36), is partisan, making a special election unconstitutional in a nonpartisan mayoral election.

CONCLUSION

60. The Ocala Gazette previously reported, "Historically, the mayor's duties have been largely ceremonial. The mayor has no vote on the Ocala City Council but does hold veto power. The pay is a nominal $550 a month. However, there is one aspect of the job that literally involves life and death. Because of the structure of Ocala government, the mayor, not the city council, has sole oversight of the Ocala Police Department." (Ocala Gazette, August 10, 2022)

61. Gillespie sought election as mayor for better oversight of the Ocala Police Department:

> This is one reason I want to be mayor. Through Justice Network I see firsthand problems with the Ocala Police Department, and the Marion County Sheriff's Office. I believe police officers and sheriff's deputies work hard to protect Ocala and Marion County. But oversight by the current mayor Ben Marciano shows a need for new leadership.
> (DOC 1-1, p 21)

62. On May 12, 2021, Sarah M. Thompson, age 35, died of a drug overdose in the hotel room of a convicted drug trafficker, Matthew Paul Smith, at the Stay & Save Extended Stay Hotel, Room 118, 2430 NE 2nd St, Ocala, FL 34470. The Ocala Police Department incident report could not determine where Sarah may have obtained the heroin, fentanyl and methamphetamine that killed her. The Ocala Police Department also failed to obtain the hotel's surveillance video showing her entering Room 118. Sarah left Room 118 dead in a body bag.

63. The City of Ocala pays the mayor just $550 a month. That amounts to $6,600 a year, or about $127 a week. As of September 30, 2024, the minimum wage in Florida is $13.00 per hour. It appears the City of Ocala does not want any meaningful oversight of its police department.

WHEREFORE, Gillespie prays this Court will find unconstitutional the Special Election, and the requirement under Ocala City Code Sec. 26-4(1) for 25 nominating petitions.

Respectfully Submitted August 12, 2025.

Neil J. Gillespie, Plaintiff pro se
2801 SW College Rd., STE 3
Ocala, FL 34474
Tel: 352-239-9037
Neil4Justice@yahoo.com
NeilGillespie@mail.com (E-Filing Portal)

EXHIBIT 1

# PROCLAMATION

A PROCLAMATION CALLING FOR A SPECIAL ELECTION TO BE HELD ON TUESDAY, SEPTEMBER 16, 2025; PRESCRIBING A RUN-OFF ELECTION DATE FOR THE SAME; PROVIDING FOR QUALIFICATION DATES TO BE DETERMINED BY CITY COUNCIL; AND STATING THE OFFICES AND VACANCIES TO BE FILLED.

WHEREAS, by Proclamation dated April 15, 2025, a General Election for the City of Ocala, Florida was called for and was scheduled to be held on Tuesday, September 16, 2025; and

WHEREAS, the offices declared vacant and to be filled by said General Election were outlined in said Proclamation as Mayor, City Council District I, City Council District III and City Council District V; and

WHEREAS, the qualifying dates for said General Election were set by said Proclamation as the period between Noon on Monday, July 7, 2025, through Noon on Friday, July 11, 2025; and

WHEREAS, as of the close of the aforementioned qualifying period there were no candidates who qualified for the offices set forth in the aforementioned Proclamation; and

WHEREAS, there being no qualified candidates for said offices, the proclaimed vacancies in said offices continue; and

WHEREAS, pursuant to the *Charter* and *Code of Ordinances, City of Ocala, Florida*, said vacancies shall be filled by the conducing of a Special Election for the same; and

WHEREAS, further pursuant to the *Charter* and *Code of Ordinances, City of Ocala, Florida* such Special Election for the purpose of filling those vacancies shall be called by the Mayor and shall be held as soon as is reasonably practicable; and

WHEREAS, pursuant to the requirements of Section 100.151, *Florida Statutes*, the City of Ocala has notified the Marion County Supervisor of Elections of its intent to hold a Special Election on Tuesday, September 16, 2025, and has obtained from him his consent for the same; and

WHEREAS, following issuance of this Proclamation, the City Clerk of the City of Ocala, Florida shall ensure that this Proclamation and the Special Election called for herein are properly advertised in accordance with the requirements of the *Charter* and *Code of Ordinances, City of Ocala, Florida* as well as Chapter 100, *Florida Statutes*, and any other relevant provisions of Florida law.

NOW THEREFORE, by virtue of the authority vested in me as Mayor of the City of Ocala, Florida, I hereby proclaim that:

1. The recitals outlined above are ratified as true and correct and are adopted and incorporated herein as part and parcel of this Proclamation.

2. A Special Election, pursuant to the *Charter* and *Code of Ordinances, City of Ocala, Florida* and in accordance with Chapter 100, *Florida Statutes*, and other relevant provisions of Florida law, shall be held in and for the City of Ocala, Florida on Tuesday, September 16, 2025;

3. A Run-Off Election, if necessary, for the aforementioned Special Election, shall be held on Tuesday, November 18, 2025.

4. The aforementioned Special Election shall be for the vacant seats for the following Offices of the City of Ocala, Florida:

   A. Mayor;

   B. City Council, District I;

   C. City Council, District III; and

   D. City Council, District V.

5. The qualifying dates for the aforementioned Special Election shall be established by the City Council of the City of Ocala, Florida at their regularly-scheduled City Council meeting on Tuesday, July 15, 2025 at 4:00 P.M. in the City Council Chambers on the Second Floor of City Hall, located at 110 S.E. Watula Avenue, Ocala, Florida 34471.

IN WITNESS WHEREOF, I have hereunto set my hand and caused to be affixed hereto the Seal of the City of Ocala, Florida, this 14th day of July, 2025.

BEN MARCIANO, as Mayor
City of Ocala, Florida

EXHIBIT 2

# Ocala
## City Council
## Minutes

110 SE Watula Avenue
Ocala, FL 34471

www.ocalafl.gov

**Tuesday, July 15, 2025** **4:00 PM**

**1. Call to Order**

**2. Roll Call**

**Present:** Mayor Ben Marciano
Pro Tem Ire J. Bethea Sr
Council Member James P. Hilty Sr
Council Member Barry Mansfield
Council Member Jay A. Musleh
Council President Kristen M. Dreyer

a. New Employees

- Richard Crile, Electric
- Clay Surdam, Electric

**3. Public Notice**

- **Public Notice for the July 15, 2025 City Council Regular Meeting was posted on June 10, 2025**

**4. Proclamations and Awards**

**4a.** The Mayor's Citizen Recognition Award will be presented to Ashley Gerds

**RESULT:** POSTPONED

**4b.** Service Award - Doug Peebles - Director of Ocala Electric Utility - 25 Years of Service

Mayor Marciano and City Manager Pete Lee presented a service award to Doug Peebles in appreciation of his 25 years of service to the City of Ocala.

**5. Presentations**

**15. City Attorney's Report**

15a. Approve the Special Election Qualifying Procedures and Schedule

City Attorney Sexton discussed the approval of the special election qualifying procedures and schedule. The City is proposing to hold the special election on September 16, 2025, which is the same date of the original election. Mayor Marciano issued a proclamation calling for a special election to be held on September 16, 2025. The City is requesting City Council approve a qualifications period from 8:00 a.m. Wednesday, July 16, 2025, to 12:00 p.m. noon, Friday July 18, 2025, and qualification requirements used for the general election.

Mark Clark, 4989 SE, 5th Avenue, Ocala, FL, expressed concern the proposed special election qualifying procedures negatively impact City Council's ability to vote, due to conflict of interest.

Mr. Sexton confirmed Council Member Hilty does not need to be recused from the vote. Furthermore, he clarified the qualification regulations.

There being no further discussion the motion carried by roll call vote.

**RESULT:** APPROVED
**MOVER:** James P. Hilty Sr
**SECONDER:** Ire J. Bethea Sr
**AYE:** Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer

**6. Consent Agenda**

Consent Agenda items are considered to be routine and will be enacted by one roll call vote. There will be no separate discussion of these items unless members of Council or the public request specific items to be removed for separate discussion and action.

**RESULT:** APPROVED THE CONSENT AGENDA
**MOVER:** Ire J. Bethea Sr
**SECONDER:** Barry Mansfield
**AYE:** Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer

**6a.** Approve additional expenditures for field service assembly and testing services for power transformers under the agreement with Virginia Transformer in the estimated amount of $98,700

Presentation By: Doug Peebles

**6b.** Approve a task work order with McFarland Johnson, Inc. to provide design services for the T-Hangar Taxilane Rehabilitation project in the amount of $85,506

Presentation By: Matthew Grow

**6c.** Approve additional expenditures under the agreement with Chuck's Stokes Electric of Central Florida, Inc. in the amount of $62,059 for a contract total of $502,059

Presentation By: Darren Park

**6d.** Approve expenditures for utility services provided by SECO Energy for Fiscal Year 2024-25 with an estimated expenditure of $76,000

Presentation By: Peter Brill

**6e.** Approve the sale and purchase contract of Surplus Parcel #2260-171-009 to Laverne and Nathaniel Abiaka in the amount of $13,168

Presentation By: Tracy Taylor

**6f.** Approve Jeff Shrum, Growth Management Director, and Tom Duncan, Transit Administrator, as designated "Officials" for the Federal Transit Administration Transit Award Management System

Presentation By: Tom Duncan

**6g.** Adopt Budget Resolution 2025-164 amending the Fiscal Year 2024-25 budget to appropriate a donation for the development of current and future exhibits at the Discovery Center in the amount of $15,000

Presentation By: John Spencer

**6h.** Adopt Budget Resolution 2025-165 amending the Fiscal Year 2024-25 budget to accept and appropriate community donations for K-9 related expenses in the amount of $1,100

Presentation By: Michael Balken

**6i.** Approve the purchase of various inventory items for Ocala Fiber Network from multiple vendors in an amount not to exceed $160,838

Presentation By: Mel Poole

**6j.** Approve appointment of and establish compensation for Dana Dammar as Assistant City Attorney

Presentation By: William E. Sexton

**6k.** Approve minutes from July 1, 2025 City Council meeting

Presentation By: Angel Jacobs

**7. Consent Agenda Items Held for Discussion**

Should any items be removed from the Consent Agenda for discussion, they will be discussed at this time.

**8. Introduction and First Readings of Ordinances**

**9. Public Hearings / Second and Final Readings / Adoption of Ordinances**

**9a.** Public Hearing to consider an amendment to a Site Concurrency Development Agreement pursuant to Chapter 163, Florida Statutes (New Old Town Village LLC) for approximately 38.9 acres located in the 4300-4600 block of E Silver Springs Boulevard (Parcels 27028-004-03, 27028-004-00, 27028-004-01, 27029-000-02, 27028-003-00, and a portion of 2735-000-002) (DMA23-45430); this is the second of two public hearings; the first was held on June 9, 2025, before the Planning and Zoning Commission

Presentation By: Jeff Shrum

Council President Dreyer opened the public hearing for items 9(a) to 9(f).

Growth Management Director Jeff Shrum discussed the adoption of Resolutions 2025-29 and 2025-30 and Ordinances 2025-29, 2025-30, and 2025-31. The property owners are swapping parcels to support their development plans. He provided a brief overview of the subject properties, proposed amendment, acreage correction, PD plan, and staff findings. The Planning & Zoning Commission and staff recommend approval.

Jimmy Gooding, Applicant's Attorney, 1531 SE 36th Avenue, discussed how the proposed design will remedy parking challenges at Mojo's and support development for both property owners. The future land use will be applied to the subject properties, and

the PD plan provides buffering for residents located to the south. The proposed plan will satisfy both property owners' development needs. He clarified the proposed development does not contain an affordable housing component.

No public comment.

There being no further discussion the motion carried by roll call vote.

**RESULT:** APPROVED
**MOVER:** Barry Mansfield
**SECONDER:** Jay A. Musleh
**AYE:** Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer

**9b.** **Adopt Resolution 2025-29 to abrogate a portion of NE 47th Court between Block I, Lot 2 and Block F, Lot 17 of Glynnwood Unit 1 as recorded in Plat Book G, Page 91, of the public records of Marion County, Florida (Parcels 2735-0006-017 & 2735-009-002) (Case ABR23-45418) (Quasi-Judicial)**

**Presentation By: Jeff Shrum**

There being no further discussion the motion carried by roll call vote.

**RESULT:** ADOPTED
**MOVER:** Barry Mansfield
**SECONDER:** James P. Hilty Sr
**AYE:** Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer

**9c.** **Adopt Ordinance 2025-29 to change the Future Land Use designation on approximately 0.78 acres for property located in the 1900 block of NE 49th Avenue (Parcels 2735-006-017 and 2735-009-002) from Neighborhood to Low Intensity (Case LUC23-45427) (Quasi-Judicial)**

**Presentation By: Jeff Shrum**

**Introduced By:** Ire J. Bethea Sr

There being no further discussion the motion carried by roll call vote.

**RESULT:** ADOPTED
**MOVER:** Ire J. Bethea Sr
**SECONDER:** James P. Hilty Sr
**AYE:** Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer

**9d.** **Adopt Ordinance 2025-30 to rezone approximately 6.83 acres for property located at the southwestern corner of the intersection at NE 49th Avenue and E Silver Springs Boulevard (Parcel 2735-000-002, 2735-009-001, 2735-009-002, 2735-006-017, and a portion of parcel 27028-004-03) from PD, Planned Development, R-1, Single-Family Residential, & B-2, Community Business, to PD, Planned Development (Case PD23-45431) (Quasi-Judicial)**

Presentation By: Jeff Shrum

**Introduced By:** James P. Hilty Sr

There being no further discussion the motion carried by roll call vote.

**RESULT:** ADOPTED
**MOVER:** James P. Hilty Sr
**SECONDER:** Ire J. Bethea Sr
**AYE:** Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer

**9e.** Adopt Ordinance 2025-31 to rezone approximately 0.59 acres for property located at the southwestern corner of the intersection at NE 49th Avenue and E Silver Springs Boulevard (a portion of 2735-000-002) from PD, Planned Development, to B-2, Community Business (Case ZON23-45419) (Quasi-Judicial)

Presentation By: Jeff Shrum

**Introduced By:** Barry Mansfield

There being no further discussion the motion carried by roll call vote.

**RESULT:** ADOPTED
**MOVER:** Barry Mansfield
**SECONDER:** James P. Hilty Sr
**AYE:** Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer

**9f.** Adopt Resolution 2025-30 to approve a resolution for a Planned Development Plan and Standards Book for property located at the southwestern corner of the intersection at NE 49th Avenue and E Silver Springs Boulevard (Parcel 2735-000-002, 2735-009-001, 2735-009-002, 2735-006-017, and a portion of parcel 27028-004-03), approximately 6.83 acres (Case No. PD23-45431) (Quasi-Judicial)

Presentation By: Jeff Shrum

There being no further discussion the motion carried by roll call vote.

**RESULT:** ADOPTED
**MOVER:** Barry Mansfield
**SECONDER:** James P. Hilty Sr
**AYE:** Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer

**9g.** Adopt Ordinance 2025-33 to rezone approximately 18.24 acres for the property located southwest of the intersection at SW 48th Avenue and SW 49th Place (Parcel 23832-000-00 and a portion of 23894-002-00) from R-3, Multi-Family Residential, to B-2, Community Business (Case ZON25-0007) (Quasi-Judicial)

Presentation By: Emily Johnson

**Introduced By:** Ire J. Bethea Sr

Council President Dreyer opened the public hearing.

Case 5:25-cv-00486-SPC-PRL Document 10-1 Filed 08/12/25 Page 8 of 23 PageID 101



Senior Planner Emily Johnson discussed the adoption of Ordinance 2025-33. The applicant requested to rezone the subject property from R-3 (Multifamily Residential) to B-2 (Community Business), to accommodate future commercial development. She provided a brief overview of the property's history, rezoning, and staff findings. The Planning & Zoning Commission and staff recommend approval.

Jimmy Gooding, Applicant's Attorney, 1531 SE 36th Avenue, stated the property owner is requesting to revert back to the original zoning, due to a failed real estate transaction with the adjacent property owner, who previously requested to purchase the property to expand the development of multifamily housing.

No public comment.

There being no further discussion the motion carried by roll call vote.

| | |
|---|---|
| **RESULT:** | **ADOPTED** |
| **MOVER:** | **Ire J. Bethea Sr** |
| **SECONDER:** | **James P. Hilty Sr** |
| **AYE:** | **Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer** |

**10. General Business**

**10a. Adopt Resolution 2025-34 providing for the reimposition of non-ad valorem Fire Assessments, establishing proposed rates for Fiscal Year 2025-26, directing preparation of the Fire Assessment Roll, setting a date for a public hearing, and directing publication and mailing notices of proposed Fire Assessments**

**Presentation By: Tammi Haslam**

Budget Director Tammi Haslam discussed the tentative millage rates for Fiscal Year 2025-26. She stated the final action will take place at a public hearing scheduled for Thursday, September 11, 2025.

There being no further discussion the motion carried by roll call vote.

| | |
|---|---|
| **RESULT:** | **ADOPTED** |
| **MOVER:** | **Barry Mansfield** |
| **SECONDER:** | **James P. Hilty Sr** |
| **AYE:** | **Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer** |

**10b. Adopt the Fiscal Year 2025-26 tentative millage rates: Basic City - 6.6177; District A - 1.7185; District B - 1.6332; District C - 1.4699**

**Presentation By: Tammi Haslam**

Budget Director Tammi Haslam explained the City must provide its tentative millage rates, rollback rates, and date, time and place of the public budget hearings to the Marion County Property Appriaser no later than August 3, 2025. The tentative millage rates

Case 5:25-cv-00486-SPC-PRL Document 10-1 Filed 08/12/25 Page 9 of 23 PageID 102


become the ceiling for the rates and staff recommends the tentative rates remain the same as Fiscal Year 2024-25. She noted the budget will be discussed further at the August 12 Budget Workshop.

There being no further discussion the motion carried by roll call vote.

Ms. Haslam offered Council two options for meeting schedules. The preferred option would move the first Council meeting in September to Wednesday, September 3, to minimize the number of meetings Council would be required to hold.

City Council agreed with the City's preferred option schedule.

City Manager Pete Lee confirmed staff will perform significant public outreach regarding the meeting dates.

**RESULT:** APPROVED
**MOVER:** Ire J. Bethea Sr
**SECONDER:** James P. Hilty Sr
**AYE:** Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer

**10c. Adopt Budget Resolution 2025-166 amending the Fiscal Year 2024-25 budget to provide a supplemental appropriation to reconcile cash balance forward accounts and for the continuation of projects not completed in Fiscal Year 2023-24 in the amount of $3,786,945**

**Presentation By: Tammi Haslam**

There being no discussion the motion carried by roll call vote.

**RESULT:** ADOPTED
**MOVER:** James P. Hilty Sr
**SECONDER:** Jay A. Musleh
**AYE:** Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer

**10d. Approve a task work order with Infrastructure Consulting & Engineering, PLLC, for design services for the A12 Hangar Infrastructure project in the amount of $147,741**

**Presentation By: Matthew Grow**

Airport Director Matthew Grow clarified the sales marketing process for available spots with Council Member Mansfield.

There being no further discussion the motion carried by roll call vote.

**RESULT:** APPROVED
**MOVER:** James P. Hilty Sr
**SECONDER:** Barry Mansfield
**AYE:** Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer

**10e.** **Approve a task work order with McFarland Johnson, Inc. to provide design services for fuel farm expansion, aircraft wash pad and vehicle parking pads in the amount not to exceed $102,117**

**Presentation By: Matthew Grow**

Airport Director Matthew confirmed the public is allowed to use the aircraft wash pad with Council Member Mansfield. Furthermore, the fuel farm will be operated and maintained by Sheltair Aviation.

There being no further discussion the motion carried by roll call vote.

| | |
|---|---|
| **RESULT:** | APPROVED |
| **MOVER:** | Ire J. Bethea Sr |
| **SECONDER:** | Barry Mansfield |
| **AYE:** | Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer |

**10f.** **Approve a contract between the City of Ocala and Cummins, Inc D/B/A Cummins Sales and Service for engine and transmission replacement services on an as-needed basis not to exceed $1,340,270**

**Presentation By: Tom Duncan**

Transit Administrator Tom Duncan clarified the life expectancy of the engine with Mayor Marciano.

There being no further discussion the motion carried by roll call vote.

| | |
|---|---|
| **RESULT:** | APPROVED |
| **MOVER:** | James P. Hilty Sr |
| **SECONDER:** | Barry Mansfield |
| **AYE:** | Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer |

**10g.** **Approve a one-year renewal with HM Insurance Group to provide stop-loss insurance for the City's self-insured health plan, with an expenditure of $1,977,347**

**Presentation By: Todd Swanson**

Director of HR & Risk Management Devan Kikendall noted a correction to the agenda item: the policy renewal represents a 6.41% increase in premiums.

Council Member Musleh expressed concern regarding the high premium increases.

There being no further discussion the motion carried by roll call vote.

| | |
|---|---|
| **RESULT:** | APPROVED |
| **MOVER:** | Ire J. Bethea Sr |
| **SECONDER:** | Barry Mansfield |
| **AYE:** | Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer |

**10h. Approval of agreement with Marion County School Board for the School Resource Officer Program with receivables over three years of $5,946,781**

**Presentation By: Mike Balken**

Police Chief Mike Balken confirmed the department will be servicing all of Ocala's public schools located in the City with Council Member Bethea.

There being no further discussion the motion carried by roll call vote.

| | |
|---|---|
| **RESULT:** | APPROVED |
| **MOVER:** | James P. Hilty Sr |
| **SECONDER:** | Jay A. Musleh |
| **AYE:** | Bethea Sr, Hilty Sr, Mansfield, Musleh, and Dreyer |

## 11. Internal Auditor's Report

## 12. City Manager's Report

- **City's storm preparation**

City Manager Pete Lee reported the City will continue to monitor the stormy weather along the east coast.

## 13. Ocala Police Department Report

- **Overview of Crime and Traffic Stops**

Police Chief Mike Balken reported on the Police Departments efforts for a two-week period, June 30, 2025 to July 13, 2025: 44 significant crimes, 203 arrests, and 1,218 traffic stops. Vehicle crashes on State Road 200 yearly (January-June) comparison: 105 vehicle crashes for 2024 and 122 vehicle crashes for 2025. The department arrested three individuals involved in a series of vehicle burglaries.

Council President Dreyer encouraged pedestrians to drive slower to prevent vehicle crashes on State Road 200. Furthermore, she requested staff present information regarding the types of vehicle crashes at a future meeting.

Mayor Marciano noted U-turns are the major cause of vehicle crashes.

Council Member Musleh discussed how the medians impact the public traveling to merchant destinations.

City Manager Pete Lee stated the City will revisit establishing a cross-access agreement.

- **Department Highlights**

## 14. Ocala Fire Rescue Department Report

- **Unit Responses**

  Fire Chief Clint Welborn reported on unit responses for a two-week period, July 1, 2025 to July 14, 2025. The two busiest units: Fire Rescue One (152-unit responses) and Fire Engine Four (97-unit responses).

- **Service calls update**

  Fire Chief Clint Welborn reported on call type spotlights for a two-week period, July 1, 2025 to July 14, 2025: motor vehicle accidents 80, structure fires 4, and community paramedicine/core 71, and 915 calls for service (13,366 calls-to-date).

- **Department Highlights**

  Fire Chief Clint Welborn reported the Florida Task Force 8 was deployed to Texas in response to the devastating floods affecting the state. The department conducted several successful search training courses at the AdventHealth Facility and hosted a successful Mayor for the Day event.

## 16. Public Comments

- **David Layman, 4567 NE 6th Street, commented on fiber installation issues**

  David Layman, 4567 NE 6th Street, discussed hazardous fiber installations jeopardizing the safety of the public. A fiber installation project completed by a vendor known as Lumen, caused a hazardous gas leak in the residential neighborhood. He suggested the City evaluate allowing multiple fiber companies to access easements and perform audits to protect the safety of the public.

  City Manager Pete Lee stated staff will perform site inspections to support public safety. The City will suspend a vendor's permits if they cause infrastructure damage. The public must report property damage to the City immediately, as vendors should not be encroaching on private property and must restore the property back to the original condition. Furthermore, the City's Code Enforcement Inspectors have been allocated to job sites to ensure the vendor is incompliance.

  City Engineer & Director of Water Resources Sean Lanier stated the City has the ability to suspend a vendor's permits. The City has jurisdiction over the right-of-way; however, residential damage caused by the vendor is considered a civil matter, due to the City's lack of jurisdiction.

  City Attorney Sexton expressed concern about billing the vendor for fire services. He requested Council consider creating penalties for vendors.

  Council Member's Musleh and Hilty support penalizing vendors for being negligent.

  Mr. Lee expressed concern that assigning Fire Department employees to job sites will impact public services. Furthermore, he suggested reevaluating fiber permit fees.

Council Member Dreyer favors Mr. Lanier's suggestion to establish inspection fees.

Mr. Lanier noted the vendor must restore the right-of-way to the original condition.

Mr. Sexton advised City Council that the City has worked with vendors to restore damaged properties back to their original condition.

Council Member Dreyer requested the City require vendors to issue notices to residents.

- **Jerry Lourenco, 2350 NW 27th Avenue, commented on the invitation to bid for the disposal of Class 1 and Class 3 solid waste**

  Jerry Lourenco, 2350 NW 27th Avenue, expressed concern regarding an invitation to bid that is currently under review for the disposal of Class 1 and Class 3 solid waste. He questioned why the bid package would require vendors to haul certain items for free. He discussed his concern about the inability to pass along any price increases to the City over the term of the proposed five-year contract.

  Council President Dreyer noted Council cannot discuss an open procurement process.

**17. Informational Items and Calendaring Items**

- Tuesday, August 5, 2025 - 4:00pm - City Council meeting - Council Chambers
- Tuesday, August 12, 2025 - 12:00pm - City Council Workshop Re: FY 2025-26 Budget - Council Chambers
- Tuesday, August 19, 2025 - 3:45pm - CRA Board meeting - Council Chambers
- Tuesday, August 19, 2025 - 4:00pm - City Council meeting - Council Chambers
- Tuesday, August 26, 2025 - 3:00pm - TPO Meeting - Marion County BOCC Auditorium
- Monday, September 1, 2025 - Labor Day Holiday - City offices closed
- Tuesday, September 2, 2025 - 4:00pm - City Council meeting - Council Chambers
- Thursday, September 11, 2025 - 5:01pm - City Council Special Meeting re: Fire Assessment - Council Chambers
- Tuesday, September 16, 2025 - 3:45pm - CRA Board meeting - Council Chambers
- Tuesday, September 16, 2025 - 4:00pm - City Council meeting - Council Chambers
- Tuesday, September 23, 2025 - 3:00pm - TPO Meeting - Marion County BOCC Auditorium

**17a.** Fully Executed Contracts Under $50,000

**17b.** Monthly budget to actual report and Capital Improvement Project status report as of May 31, 2025

**18. Comments by Mayor**

- **Recognition of the Parks & Recreation Department and Ocala Main Street for 4th of July celebration**
- **Recognition of the Electric Department for storm response**

  Mayor Marciano recognized the Electric Department for responding to a power outage in the City.

- **Workout with the Mayor event scheduled for Saturday, July 19, 2025, at 9 am, location Tuscawila Park**

**19. Comments by City Council Members**

**20. Adjournment**

**Adjourned at 5:44 pm**

**Minutes**

| | |
|---|---|
| Kristen M. Dreyer<br>Council President | Angel B. Jacobs<br>City Clerk |

Case 5:25-cv-00486-SPC-PRL Document 10-1 Filed 08/12/25 Page 15 of 23 PageID 108

LOCALiQ
The Gainesville Sun | The Ledger
Daily Commercial | Ocala StarBanner
News Chief | Herald-Tribune

PO Box 631244 Cincinnati, OH 45263-1244

EXHIBIT 3

## AFFIDAVIT OF PUBLICATION

Pamela Omichinski
City Of Ocala Clerk'S Office
110 SE WATULA AVENUE
OCALA FL 34471

STATE OF WISCONSIN, COUNTY OF BROWN

Before the undersigned authority personally appeared, who on oath says that he or she is the Legal Coordinator of the Star Banner, published in Marion County, Florida; that the attached copy of advertisement, being a , was published on the publicly accessible website of Marion County, Florida, or in a newspaper by print in the issues of, on:

07/23/2025

Affiant further says that the website or newspaper complies with all legal requirements for publication in chapter 50, Florida Statutes.
Subscribed and sworn to before me, by the legal clerk, who is personally known to me, on 07/23/2025

Legal Clerk

Notary, State of WI, County of Brown

3·7·27

My commission expires

| | | | |
|---|---|---|---|
| Publication Cost: | $753.50 | | |
| Tax Amount: | $0.00 | | |
| Payment Cost: | $753.50 | | |
| Order No: | 11505212 | # of Copies: | |
| Customer No: | 522373 | 1 | |
| PO #: | Proclamation | | |

THIS IS NOT AN INVOICE!

*Please do not use this form for payment remittance.*

KAITLYN FELTY
Notary Public
State of Wisconsin

CITY OF OCALA
GOD BE WITH US
MARION COUNTY, FLORIDA

# PROCLAMATION

A PROCLAMATION CALLING FOR A SPECIAL ELECTION TOBE HELD ON TUESDAY, SEPTEMBER 16, 2025; PRESCRIBING A RUN-OFF ELECTION DATE FOR THE SAME; PROVIDING FOR QUALIFICATION DATES TOBE DETERMINED BY CITY COUNCIL; AND STATING THE OFFICES AND VACANCIES TOBE FILLED.

WHEREAS, by Proclamation dated April 15, 2025, a General Election for the City of Ocala, Florida was called for and was scheduled to be held on Tuesday, September 16, 2025; and

WHEREAS, the offices declared vacant and to be filled by said General Election were outlined in said Proclamation as Mayor, City Council District I, City Council District III and City Council District V; and

WHEREAS, the qualifying dates for said General Election were set by said Proclamation as the period between Noon on Monday, July 7, 2025, through Noon on Friday, July 11, 2025; and

WHEREAS, as of the close of the aforementioned qualifying period there were no candidates who qualified for the offices set forth in the aforementioned Proclamation; and

WHEREAS, there being no qualified candidates for said offices, the proclaimed vacancies in said offices continue; and

WHEREAS, pursuant to the *Charterand Code oJOrdinances, Clry ojOcala, Florida,* said vacancies shall be filled by the conducing of a Special Election for the same; and

WHEREAS, further pursuant to the *Charter* and *Code* ef *Ordinances, Clry* ef *Ocala, Florida* such Special Election for the purpose of filling those vacancies shall be called by the Mayor and shall be held as soon as is reasonably practicable; and

WHEREAS, pursuant to the requirements of Section 100.151, *Florida Statutes,* the City of Ocala has notified the Marion County Supervisor of Elections of its intent to hold a Special Election on Tuesday, September 16, 2025, and has obtained from him his consent for the same; and

WHEREAS, following issuance of this Proclamation, the City Clerk of the City of Ocala, Florida shall ensure that this Proclamation and the Special Election called for herein are properly advertised in accordance with the requirements of the *Charterand Code efOrdinances, Clry efOcala, Florida* as well as Chapter 100, *Florida Statutes,* and any other relevant provisions of Florida law.

NOW THEREFORE, by virtue of the authority vested in me as Mayor of the City of Ocala, Florida, I hereby proclaim that:

1. The recitals outlined above are ratified as true and correct and are adopted and incorporated herein as part and parcel of this Proclamation.
2. A Special Election, pursuant to the *Charter* and *Code of Ordinances, Clry of Ocala, Flonda* and in accordance with Chapter 100, *Florida Statutes,* and other relevant provisions of Florida law, shall be heldin and for the City of Ocala, Florida on Tuesday, September 16, 2025;
3. A Run-Off Election, if necessary, for the aforementioned Special Election, shall be held on Tuesday, November 18, 2025.
4. The aforementioned Special Election shall be for the vacant seats for the following Offices of the City of Ocala, Florida:
   A. Mayor;
   B. City Council, District I;
   C. City Council, District III; and
   D. City Council, District V.
5. The qualifying dates for the aforementioned Special Election shall be established by the City Council of the City of Ocala, Florida at their regularly-scheduled City Council meeting on Tuesday,July 15, 2025 at 4:00 P.M. in the City Council Chambers on the Second Floor of City Hall, located at 110 S.E. Watula Avenue, Ocala, Florida 34471.

IN WITNESS WHEREOF, I have hereunto set my hand and caused tobe affixed hereto the Seal of the City of Ocala, Florida, this 14th day of July, 2025.

BEN MARCIANO, as Mayor
City of Ocala, Florida

OF-42247507

EXHIBIT 4

# Press Releases | City of Ocala

**OCALA, Fla.** (July 14, 2025) – The City of Ocala will hold a Special Election on Tuesday, Sept. 16, to fill the offices of Mayor, City Council District I, City Council District III, and City Council District V.

In accordance with Section 26-2 of the Code of Ordinances, the Mayor issued a Proclamation on April 15 calling for a General Election to be held on Sept. 16 for the aforementioned offices. The qualification period for the election began at noon on Monday, July 7, and ended at noon on Friday, July 11.

Following a thorough review by the City Clerk and City Attorney, in consultation with the Marion County Supervisor of Elections, it was determined that none of the candidates strictly complied with the requirements of Florida law as it pertains to the payment of their qualifying fee.

Specifically, Section 99.061, Florida Statutes, requires candidates to pay the qualifying fee using a properly, executed check drawn from their campaign account. Section 106.11, Florida Statutes, further requires that such checks including the campaign account name, account number and bank name, exact amount, treasurer's signature, purpose of the expenditure, and the payee's name.

None of the seven candidates met all of these criteria. As a result, no candidates qualified for the offices listed in the April 15 Proclamation. The City Clerk provided formal notice of this determination to the Supervisor of Elections on Monday, July 14.

Per the City Charter and Code of Ordinances, the offices are again considered vacant and must be filled through a Special Election held as soon as reasonably practicable. The City intends to conduct the Special Election on the same date as originally scheduled: Tuesday, Sept. 16.

The Mayor has now issued a new Proclamation on July 14, officially calling for the Special Election.

The City Council will establish the dates, times, procedures, and requirements for the qualifying period for the Special Election during its regularly scheduled meeting on Tuesday, July 15, at 4 p.m. at Ocala City Hall (110 SE Watula Ave.).

###

EXHIBIT 5

# Press Releases | City of Ocala

**OCALA, Fla.** (July 18, 2025) – The City of Ocala has confirmed the candidates who have officially qualified for the upcoming Special Election scheduled for Tuesday, Sept. 16. The Special Election will fill the offices of Mayor, City Council District 1, City Council District 3, and City Council District 5.

The qualifying period for the Special Election concluded at noon today following a thorough review of each candidate's qualification materials by the City Clerk and City Attorney, as well as petition verification conducted by the Marion County Supervisor of Elections Office. The City then formally reported the following slate of qualified candidates to the Supervisor of Elections:

**Mayor:**

- Ben Marciano (Incumbent)
- Zachary "Arbor" Feliciano

**City Council District 1:**

- Barry Mansfield (Incumbent)

**City Council District 3:**

- Jay Musleh (Incumbent)
- Mark Clark
- TamBoura Jenkins

**City Council District 5:**

- James "Jim" Hilty, Sr. (Incumbent)

The official reporting allows the Supervisor of Elections to move forward with preparation on the same timeline as the originally scheduled General Election.

The Special Election was called after it was determined that no candidates from the original qualifying period had strictly complied with Florida law regarding the payment of qualifying fees.

A new proclamation was issued on July 14, calling for the Special Election to proceed as originally scheduled. A second qualifying period was held and managed by the City Clerk's Office in accordance with the procedures approved by City Council on July 15.

If necessary, a runoff election will be held on Tuesday, Nov. 18.

Voters are encouraged to visit www.votemarion.gov for additional election information.

###

Case 5:25-cv-00486-SPC-PRL Document 10-1 Filed 08/12/25 Page 19 of 23 PageID 112

# MEMBER PROFILE

EXHIBIT 6

## Ron D DeSantis

Member in Good Standing

Eligible to Practice Law in Florida

**Bar Number:**

15976

**Mail Address:**

Executive Office of Governor Ron DeSantis
400 S Monroe St
Tallahassee, FL 32399-6536

Office: **850-488-7146**

**Email:**

**governorron.desantis@eog.myflorida.com**

**Personal Bar URL:**

https://www.floridabar.org/mybarprofile/15976

**vCard:**

**County:**

Leon

**Circuit:**

02

**Admitted:**

10/05/2005

**10-Year Discipline History:**

None

**Law School:**

Harvard Law School, 2005

The Find a Lawyer directory is provided as a public service. The Florida Bar maintains limited basic information about lawyers licensed to practice in the state (e.g., name, address, year of birth, gender, law schools attended, admission year). However, The Florida Bar allows individual attorneys the opportunity to add personal and professional information to the directory. The lawyer is solely responsible for reviewing and updating any additional information in the directory. The lawyer's added information is not reviewed by The Bar for accuracy and The Bar makes no warranty of any kind, express or implied. The Florida Bar, its Board of Governors, employees, and agents are not responsible for the accuracy of that additional information. Publication of lawyers' contact information in this listing does not mean the lawyers have agreed to receive unsolicited communications in any form. Unauthorized use of this data may result in civil or criminal penalties. The Find a Lawyer directory is not a lawyer referral service.

## Public Records Request

EXHIBIT 7

From: Neil J Gillespie (neil4ocalamayor@yahoo.com)
To: wsexton@ocalafl.gov; neil4ocalamayor@yahoo.com
Cc: ajacobs@ocalafl.org; austin.miller@starbanner.com; jennifer@ocalagazette.com
Date: Saturday, July 19, 2025 at 12:06 PM EDT

William Sexton, City Attorney
City if Ocala, Florida
110 SE Watula Ave
Ocala, FL 34471-2180
Office: 352-401-3972
Email: wsexton@ocalafl.gov

Dear Mr. Sexton,

This is a request for public records showing the Proclamation of Mayor Marciano signed July 14, 2025, and the Special Election called for therein, was properly advertised in accordance with the requirements of the Charter and Code of Ordinances, City of Ocala, Florida as well as Chapter 100, Florida Statutes, and any other relevant provisions of Florida law.

Regarding the Special Election for the vacant seat for Mayor of Ocala, provide public records showing that the qualifying dates for the aforementioned Special Election were lawfully established by the City Council of the City of Ocala, Florida at their regularly-scheduled City Council meeting on Tuesday, July 15, 2025 at 4:00 P.M. in the City Council Chambers on the Second Floor of City Hall, located at 110 S.E. Watula Avenue, Ocala, Florida 34471. Provide a video of the meeting if available.

I believe the qualifying dates of July 16, 2025 to Noon July 18, 2025, 3 days, was insufficient. The previous qualifying dates announced in the mayor's proclamation of April 15, 2025, Noon, July 7, 2025, to Noon July 11, 2025, allowed 5 days to qualify. The shortened qualifying time denied me due process to qualify. Of my 41 Candidate Petitions submitted July 18, 2025, only 12 were accepted, according to a Candidate Petition Signature List provided to me by Ms. Jacobs. I believe at least one rejected Candidate Petition should have been accepted, the Candidate Petition of Neil J. Gillespie, ID 105766466, my petition for myself. So far Mr. Wilcox has not explained why my Candidate Petition was rejected. Attached you will find a copy of my Candidate Petition, showing the residence address assigned to me by Mr. Wilcox on my voter card October 11, 2024: 981 NE 16TH ST, OCALA FL 34470. Mr. Wilcox mailed my voter card to me at 2801 SW College Rd., STE 3, Ocala, FL 34474.

On July 11, 2025 I paid the City of Ocala $2.50 to verify the Candidate Petitions submitted on July 11, 2025, but did not get a Candidate Petition Signature List for those petitions, so I do not know how many were accepted, or if there was a problem to rectify.

It now appears to me that the requirement for 25 Candidate Petitions is an unconstitutional scheme to deny ballot access to an otherwise qualified candidate. Eighteen of my Candidate Petitions were rejected for "Wr Dist" (wrong district?), petitions signed by eligible voters in Marion County who reasonably believe they lived in the City of Ocala, because their address is Ocala, Florida. Here, the shortened qualifying time denied me due process to qualify, and further verify and correct the rejected petitions. In

my view the requirement for 25 Candidate Petitions violates the vagueness doctrine, because the average citizen, eligible voters in Marion County, reasonably believe they live in the City of Ocala, but in fact do not. See Vagueness doctrine, Wikipedia https://en.wikipedia.org/wiki/Vagueness_doctrine

> "In American constitutional law, a statute may be void for vagueness and unenforceable if it is too vague for the average citizen to understand what acts or duties are required or restricted. This is because constitutionally permissible activity may not be chilled because of a statute's vagueness (either because the statute is a penal statute with criminal or quasi-criminal civil penalties, or because the interest invaded by the vague law is sufficiently fundamental to subject the statute to strict scrutiny by a court determining its constitutionality)."

Yesterday an officer of the Ocala Police Department acknowledged to me the public may not know if they live within the city limit or not, and he added, the police certainly know exactly where the city boundaries lie. On July 18, 2025 I visited the Ocala Police Department, 402 South Pine Ave., Ocala, FL 34471, to obtain signed Candidate Petitions. I was refused by both police officers and police staff on two different grounds. Police staff cited the requirement to disclose their home address. I found this objection by the public also in Ocala. Residents who would like to sign a Candidate Petition do not sign because of the address reporting requirement.

One police officer I spoke with, a resident of the city, said he was prevented from signing a Candidate Petition while on duty/in uniform. The other officer with whom I spoke said he lived outside the city limit.

Please provide a record of my text message to you sent Monday July 14, 2025, that stated:

> "Hello Mr. Sexton, got your message, please clarify your request that I open another campaign account, does the city not want Regions Bank? What is the requirement regarding campaign checks, temporary checks, or ??? What happens to money already paid? Can I use the petitions I already obtained? Has the number of petitions required changed?"

As of today I do not show a response from you.

Please provide a record of my second text message to you sent Monday July 14, 2025, that stated:

> "Ms Sexton, on Friday Angel Jacobs provided me an opinion letter of the Division of Elections dated March 18, 2013 that appears to allow debit cards in lieu of checks, is that your view? Thanks, Neil Gillespie"

As of today I do not show a response from you.

When I spoke with you on Friday, July 11, 2025, you said there would likely be a special election on a shortened timeline, and as such, the number of Candidate Petitions needed might be less than 25. Provide records showing why the number of Candidate Petitions remained at 25 for the shortened qualifying time.

Provide the benefit package for the Mayor of Ocala, including the salary, healthcare benefits, vacation time, etc. Also provide the duties required of the Mayor of Ocala.

This public records request is submitted pursuant to section 119.07(1) Florida Statutes, Rule 2.420(2), Florida Rules of General Practice and Procedure, and Article I, Section 24a of the Florida Constitution. All public records requests shall be acknowledged promptly and in good faith, F.S. § 119.07(1)(c).

Thank you.

Sincerely,
/s/
Neil J. Gillespie
2801 SW College Rd., STE 3
Ocala, FL 34474
Tel: 352-239-9037
Email: Neil4OcalaMayor@yahoo.com

Cc: Angel B. Jacobs, CMC
Ocala City Clerk
110 SE Watula Avenue
Tel: 352-629-8403
Fax: 352-629-5208
Email: ajacobs@ocalafl.org

Austin Miller, Ocala Star-Banner
austin.miller@starbanner.com

Jennifer Hunt Murty, Ocala Gazette
jennifer@ocalagazette.com

2024, 11-11-24, Wesley Wilcox to Neil Gillespie Voter Card.pdf
134.5 kB

2025, 07-16-25, CANDIDATE PETITION Neil Joseph Gillespie (105766466).pdf
118.7 kB

## Midtown Location



JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Neil Joseph Gillespie

**DEFENDANTS**
Wesley Wilcox, Marion County Supervisor of Elections, see Plaintiff's First Amended Complaint for all the Defendants

**(b)** County of Residence of First Listed Plaintiff: Marion
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Marion
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
None, pro se

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 440 Other Civil Rights
☒ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
Other:
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent - Abbreviated New Drug Application
☐ 840 Trademark
☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit (15 USC 1681 or 1692)
☐ 485 Telephone Consumer Protection Act
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
52 U.S.C. § 10502; 52 U.S.C. § 10504; 28 U.S.C. 2201; 28 U.S.C. 2403
Brief description of cause:
Defendant refuses to register Gillespie to vote in the City of Ocala, Florida

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):*
JUDGE ______ DOCKET NUMBER ______

DATE
August 12, 2025

SIGNATURE OF ATTORNEY OF RECORD
[signature]

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

UNITED STATES CONGRESSWOMAN
KAT CAMMACK
FLORIDA'S 3RD CONGRESSIONAL DISTRICT

Florida Congressional District 3
Authorization in Accordance with the Privacy Act of 1974, Title 5, U.S. Code Section 552a,

Name: Neil J Gillespie (Mr./Mrs./Ms. First/Last Jr./Sr./III) Date of Birth: 03 / 19 / 1956 (MM DD YYYY)

Home Phone: ___-___-___ Cell Phone: 352 - 239 - 9037 Best Time to Call: any

Email Address: Neil4Justice@yahoo.com Preferred Method of Contact: email

Address: 2801 SW College Rd. STE 3

City: Ocala State: FL Zip Code: 34474 - 4430

I am seeking assistance with Federal Elections Commission (AGENCY) (VA, Social Security, Immigration, etc.)

The problem I am having is:
FOIA request to the Federal Elections Commission, see attached letter and enclosures.

The resolution I am seeking is: Obtain the FOIA records

Have you contacted any other elected officials regarding this case? Y / (N) Who? ___

Do you have an attorney/service officer? Y / (N) Name: ___ Phone: ___

SSN: ___-___-___ Case #/Alien Number/VA Number:: ___
(Please provide the appropriate identification number pertaining to the assistance which you are seeking)

Please attach *copies* of any supporting documentation.
Documents provided will be destroyed upon completion and not returned.

**Please list the name and information for any person to whom we can disclose information in the event that we cannot reach you directly**

Name: ___ DOB: __/__/___ Relationship: ___ (Used to Verify)
Phone: ___ Address: ___

*Note:* The Privacy Act requires the completion of this form for Congresswoman Cammack and her staff to receive information on behalf of her constituents. I hereby authorize Congresswoman Cammack and her staff to receive information on my behalf and/or to discuss my records with the agency involved.

Signature: [signature] Date: May 9, 2025

5550 NW 111th Boulevard, Suite A
Gainesville, FL 32653
P: 352-505-0838
F: 855-299-1664

May 9, 2025

U.S. Congresswoman Kat Cammack
5550 Northwest 111th Boulevard
Gainesville, FL 32653
Phone: 352-505-0838
c/o Hallie Mallard, Constituent Advocate & Field Rep
Email: Hallie.Mallard@mail.house.gov

Dear Congresswoman Cammack,

This is a request for assistance with the Federal Election Commission (FEC).

Please see enclosed my Freedom of Information Act (FOIA), 5 U.S.C. § 552, last month to Lisa J. Stevenson, Esq., Acting General Counsel, Federal Election Commission (FEC).

Christopher Mealy of the FEC FOIA Requester Service Center acknowledged my FOIA of April 24, 2025, which is designated as number 2025-237. Mr. Mealy has not responded further.

Also enclosed is my signed privacy act form for your office. Thank you.

Sincerely,
/s/
Neil J. Gillespie
2801 SW College Rd, STE 3
Ocala, FL 34474-4430
Email: Neil4Justice@yahoo.com
Telephone: 352-239-9037

Enclosures

Lisa J. Stevenson, Esq.
Acting General Counsel
Federal Election Commission
1050 First St. NE
Washington, DC 20463
Tel: 202-694-1650

April 24, 2025

VIA Email: CELA@fec.gov
VIA United Parcel Service (UPS) Next Day Air
Tracking # 1Z64589F0191669851

Dear Ms. Stevenson,

This is a request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

Enclosed you will find a letter to me from Jeff S. Jordan, Assistant General Counsel, Federal Election Commission, incorrectly dated January 6, 2020, in response to my complaint of election fraud in the 2020 presidential election. Mr. Jordan wrote in part, "This acknowledges receipt of your letters to the Federal Election Commission on December 14th and December 17th, 2020."

While I understand Mr. Jordan died June 7, 2021, my notarized complaint of election fraud in the 2020 presidential election was not properly considered by the Commission. I am unable to find reference to my complaint on the Commission's website. I am unable to locate a complaint number. I am unable to find evidence the Commission followed its own complaint process. https://www.fec.gov/legal-resources/enforcement/complaints-process/

My notarized complaint of election fraud in the 2020 presidential election was provided by email on December 14, 2020 to <EnfComplaint@fec.gov>, and a paper complaint was delivered by UPS on December 17, 2020 to the Office of General Counsel, Federal Election Commission, 1050 First Street, NE, Washington, DC 20002. Tellingly the letter of Mr. Jordan is dated January 6, 2020, and provided by email Wednesday, January 06, 2021 5:29 PM from <CELA@fec.gov>.

Pursuant to FOIA, provide all records related to my complaint of election fraud in the 2020 presidential election. Provide all records of my emails to the Commission in 2020 and 2021. Provide records for Sarah Thompson, an associate of mine who died May 12, 2021 in Ocala, Florida. Ms. Thompson was mentioned in my emails to the Commission. Thank you.

Sincerely,

Neil J. Gillespie

NEIL J. GILLESPIE, Candidate ID: P60022993
Principal Campaign Committee ID: C00627810
2801 SW College Rd., STE 3
Ocala, FL 34474
Email: NeilGillespie2024@yahoo.com
Email: Neil4Justice@yahoo.com
Tel: 352-239-9037

Enclosures

FEDERAL ELECTION COMMISSION
WASHINGTON, D.C. 20463

**VIA EMAIL** January 6, 2020

neilgillespie@mfi.net
Neil Gillespie
8092 SW 115th Loop
Ocala, Florida 34481

Dear Mr. Gillespie:

This acknowledges receipt of your letters to the Federal Election Commission on December 14th and December 17th, 2020.

The Federal Election Commission (the "Commission") is an independent regulatory agency charged with administering and enforcing the Federal Election Campaign Act of 1971, as amended, and Chapters 95 and 96 of Title 26, United States Code. The Commission has jurisdiction over the financing of campaigns for federal office -- the U.S. House, Senate, and President.

After careful review of your correspondence, we have determined that your letter does not state any acts that appear to constitute a violation under our jurisdiction.

Sincerely,

Jeff S. Jordan (*by TDK*)
Assistant General Counsel
Federal Election Commission
Office of General Counsel
Complaints Examination and Legal Administration

**Neil Gillespie**

**From:** "CELA" <CELA@fec.gov>
**To:** <neilgillespie@mfi.net>
**Sent:** Wednesday, January 06, 2021 5:29 PM
**Attach:** Gillesple Complaint Response.pdf
**Subject:** COMPLAINT OF ELECTION FRAUD IN THE 2020 PRESIDENTIAL ELECTION Response

Please see attached for a response to complaints submitted on December 14th and 17th 2020.

*Trace Keeys*
Paralegal
Federal Election Commission
Complaints Examination &
Legal Administration
(202) 694-1260

cela@fec.gov

VIA U.S. PRIORITY MAIL 2-DAY
USPS TRACKING # 9405 5036 9930 0195 6116 15

December 17, 2020

Office of General Counsel
Federal Election Commission
1050 First Street, NE
Washington, DC 20463
Email: EnfComplaint@fec.gov

To the Office of General Counsel:

Please find enclosed:

Your email dated December 15, 2020 requesting the original along with three copies.

FEC COMPLAINT OF ELECTION FRAUD IN THE 2020 PRESIDENTIAL ELECTION
APPENDIX A FLORIDA SUPREME COURT PETITION NO. SC16-2031

Thank you.

Sincerely,

[signature]

NEIL J. GILLESPIE, Complainant
8092 SW 115th Loop
Ocala, Florida 34481
Tel. 352-854-7807
Email: neilgillespie@mfi.net

Enclosures

Cc: President Donald J. Trump
The White House
1600 Pennsylvania Avenue NW
Washington, DC 20500

**FEDERAL ELECTION COMMISSION**
**WASHINGTON, DC**

NEIL J. GILLESPIE, American Citizen and
Candidate For President ID: P60022993,
NEIL J. GILLESPIE FOR PRESIDENT,
Principal Campaign Committee ID: C00627810,

Complainant,

v.

JOSEPH R. BIDEN, JR.
Candidate For President ID: P80000722
BIDEN FOR PRESIDENT,
Principal Campaign Committee ID: C00703975

KAMALA D. HARRIS,
Candidate For Vice President ID: P00009423
KAMALA HARRIS FOR THE PEOPLE
Principal Campaign Committee ID: C00694455,

ALL OTHER SIMILARLY SITUATED CANDIDATES,
Officers of the Court Admitted to Practice Law Seeking
Elected Office Outside the Judicial Branch of Government,

THE ELECTORAL COLLEGE, Office of the Federal Register (OFR),
National Archives and Records Administration (NARA)

GENERAL SERVICES ADMINISTRATION (GSA),
Emily W. Murphy, GSA administrator

UNITED STATES DEPARTMENT OF JUSTICE (DOJ),

Respondents.
_______________________________________/

Complaint No. _____________
Office of General Counsel
Federal Election Commission
1050 First Street, NE
Washington, DC 20463
Email: EnfComplaint@fec.gov

**COMPLAINT OF ELECTION FRAUD IN THE 2020 PRESIDENTIAL ELECTION**

COMES NOW the Complainant, NEIL J. GILLESPIE, an American Citizen, a Candidate For U.S. President ID: P60022993, a nonlawyer, and treasurer of NEIL J. GILLESPIE FOR PRESIDENT, Principal Campaign Committee ID: C00627810, hereby files this *Complaint Of Election Fraud In The 2020 Presidential Election* against the Respondents, and states:

**Neil Gillespie**

**From:** <no-reply@fec.gov>
**To:** <neilgillespie@mfi.net>
**Sent:** Tuesday, December 15, 2020 12:29 PM
**Subject:** RE: FEC COMPLAINT OF ELECTION FRAUD IN THE 2020 PRESIDENTIAL ELECTION

Thank you for your email.

If you believe a violation of the federal election campaign laws or Commission regulations has occurred or is about to occur, you may file a complaint. The complaint must be made in writing and sent to the Office of General Counsel, Federal Election Commission, 1050 First Street NE, Washington, DC 20463. The original must be submitted along with three copies, if possible. Facsimile or e-mail transmissions are not acceptable.

**Please note that complaints received by mail on or after June 18, 2020, will not be processed on a daily basis until the FEC resumes normal mail operations. The FEC is not able to receive complaints delivered by courier at this time. During this time, the Commission asks that anyone filing a new enforcement complaint by mail also send an electronic copy of the complaint to EnfComplaint@fec.gov. The Commission encourages the use of electronic signatures and notarizations where permitted by state law. Electronically submitted copies of complaints that otherwise appear to be in order will be deemed received on the date the copy was electronically received by staff. Complaints that are filed only by mail will be deemed received when actually received by OGC staff, subject to mail processing delays.**

A complaint must comply with certain requirements. It must:

- Provide the full name and address of the person filing the complaint (called the complainant); and
- Be signed, sworn to and notarized. This means that the notary public's certificate must say "...signed and sworn to before me...," or words that connote the complaint was affirmed by the complainant, (such as "under penalty of perjury").

Furthermore, in order for a complaint to be considered complete and proper, it should:

- Clearly recite the facts that show specific violations under the Commission's jurisdiction (citations to the law and regulations are not necessary);
- Clearly identify each person, committee or group that is alleged to have committed a violation (called the respondent);
- Include any documentation supporting the allegations, if available; and
- Differentiate between statements based on the complainant's (the person who files the complaint) personal knowledge and those based on information and belief. Statements not based on personal knowledge should identify the source of the information.

For additional information, please visit our website on how to file a complaint.

We hope this information is helpful. If you have any additional questions about federal campaign finance law, please contact us at 1-800-424-9530 (press #6 when prompted).

Information Division
Federal Election Commission

Please note that the guidance provided by this correspondence is strictly informational and is NOT legally binding. Only the Commission, via the Advisory Opinion process, has the authority to issue a legally binding opinion. This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you are not the named addressee you should not disseminate, distribute or copy this email.

===== **ORIGINAL MESSAGE** =====
**From:** neilgillespie@mfi.net
**Sent:** 2020-12-14 19:44:51
**Subject:** FEC COMPLAINT OF ELECTION FRAUD IN THE 2020 PRESIDENTIAL ELECTION

Office of General Counsel
Federal Election Commission
1050 First Street, NE
Washington, DC 20463
Email: EnfComplaint@fec.gov

Please find attached:

FEC COMPLAINT OF ELECTION FRAUD IN THE 2020 PRESIDENTIAL ELECTION
APPENDIX A FLORIDA SUPREME COURT PETITION NO. SC16-2031
Thank you.

Sincerely,
/s/
NEIL J. GILLESPIE, Complainant
8092 SW 115th Loop
Ocala, Florida 34481
Tel. 352-854-7807
Email: neilgillespie@mfi.net

Ref:MSG0147009

VIA UPS NEXT DAY AIR SAVER
Tracking Number: 1Z64589F1396596390

December 17, 2020

President Donald J. Trump
The White House
1600 Pennsylvania Avenue NW
Washington, DC 20500

Mr. President:

Please find enclosed my Federal Elections Commission Complaint of Election Fraud in the 2020 Presidential Election. As set forth in my complaint, you are the only lawful major candidate for president in 2020 because Joe Biden, Kamala Harris, and Mike Pence are lawyers admitted to practice and Officers of the Court, and therefore prohibited by the U.S. Constitution separation of powers doctrine from election to the executive branch of government.

Thank you.

Sincerely,

FILE COPY

NEIL J. GILLESPIE, Complainant
8092 SW 115th Loop
Ocala, Florida 34481
Tel. 352-854-7807
Email: neilgillespie@mfi.net

Enclosures

Freedom of Information Act Request to the Federal Election Commission FOIA (2025-237)

From: FOIA (foia@fec.gov)

To: neil4justice@yahoo.com

Date: Friday, April 25, 2025 at 01:23 PM EDT

Dear Mr. Gillespie,

This email acknowledges receipt of your Freedom of Information Act (FOIA) request dated April 24, 2025.

Specifically, you requested the following:

"all records related to my complaint of election fraud in the 2020 presidential election. Provide all records of my emails to the Commission in 2020 and 2021. Provide records for Sarah Thompson, an associate of mine who died May 12, 2021 in Ocala, Florida. Ms. Thompson was mentioned in my emails to the Commission."

We received your request on April 25, 2025.

We will soon be initiating our search for records responsive to your request. If we determine that you have requested a voluminous amount of records that require extensive searching and examination, we will contact you to discuss your willingness to modify your request.

Any questions regarding the status of this request should be directed to our office at foia@fec.gov or 202-694-1650. Please cite the following unique tracking number in all future correspondence regarding this matter: FOIA Request 2025-237.

Thank you for contacting the Federal Election Commission.

Sincerely,

Christopher Mealy
FEC FOIA Requester Service Center

# Obama Knew the Russiagate Intelligence Was Manufactured

*David Harsanyi*

Director of National Intelligence Tulsi Gabbard contends that new declassified documents show that former President Barack Obama engaged in the plot to create the lie that President Donald Trump had conspired with Russia to steal the 2016 presidential election.

Of course he did.

We have known for years that in July 2016, CIA Director John Brennan briefed Obama on how Hillary Clinton's presidential campaign had sought to "vilify" Trump by accusing him of collaborating with Russian President Vladimir Putin.

We already know that despite having this information in hand, Obama withheld intelligence about Russia from the Trump transition team and ordered agencies to compile an assessment of the situation.

Now, typically, such an assessment, which brings together intelligence at the highest levels, takes months to gather and analyze. This report, however, was cobbled together in just a few weeks so that the Obama administration could control not only the content but the messaging before the new administration began.

To understand how shoddy the assessment was, consider that it included the Steele dossier in the annex, an opposition-research document paid for by Democrats, but not the views of two senior CIA officers from the Russia mission center who argued that there was no evidence that Putin's ham-fisted meddling was intended to boost Trump's fortunes. Indeed, it turns out that numerous career officials expressed skepticism about the claim.

It is utterly implausible that Obama did not know that potentially exculpatory evidence regarding Clinton's role in spreading the Russia collusion hoax was omitted. It is certainly worth asking him.

In any event, a responsible report even intimating that a president-elect's campaign may have been involved in a seditious plot would be undertaken with extra special care. Instead, it was weaponized.

In her very last hour in office, Obama's national security adviser, Susan Rice, wrote a transparently self-preserving email to protect the president, claiming that she'd attended a meeting in which he stressed to then-FBI Director James Comey that everything in the Trump-Russia investigation should proceed "by the book."

Why? Why mention this on her last day? Did high-ranking Obama administration officials such as Comey not always conduct their investigations "by the book"?

Of course, they didn't. It was the dirtiest political trick played on the public in U.S. history. As intended, the Russia hysteria paralyzed the incoming presidency. It probably worked even better than those who hatched it could have imagined, as the legacy media took the bait on virtually every anonymously sourced story, no matter how far-fetched.

"Mr. President," Adam Schiff, then a member of the House Intelligence Committee, said in 2017, "the Russians hacked our election and interfered. No one disputes this now but you." Anyone who disputed this characterization was smeared as a shill for a foreign power. Polls found that over 60% of Democrats claimed to believe that the Russians had altered vote tallies. Not one investigation, of course, not even special counsel Robert Mueller's inquiry, which was run by Trump-hating partisans, found any evidence that collusion had taken place.

Few events have done more to undermine our trust in elections and in our officials.

Attorney General Pam Bondi has launched a "strike force" to investigate the declassified findings regarding Obama's role. But Gabbard already accused the former president of "treason." As has Trump. One suspects that Gabbard's piecemeal release of declassified documents was intended to distract from the Jeffrey Epstein mess that was partly created by the administration.

This, too, is overpromising.

Sorry, those imagining Obama being cuffed and marched to the jailhouse in orange overalls are fooling themselves. It would be a miracle if anyone involved was indicted, much less convicted.

For one thing, the statute of limitations has expired on most of this event. And Obama, thanks to Trump v. United States, would enjoy presidential immunity from criminal prosecution for official acts even if Bondi could prove criminality, which is doubtful.

This brand of corruption can't be explicitly found in any documents. Plotters don't have to have conversations. Everyone understood what was happening. And the system empowers intelligence heads with tremendous latitude and power. It has long been clear that everyone involved in the Russia hoax abused their position, but indicting a CIA director for, say, excluding certain information from an assessment report would be difficult, if it were illegal at all, which seems doubtful.

None of that is to contend that the president and his underlings weren't in on the plot. Or that we shouldn't find out the truth. But it will have to be the historical record. That's important, too.

COPYRIGHT 2025 CREATORS.COM

*David Harsanyi is a senior editor at The Federalist. Follow him on X @davidharsanyi.*