EXHIBIT 2

NEIL JOSEPH GILLESPIE v. STATE OF FLORIDA
Florida Fifth Judicial Circuit, Marion County

DEFENDANT'S NOTICE OF PROSECUTORIAL MISCONDUCT
CASE 2020-CF-2417
Filing # 233696032 E-Filed 10/15/2025 01:27:16 PM

Filing # 233696032 E-Filed 10/15/2025 01:27:16 PM

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

STATE OF FLORIDA,
Plaintiff/Appellee,

vs.

NEIL JOSEPH GILLESPIE,
Defendant/Appellant.
_______________________________/

CASE NO. 2019-CF-4193
CASE NO. 2020-CF-2417
CASE NO. 2021-CF-0286
CASE NO. 2022-CF-1143

**DEFENDANT'S NOTICE OF PROSECUTORIAL MISCONDUCT CASE 2020-CF-2417**

Defendant *pro se* Neil Joseph Gillespie ("Gillespie") gives Notice of Prosecutorial Misconduct in Case No. 2020-CF-2417, and states:

1. On April 28, 2022, the State of Florida, by and through Assistant State Attorney Mark D. Simpson, Fla. Bar No. 0889636, acting on behalf of WILLIAM M. GLADSON, State Attorney for the Fifth Judicial Circuit of the State of Florida, in and for Marion County, entered its announcement of *nolle prosequi* against the Defendant, NEIL JOSEPH GILLESPIE, in Case No. 2020-CF-2417 based on the following grounds: Victim is deceased.

2. The alleged victim in case no. 2020-CF-2417, Sarah M. Thompson, was age 35 when she died of a drug overdose May 12, 2021 in Stay & Save Motel Room 118 rented by Matthew Paul Smith, arrested August 14, 2020 for trafficking in 10.66 grams of fentanyl, in violation of Fla. Stat. 893.135.1C4A, in Marion County, Florida criminal case no. 2020-CF-3414. Smith was facing a mandatory minimum 3 years in prison, and a $50,000 fine, but instead was released February 17, 2021 by Judge Anthony Tatti with 188 days time served and probation.

3. On April 24, 2025 Gillespie made a Freedom of Information Act (FOIA) request to the Federal Election Commission, as Candidate ID: P60022993 for FEC records: (Appendix A)

> Pursuant to FOIA, provide all records related to my complaint of election fraud in the 2020 presidential election. Provide all records of my emails to the Commission in 2020 and 2021. Provide records for Sarah Thompson, an associate of mine who died May 12, 2021 in Ocala, Florida. Ms. Thompson was mentioned in my emails to the Commission.



Sarah with brother Andrew Coutu



Sarah Thompson's address of record on June 7, 2020: 14445 SW 34th Terrace Road, Ocala, FL 34474-2332

**INTRODUCTION**

4. Criminal negligence by State Attorney Bill Gladson allowed Sarah Thompson to die May 12, 2021, in the motel room of convicted drug trafficker Matthew Smith for the benefit of Gladson himself, former State Attorney Brad King, and other state actors[1], including,

Marion County Judges Anthony Tatti, Judge Gary Sanders, and Judge Ann Craggs
The Ocala Police Department (OPD), including Reserve Officer Brad King
Sheriff Billy Woods, Marion County Sheriff's Office, MCSO lawyer Tim McCourt, and the MCSO deputies involved in the home invasion of Gillespie's residence June 7, 2020
Florida Governor Ron DeSantis
Florida Attorney General Ashley Moody
Florida Supreme Court Clerk John Tomasino,
15th Circuit State Attorney David Aronberg
Joe Scarborough of MSNBC "Morning Joe", Charles Joseph Scarborough, FL Bar # 881211
Pennsylvania Officials, Josh Shapiro as Attorney General (2017-2023)
Bucks County Magistrate Judge Michael W. Petrucci (a nonlawyer)
Bucks County Common Pleas Judge Clyde W. Waite
Bucks County District Attorney Matthew Weintraub

and every attorney licensed to practice law who sought or held elected office, Democrat or Republican, of any party affiliation, or of No Party Affiliation (NPA), outside the judicial branch of government, including President Joe Biden and Vice President Kamala Harris, as well as The Florida Bar, U.S. Supreme Court Chief Justice John Roberts and The Supreme Court of the United States. [fn1, as of May 12, 2021]. Judges of the United States District Court, Middle

District of Florida, and the U.S. Eleventh Circuit Court of Appeals, joined the fray after May 12, 2021, and are accessories after the fact, including:

U.S. District Judge Sheri Polster Chappell, USDC, MDFL, 5:25-cv-486
U.S. Magistrate Judge Philip R. Lammens, USDC, MDFL, Ocala Division
U.S. District Judge Paul G. Byron, USDC, MDFL, Case No. 5:21-cv-416
U.S. District Judge Wendy W. Berger, USDC, MDFL, Case No. 5:21-cv-463
U.S. District Judge Wendy W. Berger, USDC, MDFL, Case No. 5:22-cv-13
U.S. District Judge Roy B. Dalton, Jr., USDC, MDFL, 5:22-cv-37
U.S. Circuit Judge Robin S. Rosenbaum, CA11, Appeal No. 21-13333
U.S. Circuit Judge Britt C. Grant, CA11, Appeal No. 21-13333
U.S. Eleventh Circuit Clerk of Court David J. Smith, Appeal No. 21-13686

5. On September 2, 2025 Gillespie publicly identified additional state actors, see APPENDIX S, GILLESPIE v. BARKER, RODEMS & COOK, and Gillespie's email September 3, 2025 to Marissa Duquette, General Counsel, MCSO (Appendix S-1) that states in part:

> Dear Ms. Duquette,
> Good evening. Forwarded below is my Service of Court Documents in a 20 year-old lawsuit against my former lawyers that I voluntarily dismissed on Sep-02-2025. While you are free to reach your own conclusion, it appears a lawyer named Ryan Christopher Rodems of Morgan & Morgan had a hand in my arrest and prosecution, two times in Marion County, for lawfully recording phone calls, along with Ashley Moody and possibly certain members of the Moody family. Clearly Florida Attorney General Pam Bondi (now Attorney General of the United States) had no issue with my well-known practice of lawfully recording phone calls, which has been publicly disclosed for years online, https://www.nosue.org/telephone-recording/

**Death of Sarah M. Thompson May 12, 2021 (Appendix B)**

6. Brad King knew Gillespie's arrest was wrong in case 2020-CF-2417, as a matter of law, from the facts of the case, Sarah's jailhouse postcards mailed to Gillespie, and from Zachary Phipps (Bar ID #65936), Gillespie's appointed counsel who condemned the arrest. Brad King also knew Gillespie alleged criminal misconduct by Judge Craggs in his home foreclosure. Judge Craggs signed Gillespie's bench warrant in 2020-CF-2417, and presided over Gillespie's first appearance in jail, where Judge Craggs approved her own bench warrant. Rather than loose Gillespie's case at trial, the SAO concocted a plan to end Sarah Thompson's life, the alleged

victim, to save face and leave a cloud over Gillespie. Brad King engaged in a conspiracy with his executive director Bill Gladson to rig the 2020 election for State Attorney in favor of Bill Gladson to be elected automatically. (Appendix E). After Gladson took office as State Attorney, Brad King joined the Ocala Police Department. Bill Gladson made Matt Smith a deal: Judge Anthony Tatti released Smith on February 17, 2021, with 188 days time served and probation. Smith faced a mandatory minimum 3 years in prison and a $50,000 fine under Fla. Stat. 893.135 for trafficking in 10.66 gams of fentanyl. (Appendix C). Sarah died May 12, 2021 in Smith's motel room. Bill Gladson made sure Gillespie and Sarah's sister Johanna were each in jail and unable to help Sarah on May 12, 2021. Brad King worked for the Ocala Police Department on May 12, 2021 when Sarah died in Smith's Room 118 at the Stay & Save Extended Stay Motel, and the Ocala Police Department investigated Sarah's death and issued Incident Report #202100066603. (Appendix B). Tellingly OPD never obtained surveillance video from COX.

7. Florida Governor Ron DeSantis rewarded the accomplices to Sarah's death with promotions, in contrast to his removal from office in 2022 of Andrew Warren, Hillsborough County State Attorney over abortion, and his removal from office in 2023 of Ninth Judicial District State Attorney Monique Worrell in Orlando for "neglect of duty and incompetence." Gillespie contends Bill Gladson is guilty of "neglect of duty and incompetence", and of Negligent Homicide at the very least, if not Political Assassination by First Degree Murder.

- On September 12, 2023, Governor Ron DeSantis rewarded Brad King for his role in Sarah's death with appointment to the bench as Marion County Circuit Court Judge.
- On December 20, 2023, Governor Ron DeSantis rewarded Tim McCourt for his role in Sarah's death with an appointment to the bench as a Marion County Circuit Court Judge. The Ocala Star-Banner reported McCourt's judicial appointment in a story published December 21, 2023 that includes remarks by Bill Gladson:

State Attorney Bill Gladson said he's "excited for McCourt," and believes McCourt is "well qualified for the position."

"He will be an asset to the bench," Gladson said.

Gladson and McCourt worked side by side for a number of years as colleagues at the SAO. Leaving the SAO, the working relationship continued when McCourt took over as general counsel at the sheriff's office.

As general counsel, Gladson said, McCourt said is "very helpful to us."

https://www.ocala.com/story/news/courts/2023/12/21/tim-mccourt-appointed-circuit-judge-was-marion-sheriffs-general-counsel/71997750007/

- On December 27, 2024, Governor Ron DeSantis rewarded Bill Gladson for his role in Sarah's death with an appointment to the Fifth Judicial Circuit JNC.
- On January 16, 2025, Governor Ron DeSantis rewarded Attorney General Ashley Moody for her role in Sarah's death with an appointment to the United States Senate.

**TABLE OF CONTENTS**


Page 6 Gillespie v. Google LLC, et al.; "Chase" owns 352-615-3819 (Appendix D)
Page 8 Ocala Police Dept., Essential Tax Relief and the IRS (Appendix D)
Page 11 Rigged 2020 Election for State Attorney, Fifth Circuit (Appendix E)
Page 12 OPD Incident Report #202100066603 Death of Sarah Thompson (Appendix B)
- Convicted Drug Trafficker Matthew Paul Smith (Appendix C)
- Sarah Thompson Criminal Cases 2020-2021 (Appendix N)
- Sarah Thompson DOC #U51563 Marion 2014-CF-2361 (Appendix M)
- Sarah Thompson Background State of Maine (Appendix P)

Page 20 Advent Heath Failure to Treat Sarah Thompson May 3, 2021 (Appendix Q)
Page 22 Ocala Police Chief Mike Balken, Public Records Sarah Thompson (Appendix G)
Page 22 MCSO Failure To Enforce Felon Registration Fla. Stat. 775.13 (Appendix O)
Page 24 Home Invasion June 7, 2020, Transcripts 911-calls, Police Cams (Appendix R)
Page 26 Harboring Escaped Convict Gregory J Raines DC #V20456, *Notice to Brad King, FSC Clerk John Tomasino, TFB General Counsel Rick Courtmanche* (Appendix I)
Page 27 AG Ashley Moody Public Records for Sarah Thompson (Appendix J)
Page 28 Transcripts of One-Party Consent *Good Samaritan* Phone Calls (Appendix L)
Page 29 Hillsborough Circuit Civil, Gillespie v. Barker, Rodems & Cook (Appendix S)
Page 39 2012 Requested AG Bondi Opinion One-Party Consent Recording (Appendix F)
Page 39 Death of Michelle Ogurek, Drug Addiction Ignored by MCSO (Appendix H)
Page 40 Declaration of Neil J. Gillespie Arrest in Pennsylvania Feb-04-2021
Page 42 USSC Gillespie v. Federal Election Commission (Appendix T)
Page 48 Gillespie's Mar-15-2021 jail house certified mail to Chief Justice Roberts (Appendix K)
Page 50 Response by the Supreme Court of the United States (Appendix T)
Page 52 Civil Rights Complaint US Judge Sheri Polster Chappell (Appendix U)
Page 54 Justice Sotomayor's "speed dial" retort in USSC No. 24A1153
Page 56 Conclusion

DEFENDANT'S NOTICE OF PROSECUTORIAL MISCONDUCT CASE 2020-CF-2417

**Gillespie v. Google LLC, et al. (Appendix D)**

8. Gillespie lost access to his Justice Network Google/Blogger account while incarcerated from February 4, 2021 to April 7, 2022. Gillespie lost his email address <neilgillespie@mfi.net> and lost his recovery phone number 352-615-3819. On April 10, 2024, Gillespie used the online service BeenVerified to locate the owner of Gillespie's recovery phone number 352-615-3819. The results appear in Appendix D and show "Chase" and a mobile phone with NEW AT&T WIRELESS PCS, LLC - GA. The BeenVerified search results April 10, 2024 for the owner of Gillespie's recovery phone number 352-615-3819 appear at Appendix D-1. "Chase" may refer to a bank, JPMorgan Chase & Co. "Chase" may also refer to a person named Chase King with a Florida address. Chase King is the son of former State Attorney Brad King. Chase King is a sworn law enforcement officer and detective with the Marion County Sheriff's Office (MCSO).

9. Google Legal Support emailed Gillespie on April 24, 2025 at 3:30 PM: (Appendix D-2)

> Regarding Your Legal Process (Internal Ref. No. 63342450)
> Thu, Apr 24 at 3:30 PM
> From: google-legal-support@google.com
> To: neil4justice@yahoo.com
>
> Hello,
>
> Google does not respond to informal requests for non-public information about our users. The information you are requesting, to the extent it exists, is subject to state and federal laws. In accordance with those laws, it is Google's policy to only provide subscriber information pursuant to a properly served, valid third party subpoena or other appropriate legal process.
>
> To learn more about serving Google with a civil subpoena or other legal process that requests user data, please see our help center article at https://support.google.com/faqs/answer/6151275?hl=en.
>
> Regards,
> Google Legal Support

10. Previously Gillespie sued Google LLC, et al, for access to his Google account under a legal cause of action called replevin, a legal remedy which enables a person to recover personal property wrongly taken or detained, and to obtain compensation for resulting losses, see:

> Neil J. Gillespie v. Alphabet/Google, et al, case no. 2024-CA-209,
> Complaint for Replevin, Marion County Circuit Court, Florida Fifth Circuit

On February 28, 2024, Defendants Alphabet Inc. and Google LLC, removed the Florida lawsuit to federal court, in the U.S. District Court, Middle District of Florida, Ocala Division, case no. 5:24-cv-101. On March 26, 2024, U.S. District Judge Marcia Howard remanded the case back to Florida. (Appendix D-3). On April 8, 2024 Gillespie filed a First Amended Complaint in state court to establish a record in response to the Court's ongoing malfeasance, misfeasance and/or nonfeasance. On April 10, 2024 Gillespie gave Notice of Voluntary Dismissal Without Prejudice. On April 17, 2024 Marion County Circuit Judge Stephen Rogers entered Order Of Dismissal without prejudice in case no. 2024-CA-209. (Appendix D-4).

11. On August 20, 2024 Shanell M. Schuyler of The Florida Bar issued a decision letter in a final review Gillespie requested in his complaint against Google's lawyers, RFA No. 24-10794, see Neil J Gillespie against Damon Justin Whitaker, Bar Number: 923591, (Bryan Cave Leighton Paisner LLP). The Florida Bar dismissed Gillespie's complaint. (Appendix D-5)

12. At this time it appears Gillespie must file another lawsuit against Alphabet/Google to obtain non-public information about himself in order to claim his Google account, and:

1.Google Account Neil Gillespie: neilgillespie@mfi.net

2.Blogger profile Neil Gillespie
https://www.blogger.com/profile/12580744990628852454

3.Blogger blogspot blog Neil J. Gillespie for President 2020
https://neil2020.blogspot.com/

4.YouTube channel Neil Gillespie
https://www.youtube.com/@neilgillespie4184

5.Gmail account, <Nei156@gmail.com>

13. Gillespie informed Google LLC on June 14, 2024 of a response from The Legal Help Center, Justice & Diversity Center, Bar Association of San Francisco, fedpro@sfbar.org, that he planned to request limited-scope legal assistance with a federal diversity case under 28 U.S.C. sec. 1332. (Appendix D-2). The Legal Help Center responded:

> RE: Google Lawsuit and U.S. District Court for the Northern District of California
> From: fedpro (fedpro@sfbar.org)
> To: ceiticein@yahoo.com
> Date: Wednesday, May 29, 2024 at 01:54 PM EDT
>
> Hello,
>
> Thank you for the information. The Federal Pro Bono Project assists self-represented litigants with federal civil cases filed in the Northern District of California. We are unable to assist with any other cases and we do not provide legal representation. We only provide limited-scope legal assistance for the aforementioned type of cases. Please let us know if you need any more information.
>
> Thank you,
>
> Federal Pro Bono Project
> Justice & Diversity Center, Bar Association of San Francisco
> Appointment Line: 415-782-8982
> Email: fedpro@sfbar.org
> S.F. Office - 450 Golden Gate Ave., 15th Fl., Room 2796

**Ocala Police Department, Essential Tax Relief and the Internal Revenue Service (IRS)**

14. Gillespie's alleged Gmail account <Nei156@gmail.com> appears on his federal tax return IRS Form 1040 (2022), a matter involving tax preparer fraud by Essential Tax Relief, 970 SW 6th Ave #106, Ocala, FL 34471. On March 23, 2023 Essential Tax Relief concocted a fraudulent return on the basis of an Earned Income Tax Credit (EITC) refund of $1,431.11 and a $655.89 Tax Return Preparer fee. Upon closer review of the return later that day, Gillespie contacted the Ocala Police Department, who advised him to make a complaint.

15. On March 24, 2023 Gillespie made a complaint to the Ocala Police Department (OPD) against Essential Tax for Fraudulent Tax Return Preparation and Identify Theft, OPD report number 202310000312. Sergeant Melissa Buetti investigated the complaint. On March 24, 2023 Gillespie sent a test email to himself at <Nei156@gmail.com> but was unable to access the email account. In 2022 the EITC was not available to filers over age 65. (Gillespie was age 66).

16. Sgt. Buetti was supposed to recover the tax documents Gillespie signed on March 23, 2023 and return them to him. When Sgt. Buetti failed to do so, Gillespie obtained public records April 19, 2023 from the OPD. The responsive records show evidence Sgt. Buetti is part of the tax preparer return fraud: Her police email address <MBUETTI@OCALAPD.GOV> appears on an Amended IRS Form 1040 tax return for the 2022 tax year that Gillespie did not authorize, that was attached to a IRS Form 1040-X Gillespie did not authorize. (Appendix D-6). Gillespie notified the OPD of Sgt. Buetti misconduct in June 2023 but got no response.

17. Gillespie noticed another problem with his tax return prepared by Essential Tax Relief. The Earned Income Tax Credit (EITC) refund of $1,431.11 was supposed to be direct deposited to Gillespie's Chase Bank account, for which he provided the routing and account numbers:

> CHASE BANK Routing number 267084131
> CHASE BANK Account number 858610337

However, Gillespie's tax return prepared by Essential Tax Relief shows different numbers.

> Line 35b: Routing number 044111191
> Line 35d: Account number 110623839474883

A Google search showed routing number 044111191 did not belong to Chase Bank, but may belong to Civista Bank, a banking subsidiary of Civista Bancshares. The IRS suggests in its publications that this may be evidence of tax preparer misconduct or fraud.

18. In July 2023 Gillespie faxed the Department of the Treasury, Internal Revenue Service, IRS Form 14157 Return Preparer Complaint, and IRS Form 14157-A, Tax Return Preparer

Fraud or Misconduct Affidavit, against Essential Tax Relief LLC, 1075 Osprey Cove Circle, Groveland, FL, Registered Agent Arly D'Haiti, who is also the tax preparer in the Essential Tax Relief Ocala office, and others, including Sgt. Buetti.

19. A letter April 26, 2024 from the IRS to Gillespie stated in part, "We can't process your complaint for the tax years above [2022] because your supporting information is not complete or is missing the required documentation." On May 23, 2024 Gillespie contacted his elected representative, U.S. Congresswoman Kat Cammack, for assistance with the IRS. On June 3, 2024 Gillespie got a response from Hallie Mallard, Constituent Advocate & Field Rep, for Congresswoman Kat Cammack. A composite of the documents appears at Appendix D-7. Ms. Mallard wrote in part:

> Thank you for reaching out to Congresswoman Cammack's office in regard to the issue you are having with the IRS. We have received the release form and additional paperwork that you submitted and have forwarded our Congressional inquiry to the agency for review. As soon as we receive an update, we will let you know.

20. Congresswoman Cammack was unable to obtain any meaningful relief by April 2, 2025, the date of her last communication. Over the course of two years, hundreds of pages of correspondence have been generated between Gillespie, the IRS, the Ocala Police Department, and Congresswoman Cammack, with no resolution to Gillespie's IRS complaints.

21. On July 9, 2024, Gillespie made a written complaint to Ocala Mayor Ben Marciano. As Mayor, Marciano has sole oversight of the Ocala Police Department. Gillespie's complaint to Mayor Marciano appears at Appendix D-8, and begins:

> This is a complaint regarding the Ocala Police Department (OPD), Sergeant M. Buetti and my complaint of March 24, 2023 against Essential Tax for Fraudulent Tax Return Preparation and Identify Theft, OPD report number 202310000312. The enclosed response by OPD Sergeant Frank Zadnik shows the OPD is unable to properly investigate this matter.

22. When Mayor Marciano failed to respond by October 8, 2024, Gillespie emailed him again, along with Congresswoman Cammack, the Treasury Inspector General for Tax Administration (TIGTA), Ocala City Attorney William Sexton, and all the members of the Ocala City Council, President Pro-Tem - Kristen Dreyer, Council President Barry Mansfield, Councilmember James Hilty Sr., Councilmember Ire Bethea, Sr., and Councilmember Jay Musleh. Gillespie's email appears at Appendix D-9. Gillespie wrote in part:

> Back on July 9, 2024 I contacted you about corruption involving the Ocala Police Department, Sergeant M. Buetti, and my complaint of March 24, 2023 against Essential Tax for Fraudulent Tax Return Preparation and Identify.
>
> How can I get a response from you, short of a federal lawsuit against the City of Ocala? I am providing this email to the Ocala City Counsel.

23. Mayor Marciano responded to Gillespie by email on October 15, 2024. (Appendix D-10)

> Mr. Gillespie, I am following up in regard to your email/letter. Sgt. Zadnick investigated the case and the allegations were deemed without merit and our standards for OPD were correct in how we conducted the case. I support the investigation. Thank you
>
> Ben Marciano<br>Mayor<br>110 SE Watula Avenue<br>Ocala, FL 34471<br>(352) 401-3977<br>e-mail: bmarciano@ocalafl.gov<br>Website: www.ocalafl.gov

**Rigged 2020 Election for State Attorney, Florida Fifth Judicial Circuit**

24. On September 25, 2025, Gillespie submitted a DS-DE 34 Elections Fraud Complaint to Cord Byrd, Secretary of State Florida Department of State, Office of the General Counsel. The complaint appears in Appendix E: Rigged 2020 General Election For State Attorney, and begins:

> Dear Secretary Byrd:
>
> This is a DS-DE 34 Elections Fraud Complaint in the 2020 general election for State Attorney of the Fifth Judicial Circuit against two candidates: Incumbent candidate Bradley E. King, FL Bar ID 341045 ("Brad King"), and King's executive director, William McDonald Gladson, FL Bar ID 115908 ("Bill Gladson"). This complaint alleges

Brad King and Bill Gladson rigged the 2020 election for State Attorney in favor of Bill Gladson being elected automatically, and thereby denied the voters in the Fifth Judicial Circuit the right to vote for State Attorney in the 2020 general election. This scheme was reported by the Orlando Sentinel in an Editorial on May 1, 2020 "Brad King's power play cost voters a chance to choose their next state attorney".

King claimed he decided not to run because he wanted to spend more time with his family. But on March 8, 2021 Brad King joined the Ocala Police Department, and was a sworn law enforcement officer on May 12, 2021 when Sarah M. Thompson died in the hotel room of convicted drug trafficker Matthew Paul Smith, and the Ocala Police Department investigated Sarah's death and issued Incident Report #202100066603. Governor DeSantis later appointed Brad King as circuit judge. It appears King did not plan to spend more time with his family.

After Bill Gladson took office as State Attorney, Gladson made Matthew Smith a deal: Judge Anthony Tatti released Smith on February 17, 2021, with 188 days time served and probation. Otherwise Smith faced a mandatory minimum 3 years imprisonment and $50,000 fine under Fla. Stat. 893.135 for trafficking in 10.66 gams of fentanyl after his arrest on August 14, 2020 by the Marion County Sheriff's Office. (Marion case no. 2020-CF-3414). Sarah died May 12, 2021 in Smith's hotel room. SA Gladson made sure Neil Gillespie and Sarah's sister Johanna were each in jail and unable to help Sarah on May 12, 2021 when she died. This is evidence of the homicide of Sarah Thompson by Bill Gladson, with Judge Tatti and Brad King as co-conspirators.

**Ocala Police Incident Report #202100066603 death May-12-2021 of Sarah M. Thompson**
Former State Attorney Brad King was an OPD officer Mar-08-2021 to Nov-13-2023

25. The Ocala Police Department (OPD) Incident Report #202100066603 for the death of Sarah Thompson appears in Appendix B-1 and shows:

- The death was reported May 12, 2021 at 18:48:33 (6:48 PM) by Matthew Smith
- Location: 2430 NE 2nd St. Apt 118, Ocala, FL, 34470, Stay & Save Extended Stay Motel
- Officer Assigned: Richard Tuck, Investigated by Det. B. Sirolli, and Officer McDaniel
- Victim: Sarah May Thompson, 14445 SW 34th Terrace Road, Ocala 34473
- Contact: Matthew Paul Smith, 2430 NE 2nd St. Apt 118, Ocala, FL (motel address)

See Appendix B-6, Smith's address on the motel folio: 3155 SW 95th St., Dunnellon, FL 34432

26. The Ocala Police Dept. Incident Report #202100066603 of Sarah's death May 12, 2021 was made during the time when former State Attorney Brad King worked for Ocala Police Department as a sworn officer from March 8, 2021 to November 13, 2023, and contains materially false or misleading information, including:

Page 3 false statement: "Smith advised that he knew Thompson to have used heroin and methamphetamine in the past, however he was under the impression she was no longer using after having been recently released from jail."

Rebuttal: Motel manager John Sabolesky told Gillespie on April 29, 2022 that Sarah was a "mess" when he saw Smith take her to his room; meaning Smith knew Sarah was under the influence of drugs on May 12, 2021 and in need of emergency medical treatment; instead Sarah died.

Smith was convicted of drug trafficking February 17, 2021. Bill Gladson made Smith a deal: Judge Anthony Tatti released Matthew Smith on February 17, 2021, with 188 days time served and probation. Smith faced a mandatory minimum 3 years in prision and $50,000 fine, Fla. Stat. 893.135, trafficking in 10.66 gams of fentanyl. (Appendix C).

See Appendix C: Convicted Drug Trafficker Matthew Paul Smith

DOC-018 date 09-14-2020 INFORMATION FILED BY STATE ORIGINAL
Michael Adam Smith, Jr., Assistant to BRAD KING, State Attorney Fifth Circuit
COUNT I: TRAFFICKING IN FENTANYL (F1) 893.135(1) and 893.03
COUNT II: POSSESSION OF METHAMPETAMINE (F3) 893.13(6)(A), 893.03(2)(c)
COUNT III: POSSESSION OF PARAPHERNALIA (M1) 893.145 and 893.147
COUNT IV: PROVIDING FALSE NAME/IDENTIFICATION TO LEO (M1) 901.36(1)
COUNT V: NO VALID DRIVERS LICENSE (M2) 322.02 and 322.39

See Appendix N: Sarah Thompson Criminal Cases 2020-2021

1. Florida v. Sarah M. Thompson, 2020-CF-516, Marion County, Feb-05-2020
Sarah was arrested by the MCSO in Dunnellon, FL in a vehicle driven by Matthew Paul Smith, who gave his brother's name, Marc Lawrence Smith, as his own name, to the arresting officer.

Fla. Stat. 893.13.6A / POSSESSION OF METHAMPHETAMINE
Fla. Stat. 893.13.6A / POSSESSION OF CONTROLLED SUBSTANCE
Fla. Stat. 893.13.6B / POSSESSION OF CANNABIS LESS THAN 20 GRAMS
Fla. Stat. 893.147.1 / POSSESSION OF DRUG PARAPHERNALIA
March 3, 2020 Prosecutor Announcement of No Information (all cases dropped)
Related investigation by CHASE KING MCSO19OFF028747 (04), Nov-06-2019

2. Florida v. Sarah M. Thompson, 2020-CF-971, Sumter County, Aug-31-2020
Sarah was arrested by the Sumter County Sheriff's Office with Charles Westman

Fla. Stat. 893.13.6a / POSSESSION OF CONTROLLED SUBSTANCE
Fla. Stat. 893.147.1 / POSSESSION OF PARAPHERNALIA
Fla. Stat. 499.03.1 / POSSESSION OF NEW DRUG WITHOUT PRESCRIPTION
September 24, 2020, RETURN OF SERVICE, Marion Co. Civil Case 2020-CA-934
Sarah Thompson's inmate jail mail to Neil Gillespie from inmate Brittnay Goetz
April 21, 2021 Court Adjudicated Guilty No Trial (released with time served)

3. Florida v. Sarah M. Thompson, 2021-MM-0171, Marion County, Jan-08-2021
Sarah was arrested by the Ocala PD for domestic violence against her sister Johanna

Fla. Stat. 784.03.1A1 / BATTERY DOMESTIC VIOLENCE
Sarah Thompson's inmate jail mail postcards (3) to Neil Gillespie
February 24, 2021 Adjudicated guilty-convicted by Judge Sarah Ritterhoff-Williams
TRANSCRIPT Change of Plea and Sentencing, Public Defender Sean Gravel
Sentenced to Marion County Jail for 48 days; released to Sumter County Jail

4. Florida v. Sarah M. Thompson, 2020-CF-971, Sumter County, March 25, 2021
Contempt 901.11 (Violation of ROR bond 2020-CF-971 Fla. Stat. 893.13.6a)
Contempt 901.11 (Violation of ROR bond 2020-CF-971 Fla. Stat. 893.147.1)
Contempt 901.11 (Violation of ROR bond 2020-CF-971 Fla. Stat. 499.03.1)
April 21, 2021 Adjudicated guilty-convicted by Judge William H. Hallman III
TRANSCRIPT Change of Plea and Sentencing, Conflict Counsel Gregory Williams
Sentenced April 21, 2021 by Judge Hallmann to time served; Released April 21, 2021 to the street, homeless with no income, no assets, no support, no drug treatment

- Sarah was denied adequate care May 3, 2021 at AdventHealth, Ocala, FL
- Sarah died May 12, 2021 of a drug overdose 21 days after release from jail

See Appendix M: Sarah Thompson DOC U51563 Marion 2014-CF-2361

1. Florida Department of Corrections, Sarah Thompson DC Number U51563
July 1, 2014 Obstruct Crime Investigation, Marion Case 1402361, 1Y 6M 0D
VOP sentence 09/22/2015; in custody 11/09/2015; released 06/22/2016

2. Marion County Case No. 2014-CF-2361 Arrest Affidavit, Information, Docket. Arrested July 1, 2014, Evidence Tampering (918.13), Retail Petit Theft (812.014), Resisting Arrest Without Violence (843.02), Dealing In Stolen Property (812.019.1 dropped). Daniel Logiudice present not arrested.

- Marion County Jail Incident Report #15002388, July 3, 2015, Inmate Sarah Thompson was in labor and transported to the hospital via ambulance
- Heart of Adoptions letter to Sarah Thompson July 8, 2015. Monroe Regional Medical Center Birth Certificate (blank) with Sarah's name on the back
- DOC 170 handwritten letter of Patricia Thompson (Sarah's mother) Jul-31-2015 begging Judge Pope to help Sarah, a former honor roll student, overcome drug addiction
- DOC 171 ORDER STRIKING CORRESPONDENCE TO THE COURT Order of Judge Pope Striking the letter and admonishing Patricia Thompson

See Appendix P: Sarah M. Thompson Background in the State of Maine

- State of Maine criminal history for Sarah M. Thompson (2007-2008) domestic violence, assault, unlawful possession of scheduled drug. Kennebec County
- Carlton Norwood Obituary (2012) Pittston, ME, Sarah's common law husband

Pages 4, 8 evidence impeaching Smith: "During the course of the investigation, several suspected narcotics and paraphernalia were located in the small pouch on the bathroom sink. The suspected narcotics were later transported to the Ocala Police Department, and I received presumptive positive field test results for heroin/fentanyl, cocaine, and methamphetamine." Page 8: The following items were collected as evidence.

003PRP - One Florida ID card to Sarah May Thompson.
004PRP - One black LG cell phone belonging to the victim.

005PRP - Ziplocs, tin foil, and straws.
006PRP - Plastic bag with cosmetic things in it and the narcotics were also in it.
007PRP - 2 small Ziploc bags that contains meth labeled A and B.
008PRP - Heroin/Fent.
009PRP - One rock of cocaine.
010PRP - 3 small Ziploc bags that contained the meth and heroin labeled 008, A and B

See APPENDIX B-3 Certification of Death, State File No. 2021093235; B-4 Autopsy Report by Barbara C. Wolf. MD, District Medical Examiner; B-5 Toxicology Report

AGENT STATEMENT Incident #: 202100066603 (Appendix B-1, p14) Upon my investigation in this incident, I have been unable to identify any person(s) who the deceased in this case may have acquired the previously mentioned recovered narcotics located in the room from.

<u>Page 5 false statement</u>: "He [Smith] stated they only recently became involved in a relationship but had known each other for a while. He stated that to his knowledge she was not using illegal narcotics but knew she used to."

> <u>Rebuttal</u>: Smith and Thompson began dating in mid 2019. Sarah told Gillespie she was pregnant with Smith's child but miscarried in February 2020. The on-site motel manager John Sabolesky told Gillespie on April 29, 2022 that Sarah was a "mess" when he saw Smith take her to his room, meaning Smith knew Sarah was under the influence of drugs on May 12, 2021 and needed medical treatment. Instead Smith let Sarah die alone in Room 118, apparently aided and abetted by Brad King, Bill Gladson, Judge Tatti, Ocala Police Chief Balken, et. al.

<u>Page 5</u>: "Smith stated he had been staying at this location for about 3 months and was the sole tenant listed on the room." Appendix B-6 shows Smith checked in March 22, 2021; checked out May 17, 2021; 56 days total. Paid $2,000 rent, $200 tax, $2200 total.

<u>Page 6 No Video Provided</u>: "I made contact with the on-site manager, John Sabolesky in reference to surveillance video. Two cameras covered the exterior walkway that leads up the decedent's room. He stated he would have to contact Cox Cable to determine the best way to get video to me. I asked him for the timeframe of 0600-1900 hours for 5/12/21. I gave him my business card with the case number and times written on it. He stated he would contact me tomorrow (5/13/21) to get me the video."

> <u>Rebuttal</u>: Appendix B-2 OPD records request-Video footage (PD-2290-2023: "Good morning, Mr. Gillespie, I am unable to fulfill your request. Ocala Police Department is not in possession of video footage for this case from an external source, as it was never obtained. Sincerely, DG/OPD Records Team"

27. The Certification of Death for Sarah Thompson (Appendix B-3) shows a residence address of 642 SE 31 Avenue, Ocala, Florida 34471. This was the residence of Brenda Platek,

the mother of Matthew Smith (Appendix B-7), a person who hated Sarah, according to Platek's Facebook message to Gillespie on April 27, 2022 (Appendix B-8). Gillespie was surprised to get a message from Brenda Platek, and previously only knew her as "Aunt Brenda" from Sarah.

**April 27 2022 Facebook Messenger (Appendix B-8)**
Neil Gillespie: Sarah Thompson died May 12, 2021, did you know?

Brenda Platek: Ya I know in my sons hotel room he found her when he got home from work ur point

Neil Gillespie: I just found out, that's all. I have been away for the last 14 months

Brenda Platek: Sorry for that but it wasn't the smartest thing she was a drug addict unfortunately she was a horrible person and put me through hell

Neil Gillespie: Yes, she put me through a lot, but Sarah had a good side too

Brenda Platek: Really agree stole from me got into my credit cards fucked with my passwords so I couldn't get into my accounts great person for sure not a fan

Neil Gillespie: Yes, she did a lot of bad things, from what I know, she didn't have much moral training, but I overlooked the bad, like your son must have too

Brenda Platek: It is what it is I really have nothing more to say she iviated all my privacy ruin my life and I overcome that and her evil way of which I am proud she taught me to never trust anyone again and I still have a problem with being afraid for my life but I will overcome that in time nothing more to say

Neil Gillespie: From what I read on her FB page, it was probably suicide, she missed her long-time boyfriend frim Main who died in 2011

Brenda Platek: No she was a drug addict period they all have a sad story poor me story too anyone that listen and obviously u did and fell for it
Sorry for ur loss but I am all set

Neil Gillespie: I understand why you feel that way, I am sorry she hurt you, and caused you such pain

April 28 2022 (Final message to Brenda Platek)
Neil Gillespie: I appreciate your comments Brenda, looking back I should have avoided Sarah, there were lots of warning signs

28. Previously Brenda Platek, Matthew Smith and Sarah Thompson all lived at 13155 SW

95th St., Dunnellon, FL 34432 in an older trailer home[1]. On May 11, 2020 Brenda Platek called the Marion County Sheriff's Office to remove Sarah from the property according to MCSO Incident Report Number 2005110297 (Appendix B-9). Deputy Angela Fitch (6065) and Deputy Alan Hewett (1378) responded to the call. Sarah called Gillespie to pick her up. Gillespie was present and recalls he spoke briefly with one or both deputies but not Brenda Platek. Gillespie assisted Sarah with his vehicle removing her property from 13155 SW 95th St., Dunnellon, FL.

29. Ocala Police Department Incident Report #202100066603 on death of Sarah Thompson materially misrepresents the relationship between Sarah and Matthew Smith. The report states:

> OPD DETECTIVE B. SIROLLI STATED SMITH INFORMED HIM THAT HE AND THE DECEDENT RECENTLY BECAME INVOLVED IN A RELATIONSHIP BUT HAVE KNOWN EACH OTHER FOR SOME TIME, AND KNEW THE DECEDENT HAD A HISTORY OF ILLEGAL DRUG USE. (Page 12)

Sarah and Smith became romantically involved in mid 2019. Sarah was pregnant with Smith's child until Sarah believed she miscarried in February 2020 at Gillespie's home. Yes, Matthew Smith knew Sarah "had a history of illegal drug use" because Smith was with Sarah when she was arrested February 6, 2020 with drugs in Dunnellon. (Appendix N, Case #2020-CF-516)

30. Sarah posted a photo of herself and Smith on Craigslist on July 14, 2019 under Ocala> housing> wanted: room/share (Appendix J, 3-10 records of AAG Brittany Quinlan)

> https://ocala.craigslist.org/sha/d/handyman-and-cleaning-lady/6940624177.html
> **Handyman and cleaning lady (Ocala area)**

[1] The property was owned at the time by Joseph and Shannon Hawkins, a relative of Brenda Platek. The Hawkins' also owned the adjoining property, a home at 13111 SW 95th St., Dunnellon, FL.



> "Hello my boyfriend and I are looking for a room to stay in as our apartment was recently deemed uninhabitable. I am 34 yrs old and he is 41. He has 20 yrs contracting experience and can basically fix anything in your house. I have been in food service my entire life and I love to clean. Unfortunately we did not have any savings put aside for a situation like this. Please call, text, or email me if you are in a position to help us as of now we will be sleeping on the street tonight. Thank you for taking the time to read this."

31. The hotel on-site manager John Sabolesky told Gillespie on April 29, 2022 that Sarah was a "mess" when he saw Matthew Smith take her to his room, see paragraph 6:

> PLAINTIFF'S VERIFIED NOTICE OF NOLLE PROSEQUI IN CASE 2020-CF-2417
> Case 5:22-cv-00037-RBD-PRL Document 14 Filed 05/17/22 Page 1 of 31 PageID 572
>
> 6. On April 29, 2022, I spoke with the hotel's manager, John, and he confirmed that Sarah Thompson died in room 118 of a drug overdose. John confirmed that room 118 was rented on May 12, 2021 to Matthew Smith. John said Sarah was a "mess" when he saw Smith take her to room 118. A rental agreement for Matthew Smith in room 118 is attached.

32. Matthew Smith was with Sarah when she was arrested February 6, 2020 with drugs in Dunnellon, FL. (Appendix N, Case 2020-CF-516). Sarah was charged with 4 drug offenses:

> Fla. Stat. 893.13.6A / POSSESSION OF METHAMPHETAMINE

Fla. Stat. 893.13.6A / POSSESSION OF CONTROLLED SUBSTANCE
Fla. Stat. 893.13.6B / POSSESSION OF CANNABIS LESS THAN 20 GRAMS
Fla. Stat. 893.147.1 / POSSESSION OF DRUG PARAPHERNALIA

- February 7, 2020 Matthew Smith arranged and paid for Sarah's $6,000 bond
- March 3, 2020 Prosecutor Announcement of No Information (all cases dropped)
- Related investigation by CHASE KING, MCSO19OFF028747 (04), Nov-06-2019

33. Matthew Smith provided a false name to the arresting officer. Smith gave his brother Marc's name as his own. (2020-CF-3414). An incident report by MCSO Deputy J. Allen (6045) MCSO20OFF002806 (01) shows in relevant part:

> POST MIRANDA, MR. SMITH ADVISED HE IS NOT A DRUG USER AND IS UNAWARE OF ANY DRUGS BEING IN THE VEHICLE. MR. SMITH ADVISED IF DRUGS WERE LOCATED THEN THE DRUGS MUST BELONG TO HIS GIRLFRIEND, THE DEFENDANT.

34. After her release from jail, Sarah Thompson told Gillespie she was angry with Smith for telling the arresting officer that the "drugs must belong to his girlfriend". Sarah told Gillespie this betrayal by Smith ended their relationship. Sarah told Gillespie she planned to retaliate against Smith, by either falsely accusing him of rape, or setting fire to his trailer home.

35. Sarah Thompson's final post on her Facebook page the day she died May 12, 2021 shows Sarah was unhappy, perhaps suicidal[2], and not in a happy romantic relationship with Matthew Smith as claimed in Ocala Police Department Incident Report #202100066603. The report states:

> OPD DETECTIVE B. SIROLLI STATED SMITH INFORMED HIM THAT HE AND THE DECEDENT RECENTLY BECAME INVOLVED IN A RELATIONSHIP BUT HAVE KNOWN EACH OTHER FOR SOME TIME, AND KNEW THE DECEDENT HAD A HISTORY OF ILLEGAL DRUG USE. (Page 12)

36. Sarah Mae Thompson, Facebook Account URL: https://www.facebook.com/scarah6985

Sarah's Final Facebook Post, May 12, 2021: "Don't love what you can't trust. Don't hate what you can't have. Don't say what you can't show. Don't judge what you don't know."

https://www.facebook.com/share/1L4taJCi11/

[2] Marion County Jail records show Sarah Thompson was a suicide risk.




**Advent Heath Failure to Treat Sarah Thompson May 3, 2021 (Appendix Q)**

37. Sarah Thompson was at Advent Health Hospital in Ocala on May 3, 2021 with symptoms of a drug addiction needing tratment. Sarah was apparently discharged the same day without treatment. Sarah died nine days later on May 12, 2021 of a drug overdose. This Appendix shows a request for records, and Gillespie's efforts with the Marion County Sheriff's Office (MCSO) to demonstrate Sarah needed held with a serious drug addiction.

38. On or about May 15, 2020 Gillespie provided this photo to the MCSO of Sarah in his home at diner, on the nod, with her face in her food. (Appendix Q-4, page 71)



TO THE MCSO. On Friday, May 15, 2020, while in my home, Sarah Thompson said she heard a woman's voice, and asked me about the woman. Sarah and me were alone in my

> home. Sarah sat in a chair in another room, with a view into my bedroom, and stared at me as I worked on my computer writing an appellate brief, and continued to ask about the woman. Sarah called me a liar for not admitting to the presence of the woman. It appeared Sarah was hallucinating. In the past, in June 2019, Sarah had a similar hallucination.
> Neil J. Gillespie
>
> Above is a photo of Sarah Thompson in my home at diner the other night, on the nod, with her face in her food.
> Neil J. Gillespie

39. On June 19, 2019 Gillespie emailed Susan D. Bailey, Assistant Public Defender and attorney of record for Sarah in Marion County Criminal Case 42-2014-CF-002361-AXXX-XX, (Appendix Q-4, page 70). Bailey did not respond to this email about Sarah:

> Last week Ms. Thompson moved into my home as a live-in home health provider, see attached. On June 16, 2019 Sarah admitted to taking prescription medication from my room. Sarah apologized and promised not to take my pills again.
>
> I don't know what to do. I have no faith in the Marion County Sheriff's Office, over issues related to my home foreclosure (2013-CA-00115). I have no faith in the UDEST or DCF. I do not want to report Sarah to L.E. (I support legalizing drugs). But I may not be the best person to help Sarah. I am aware she placed a newborn for adoption in 2015. She arrived at my door the result of mistaken identity through a website.
>
> Initially Sarah seemed nice, and she needed a place to stay. I felt compassion for a homeless, unremarried widow. And it is difficult for a single man age 63 with health issues and limited income to find competent help. Previously two other providers did not work out, one age 40 (drugs) and one age 43 (drinking/smoking).
>
> Currently Sarah has a broken tooth that needs extraction, but she refuses medical treatment I found, see https://www.truecaredentistocala.com/emergency-dentist.html
> I don't want to throw Sarah out into the street. I believe she needs stability, but the people in her life may not be stable. I would appreciate any suggestions you may have. Thank you.

40. Gillespie provided Sarah over the counter dental supplies Dec-2020, Appendix Q-4, page 72.

41. Gillespie sought treatment for Sarah with his primary care doctor, Andrew D. Pogiatzis, MD, West Marion Family Practice PA, 8599 SW Hwy 200, Ocala, FL-34481-7729. Dr. Pogiatzis refused to see Sarah. The Ocala-News reported May 23, 2025 that Dr. Pogiatzis was blamed for a patient's opioid dependency through unnecessary prescriptions. Pogiatzis was fined $10,000, placed on

probation for six months, and must reimburse the Florida Department of Health Board of Medicine $3,500 for allegedly committing medical malpractice by issuing prescriptions to a patient for over two years and eventually diagnosing that same individual with "opioid abuse." the story said.

42 On December 16, 2020 during Gillespie's visit to West Marion County Community Hospital ER for food poising, he asked the attending physicians, Nicholaus Josey, MD, and John Scales, MD, about possible treatment for Sarah's addiction. The doctors reacted negatively, as if Sarah had an unacceptable disease. The doctors refused all discussion about addiction, and Gillespie got the impression they may have thought he used illegal drugs, which he does not.

43. As of today, Advent Health has not provided records. Gillespie directed his requests to Jeffrey S. Bromme, Esq., FL Bar # 66594, Email: jeffrey.bromme@adventhealth.com, AdventHealth Ocala EVP and Chief Legal Officer, 1500 SW 1st Avenue, Ocala, FL 34471

**Ocala Police Chief Mike Balken, Public Records Sarah Thompson (Appendix G)**

44. Gillespie's email December 31, 2020 to Ocala Police Chief Mike Balken

Sarah falsely reported Gillespie owed her money, 202000200096 CAD Report
Sarah Thompson is "DNR", Do Not Rent, at the Wyndham Hotels and Resorts
Sarah overdosed in a horse barn at 700 NW 38th Ave. needed 2 NARCAN to revive
Sarah involved Gillespie in a scheme to cash a bad check in the amount of $1,432
Sarah and Daniel Logiudice engaged in grand theft; only Logiudice was prosecuted
Sarah caused $1,486.34 damage to Gillespie's vehicle during a 7 hour joy ride
Kyria Wilson reported Sarah assaulted her and her baby 202000187975cfspr
Sarah is worthy of redemption, see WHO AM I (QUESTION) SARAH THOMPSON

**MCSO Failure To Enforce Felon Registration Fla. Stat. 775.13 (Appendix O)**

45. Sarah Thompson was released June 22, 2016 from the Department of Corrections to 4229 Memphis Ave., New Port Richey, FL and was required under Fla. Stat. 775.13 to register as a convicted felon when moving to another county. Sarah failed to register in Marion County and Gillespie was unaware of her subsequent crimes in 2018 in Pasco County, including:

- Florida v. Sarah M. Thompson, 2018-MM-0025, Dec-31-2017 (Walmart theft)
  Fla. Stat. 812.014.3a / LARC-PETIT THEFT 2ND DEGREE 1ST OFFENSE

Adjudicated guilty June 20, 2018 by Pasco County Judge Anne Wansboro
Sentenced to 20 days county jail; DOC 18 Affidavit of new arrest Aug-23-2018

Florida v. Sarah M. Thompson, 2018-CF-5131, August 23, 2018 (Hardee's theft)
817.568.2a/Fraud-ImpersonUsePossID of another person w/o consent F1 (Aug-01-2018)
817.568.2a/Fraud-ImpersonUsePossID of another person w/o consent F1 (Jul-10-2018)
812.014.3a/LARC-PETIT THEFT 2ND DEGREE 1ST OFFENSE
DOC 18, Sarah's Plea Agreement, shows a maximum sentence of 10 years DOC
Adjudicated guilty November 30, 2018 by Circuit Judge Mary Handsel
DOC 24 Judgment and Sentence: 180 days in jail; DOC 23, fines, costs and fees $1004.
Represented by Howard James Williams, ID 100083, Public Defender Sixth Circuit

Supplemental Report August 27, 2018 Florida v. Sarah M. Thompson, 2018-CF-5131. Sarah Thompson located and arrested. Sarah's theft, by fraudulent use of a management card, resulted in the termination of Tammy Rogers, a supervisor who also lost her place to live as a result. The attached police report shows Sarah blamed Tammy Rogers for leaving the card "lying around". A victim statement by Tammy Rogers is also provided.

46. Email through September 16, 2020 with MCSO General Counsel Tim McCourt re section 775.13 and Sarah Thompson appears at Appendix O-7. McCourt made excuses for Thompson and failed to protect Gillespie and the citizens of Marion County. McCourt's failure to enforce 775.13 also harmed Sarah Thompson, who was on a path to a drug overdose death. Sarah needed incarceration and drug treatment. Names in the email chain:

**From:** "Neil Gillespie" <neilgillespie@mfi.net>
**To:** "Shelby Forret" <sforret@sao5.org>; "Danielle Ruse" <druse@sao5.org>; "Brad King" <bking@sao5.org>; "Brittany Quinlan" <Brittany.Quinlan@myfloridalegal.com>; <Eservicemarion@Sao5.Org>; "Neil Gillespie" <neilgillespie@mfi.net>; "Jared Gainey" <jgainey@sao5.org>
**Cc:** "Douglas, Robert (Chief)" <rdouglas@marionso.com>; "Pulford, Louis" <lpulford@marionso.com>; <djoiner@marionso.com>; <pbloom@marionso.com>; "Woods, William" <Sheriff.Woods@marionso.com>; <jburton@marionso.com>; "Greg Harrell" <GHarrell@marioncountyclerk.org>

47. Email September 8, 2020 with ASA Danielle B. Ruse section 775.13 re section 775.13 and Sarah Thompson appears at Appendix O-8. Names in the email chain:

**From:** "Neil Gillespie" <neilgillespie@mfi.net>
**To:** "Danielle Ruse" <druse@sao5.org>; "Jared Gainey" <jgainey@sao5.org>; <Eservicemarion@Sao5.Org>; "Colbert, Brittany" <bcolbert@marionso.com>
**Cc:** "Jared Gainey" <jgainey@sao5.org>; "Shelby Forret" <sforret@sao5.org>; "Brad King" <bking@sao5.org>; "Brittany Quinlan" <Brittany.Quinlan@myfloridalegal.com>;

<sbailey@pdo5.org>; <Eservicemarion@Sao5.Org>

**Home Invasion June 7, 2020, Transcripts 911-calls, Police Cams (Appendix R)**

48. On June 7, 2020 Marion County Sheriff Billy Woods authorized his deputies to aid and abet Sarah Thompson in Home-invasion robbery (812.135) see Exhibits 1 and 2, and Exhibits 3 through 13, transcripts of 911 calls and MCSO body camera video transcripts on June 7, 2020. Also: TRANSCRIPT of Gillespie's first appearance with Judge Ann Craggs June 14, 2020; TRANSCRIPT of Gillespie's call with counsel Zachery Phipps who condemned the arrest Default Judgment Nov-19-2020 Sarah Thompson Unlawful Detainer Case #2020-CA-934

1. Gillespie letter June 15, 2020 to Frank Talbot, Assistant U.S. Attorney, Jacksonville, FL
2. Gillespie letter (addendum) June 15, 2020 to Frank Talbot, AUSA, Jacksonville, FL
3. 2020, 06-07-20, TRANSCRIPT 911 CALL N Gillespie S20-06070071, 6.56 minutes
4. 2020, 06-07-20, TRANSCRIPT 911 CALL N Gillespie S20-06070101, 16.53 minutes
5. 2020, 06-07-20, TRANSCRIPT 911 CALL S Pickerell S20-06070074, 6.25 minutes
6. 2020, 06-07-20, TRANSCRIPT 911 CALL S Thompson S20-06070064, 13.27 minutes
7. 2020, 06-07-20, TRANSCRIPT 911 CALL S Thompson S20-06070071, 2.47 minutes
8. 2020, 06-07-20, TRANSCRIPT, Deputy Nicholas Austin and Gillespie body camera 7p
9. 2020, 06-07-20, TRANSCRIPT, Deputy Nicholas Austin and Gillespie body camera 12p
10. 2020, 06-07-20, TRANSCRIPT Deputy Kenneth Fairman and Gillespie body camera 6p
11. 2020, 06-07-20, TRANSCRIPT Deputy Kenneth Fairman and Gillespie body camera 25p
12. 2020, 06-07-20, TRANSCRIPT, Deputy Karla Chartier and Gillespie body camera 16p
13. 2020, 06-07-20, TRANSCRIPT Deputy N. Rosaci - Recording From Phone, 6p
14. 2020, 06-14-20, TRANSCRIPT Judge Ann Craggs first appearance 2020-CF-2417
15. 2020, 07-30-20, TRANSCRIPT, Gillespie call with appointed counsel Zachery Phipps
16. Default Judgment Nov-19-2020 Sarah Thompson Unlawful Detainer Case #2020-CA-934

49. Gillespie's court appointed counsel, Zachary Phipps, Fla. Bar No. 65936, told Gillespie during a recorded telephone call on July 30, 2020, that case no. 2020-CF-2417 was being prosecuted as "retribution" for Gillespie's civil rights lawsuit against wrongful home foreclosure on a HECM reverse mortgage (Neil J. Gillespie vs. Fifth Judicial Circuit Florida and Judge Ann Milinda Craggs, Case No. 2018-CA-2640, Marion County Florida Circuit Court). Mr. Phipps was a part of several email conversations on June 7, 2020 with Gillespie and Marion County Sheriff's Office (MCSO) personnel, including Sheriff Billy Woods and MCSO General Counsel

Timothy McCourt, Fla. Bar No. 44604. On June 7, 2020, after Sarah Thompson got kicked out of Brenda Platek/Matthew Smith's home in Dunnellon, she tried to force her way into Gillespie's home falsely claiming residency. A transcript of Gillespie's recorded call with Mr. Phipps shows:

Transcript, July 31, 2020, beginning page 12, line 15:

MR. GILLESPIE: Well, here's the other thing. Here's the other thing. You know, you claim that early on, my references to Sarah Thompson were immaterial. But actually, they're very material. And if you look at the record in this, clearly, the police, the Marion County Sheriff's Office are using her and defending her criminality to get to me, okay? There's no reason that they should have stood there and let her tear my house apart. It was a home invasion, okay? And they're making it out --

MR. PHIPPS: Mr. Gillespie, this is part of the

Transcript, July 31, 2020, page 13, line 1:

reason why I'm going to withdraw my motion because obviously, I have seen now, you know, what's going on between you and the Marion County Sheriff's Office. And I am in agreement with you that this 2020 case is being pushed forward as a way, as retribution, I guess, for, you know, the things that you, you know, request from them and, you know, litigation and all that stuff. I agree with you there, okay? And that is part of the basis why I'll withdraw the motion. You know, I've been part of those conversations too. I've seen, you know, Mr. McCourt's responses and then obviously, you know, you have an issue with certain, you know, officers there, so, you know, when that whole issue went down and all that stuff and it seemed at first that nothing was going to come of it, you know, they didn't assist you and you were the rightful homeowner and then all of a sudden you wind up being the one that's arrested, I thought that was, you know, I thought that was a, at the very least, abuse of their discretion.

MR. GILLESPIE: And not only that, the judge that signed the arrest warrant is Craggs. The judge that appeared at the first appearance was Craggs.

50. Gillespie was not arrested on June 7, 2020. MCSO Deputy Nicholas Austin told Gillespie on June 7, 2020 to file an unlawful detainer action against Sarah Thompson, and Gillespie did so on June 8, 2020, see Case No. 2020-CA-934, Neil J. Gillespie v. Sarah M. Thompson, et al.

51. Gillespie was arrested June 13, 2020 during a SWAT style raid on his home at 8092 SW 115th Loop, Ocala, Florida. Judge Ann Craigs authorized the MSCO to smash open Gillespie's front door, authorized deputies of the MCSO to break into his home with guns drawn, and with a K-9, while Gillespie was peacefully writing an amended complaint in Case No. 2020-CA-934.

**Harboring Escaped Convict Gregory J Raines DC #V20456, *Notice to Brad King, FSC Clerk John Tomasino, TFB General Counsel Rick Courtmanche* (Appendix I)**

52. Inmate Gregory N. Raines, DC# V20456, escaped from Bridges of Sante Fe at approximately 3:37 PM on 03/24/2020. Bridges of Sante Fe is located in Gainesville, Florida in Alachua County. Raines was a former boyfriend of Sarah Thompson who she was harboring at one or more motels in Ocala in May 2020. She also brought Raines to Gillespie's home when he was asleep. At the time Gillespie did not know Raines' identity and never met him, but later found evidence Gillespie provided to the Department of Corrections on June 28, 2020

53. Raines was apprehended July 9, 2020 in Citrus County in the company of two females, one Dana Lea Harbinson (date of birth: 09/18/1987) (DL # H612172878380), the other female not identified. Raines was in possession of heroin when captured. Appendix I shows:

Gillespie's email June 28, 2020 to the Florida Department of Corrections
Re Absconder/Fugitive Information Search for "Gregory"

Gillespie's email Monday, June 29, 2020, RE: Fugitive Gregory J Raines DC #V20456

- Florida Department of Law Enforcement, Rick Swearingen, RickSwearingen@fdle.state.fl.us
- Brad King, State Attorney <bking@sao5.org>
  State Attorney's Office <Eservicemarion@Sao5.Org>
  ASA Jared R Gainey <jgainey@sao5.org>
  ASA Michael Adam Smith Jr. <asmith@sao5.org>
- FBI Tampa Division <tampa.division@ic.fbi.gov>
- FBI Jacksonville Division <jacksonville@ic.fbi.gov>
- Chief Frank Talbot, DOJ-MDFL <frank.m.talbot@usdoj.gov>

U.S. Attorney's Office, 300 N. Hogan St, Suite 700, Jacksonville, FL 32202

- Deputy Chief Kelly S. Karase <kelly.karase@usdoj.gov>
- Civil Rights Division, MDFL <USAFLM.Civil.Rights@usdoj.gov>

Gillespie's email, Tuesday, June 30, 2020 Fw: Fugitive Gregory J Raines DC #V20456

- Florida Supreme Court Clerk John Anthony Tomasino <tomasino@flcourts.org>
- Florida Bar Deputy General Counsel Rick Courtemanche <RCourtemanche@floridabar.org>

Citrus County Sheriff's Office email Monday August 24, 2020 @3:19 PM to Gillespie with Arrest Affidavit for Gregory J Raines DC #V20456, fugitive picked up July 9, 2020.

Gillespie's email to SA Brad King, ASA Gainey, ASA Smith, Brittany Quinlan, Assistant Attorney General, Monday August 24, 2020 @4:01 PM re fugitive Gregory Raines DC #V20456 picked up. Report states Raines was in possession of heroin and was accompanied by two female passengers. Q to Brad King: Was one of the passengers Sarah May Thompson? (No response)

Citrus County Sheriff's Office email Tuesday August 25, 2020 7:41 AM to Gillespie, provided the identity of one female: Dana Lea Harbinson (date of birth: 09/18/1987)

MCSO record response Dec-20-2024, no contact with SAO re fugitive Gregory Raines; Gillespie did not initially notify the MCSO of fugitive Raines due to its misconduct.

**AG Ashley Moody Public Records for Sarah Thompson (Appendix J)**

54. Brittany Quinlan, Assistant Attorney General, represented Florida in Gillespie's civil rights lawsuit against Marion County foreclosure Judge Ann Melinda Craggs and the Fifth Judicial Circuit, Case 2018-CA-2640 in the foreclosure of Gillespie's home. AAG Quinlan also represented Florida in Gillespie's unlawful detainer lawsuit against Sarah Thompson et al, Case 2020-CA-934, and was copied on emails later provided as public records by AAG Greg Slemp for AG Ashley Moody including records appearing in Appendix J:

Records of Gillespie's email, with attachments, to Chief Mike Balken, Ocala Police Department, cc to Brittany Quinlan, Assistant Attorney General on December 31, 2020 to Brittany.Quinlan@myfloridalegal.com. Email to mbalken@ocalapd.org, Cc: opdrecords; Brittany Quinlan; Tyrell Daniel; Jehan Azar; Russell.Ward@marioncountyfl.org; William.Harris; Decker, Sharon; Teachey, Debra; Christopher Anderson; peining@ocalalaw.com; Neil Gillespie

- Gillespie's email December 31, 2020 to Ocala Police Chief Mike Balken
- Sarah falsely reported Gillespie owed her money, 202000200096 CAD Report
- Sarah Thompson is "DNR", Do Not Rent, at the Wyndham Hotels and Resorts
- Sarah overdosed in a horse barn at 700 NW 38th Ave. needed 2 NARCAN to revive
- Sarah involved Gillespie in a scheme to cash a bad check in the amount of $1,432

- Sarah and Daniel Logiudice engaged in grand theft; only Logiudice was prosecuted
- Sarah caused $1,486.34 damage to Gillespie's vehicle during a 7 hour joy ride
- Kyria Wilson reported Sarah assaulted her and her baby 202000187975cfspr
- Sarah is worthy of redemption, see WHO AM I (QUESTION) SARAH THOMPSON

Records of Gillespie's letter, with enclosures, to Brittany Quinlan, Assistant Attorney General, dated September 21, 2020, delivered by UPS No. 1Z64589F0392798822 to the Florida Office of the Attorney General, 501 E. Kennedy Boulevard, Suite 1100, Tampa, FL 33602. I believe the letter was also provided by email to Brittany.Quinlan@myfloridalegal.com. EMAIL to: Eservicemarion@Sao5.Org; Jared Gainey; Brad King; Woods, William; Woods, William;

- Sarah Thompson information for Tim McCourt MCSO to serve summons 20-CA-934
- Massachusetts woman Sarah Crittenden paid $250 to Ms. Thompson and spent time with her at the Comfort Suites in Dunnellon in room rented to Thomas Pillar
- July 24, 2019 Cragslist ad by Sarah Thompson, **Handyman and cleaning lady (Ocala area)**, for work/handout, photo of Sarah and boyfriend Matthew Smith
- CL ad 10 days after Sarah vacated Gillespie's home, was living with Matt and Brenda Platek, 13155 SW 95th Street, Dunnellon, MCSO Incident number: 2005110297
- Sarah Thompson text notice, vacated Gillespie home on May 16, 2020
- Sarah Thompson text intimidation: "U can come give me a ride right now or u can never see me again." (Gillespie refused to drive Sarah to a place to buy drugs)

Sarah's email to Gillespie August 15, 2019: "I only stay with you when I have nowhere to stay Cuz you annoy me and I annoy you...But we're still friends."

**Transcripts of One-Party Consent (*Good Samaritan*) Phone Calls (Appendix L)**

55. Gillespie sought to inform the authorities of the severity of Sarah's addiction,

> "And while in some circles, it is popular to chalk substance abuse up to flawed character and lack of willpower, for at least a century, the courts have recognized it for what it is: a serious mental illness. See Linder v. United States, 268 U.S. 5, 18 (1925)."

and to make clear Thompson contacted Gillespie for his protection and assistance, and that Gillespie was not the party violating pre-release conditions of no-contact. The authorities did not assist Sarah Thompson. Instead, the MCSO arrested Gillespie for lawfully recorded one-party consent phone calls under 18 USC § 2511(2)(d), and the State Attorneys Office under both Brad King and Bill Gladson prosecuted Gillespie for those lawfully recorded phone calls, thereby setting the stage, *inter alia*, for Sarah Thompson's death by drug overdose on May 12, 2021.

56. One-Party Consent Legally Recorded Telephone Calls under 18 U.S.C. § 2511(2)(d)

TRANSCRIPT date November 24, 2020, Re: Sarah Thompson
By SHELLY L. OWEN, CET, Certified Transcriptionist (AAERT)

PHONE CALL 1: November 24, 2020, 3:37 PM, SARAH THOMPSON called from 352-436-3983 wants ride from Amscot

PHONE CALL 2: November 24, 2020, 5:21 PM, SARAH THOMPSON called from 352-433-3513 (caller ID Carlos Rodrigue) wants ride from Amscot

PHONE CALL 3: November 24, 2020, 5:59 PM, called 352-433-3513 spoke to Jeanine (sic) [Janine Luker], SARAH THOMPSON used Jeanine's (sic) phone to call me (ID Carlos Rodrigue) MARION CASE 2021-CF-0286. From page 5:

> 9 JEANINE: She was walking around with a bag. I know
> 10 that she was trying to get somebody else to pick her up,
> 11 'cause she said that she'd been there for hours and hours.
> 12 But she was kind of like moving around with a bag.
> 13 MR. GILLESPIE: Well, she's got a serious drug problem.
> 14 JEANINE: Oh, that makes a lot of sense.
> 15 MR. GILLESPIE: Yeah, and I'm trying to help her.

57. TRANSCRIPT dates December 14, 2020, and January 5, 2021, Re: Sarah Thompson
By SHELLY L. OWEN, CET, Certified Transcriptionist (AAERT)

PHONE CALL 1: December 14, 2020, 4:22 PM, SARAH THOMPSON called on phone of Luci Felix 954-937-1801 wants ride

PHONE CALL 2: January 5, 2021, 4:41 PM, SARAH THOMPSON CRYING getting kicked out of Howard Johnson, needs ride ASAP

**Hillsborough Circuit Civil, Gillespie v. Barker, Rodems & Cook (Appendix S)**
Hillsborough County Circuit Civil Case No. 2005-CA-7205, filed August 11, 2005

58. Over twenty years ago (August 11, 2005) Gillespie commenced a civil lawsuit in Hillsborough County (2005-CA-7205) to recover $7,143 stolen by Barker, Rodems & Cook, P.A. and William J. Cook from Gillespie in the settlement of the Amscot lawsuit. Gillespie prevailed on a motion to dismiss in 2006. But as of today, the Hillsborough trial court, and the Thirteenth Judicial Circuit, has failed to resolve the case, because of a conflict of Ryan C. Rodems. Mr. Rodems is unlawfully representing himself against Gillespie, a former client in a substantially related matter, see McPartland v. ISi Inv. Services, Inc., 890 F .Supp. 1029,

M.D.Fla., 1995. *Plaintiff's First Amended Complaint* is on Scribd http://www.scribd.com/doc/55956605/

59. Gillespie posted on his Justice Network website Florida Bar Complaint against Ryan Christopher Rodems, No. 2013-10,271 (13E). Rodems countersued Gillespie for libel https://nosueorg.blogspot.com/2012/09/florida-bar-complaint-against-ryan.html

60. Recently the civil lawsuit became active. The firm Barker, Rodems & Cook, PA no longer exists. Mr. Rodems resigned over ten years ago. Rodems now works for Morgan & Morgan. https://www.forthepeople.com/attorneys/ryan-christopher-rodems/ On November 2, 2025 Gillespie gave Notice of Voluntary Dismissal without prejudice. (Appendix S-2)

61. On May 24, 2025 Gillespie brought to the attention of the court (Appendix S-4) a story published by the American Bar Association on September 5, 2024 that reported Judge Scott Blaue of Brevard County, Florida, issued show-cause orders to Rep. Randy Fine, and his lawyer Ryan Christopher Rodems, for Fine making finger gestures in court. Florida Today reported "Judge holds Randy Fine in contempt of court" in a story published October 1, 2024. Gillespie is unaware of what, if anything, happened to Mr. Rodems. The Florida Today story concluded,

> Burns said in a statement to reporters: "The judge made it clear that courtroom is an 'island of sanity where we civilly resolve disputes,' where the kind of middle-school bullying Randy Fine engages in on social media and elsewhere has no place. I'm glad to see him finally being held accountable for his behaviors far beneath his office."

62. Mr. Rodems' modus operandi is "middle-school bullying" and one reason this case has not been resolved after 20 years. On May 25, 2025 Mr. Rodems responded to Gillespie's email by email from Morgan & Morgan with an odd question. (Appendix S-4)

> "They let you out of jail?"

63. Mr. Rodems, by and through Morgan & Morgan, asked Gillespie if "they" let him out of jail. This odd question caused Gillespie pause. What was Mr. Rodems referring to, and how did

that question about Gillespie being "let out of jail" relate to this case? Gillespie revisited his old files in this case for the answer, and found his request to Florida Attorney General Pam Bondi.

64. On August 1, 2012, Gillespie contacted Florida Attorney General Pam Bondi for an Attorney General Opinion: (Appendix S-5)

> This is my request to the Attorney General for a legal opinion of my long-time, well-known practice of lawfully recording phone calls. It is public knowledge that "All calls on home office business telephone extension (352) 854-7807 are recorded for quality assurance purposes pursuant to the business use exemption of Florida Statutes chapter 934, section 934.02(4)(a)(l) and the holding of Royal Health Care Servs., Inc. v. Jefferson-Pilot Life Ins. Co., 924 F.2d 215 (11th Cir. 1991 )." This is announced on my Telephone Recording webpage (the same webpage has a updated URL, see below)
>
> https://www.nosue.org/telephone-recording/

65. Gillespie's 77 page letter to Attorney General Pam Bondi noted in part, pp 2-3,

> Since 2006 the business use of my home office extension was civil litigation in Gillespie v. Barker, Rodems & Cook, P.A., et al., 05-CA-7205, Hillsborough County, and Gillespie v. HSBC Bank, et al, case no. 5:05-cv-362-Oc, U.S. District Court, M.D. Fla., Ocala Div. Since 2010 the business use of my home office extension additionally included my Justice Network website, and the following federal lawsuits:
>
> Gillespie v. Thirteenth Judicial Circuit, Florida, et al.
> Case No. 5:10-cv-503-oc WTH-TBS, U.S. District Court, M.D. Fla., Ocala Division
> Appeal No. 12-11213-C, U.S. Court of Appeals 11th Circuit
>
> Gillespie v. Thirteenth Judicial Circuit, Florida, et al.
> Case No. 5:11-cv-539-oc WTH-TBS, U.S. District Court, M.D. Fla., Ocala Division
> Appeal No. 12-11028-B. Court of Appeals 11th Circuit
>
> In February 2010 Kirby Rainsberger, Police Legal Advisor to the Tampa Police Department, investigated my recording of attorney Ryan Christopher Rodems and found no wrongdoing on my part or court reporter Mr. Borseth. Mr. Rodems made a false affidavit about our phone call and submitted the affidavit to the court for tactical advantage. Mr. Rainsberger found Rodems was not right or accurate in representing to the court as an "exact quote" language that clearly was not an exact quote. Mr. Borseth transcribed the Rodems call, with the same kind of script found on Castagliuolo' transcript. Mr. Rainsberger found nothing wrong with the transcript made by Mr. Borseth. Exhibit 3 is Mr. Rainsberger's letter of Feb-22-2010, together with my response. A complete file with transcript is uploaded on Scribd http://www.scribd.com/doc/58081371/

> I believe Mr. Castagliuolo is misinformed about Chapter 934, Florida Statutes as interpreted by Royal Health Care Servs., Inc., 924 F.2d 215 (11th Cir. 1991). In my personal opinion Florida law prohibits the "interception" of certain communications, not all recording. The U.S. Eleventh Circuit Court of Appeals has held that because only interceptions made through an "electronic, mechanical or other device" are illegal under Florida law, telephones used in the ordinary course of business to record conversations do not violate the law. In other words, the telephone set "intercepts" the call, not the recording device, and the phone call is lawfully recorded after lawful interception. This is in contrast to a court-ordered wiretap where a call is "intercepted" before it reaches the telephone set. A land-line home office telephone, really any land-line home phone, is the type that intercepts a call before it is recorded. That is my personal opinion, not a legal opinion or legal advice. Upon request I will submit a layman's memorandum of law.

66. Since then Gillespie learned that federal law permits one-party consent to record calls, see 18 U.S.C. 2511(2)(d) if not acting under color of law. Two party consent in Florida is unconstitutional under the Supremacy Clause, Article VI, clause 2, U.S. Constitution, that establishes the U.S. Constitution, federal statutes, and U.S. Treaties as "the Supreme Law of the Land". It provides that these are the highest form of law in the U.S. legal system, and mandates that all state judges must follow federal law when a conflict arises between federal law and either the state constitution or state law of any state.

67. Notwithstanding 18 U.S.C. 2511(2)(d), and the U.S. Supremacy Clause, Gillespie was arrested two different times in Marion County, Florida, for one-party consent telephone recording. Perhaps Mr. Rodems was referring to those two arrests when he asked, did "They let you out of jail?". While incarcerated Gillespie commenced a Constitutional Challenge to Florida Statute 934.03, Interception and Disclosure of Wire, Oral, or Electronic Communication Prohibited, see Neil J. Gillespie v. State of Florida, U.S. District Court, Middle District of Florida, Ocala Division, USDC 5.21-cv-416 Constitutional Challenge Fla. Stat. 934.03. U.S. District Judge Paul G. Byron dismissed the constitutional challenge without prejudice under the Younger v. Harris abstention doctrine.

68. Attorney General Pam Bondi responded to Gillespie by email of Samantha Santana on August 10, 2012. (Appendix S-5). Ms. Santana wrote in part:

> We appreciate that you consider our office as a source of assistance, and I have reviewed your correspondence. Section 16.01(3), Florida Statutes, which sets forth the powers and duties of the Attorney General's Office, authorizes our office to provide legal opinions and statutory interpretations to public officials on questions of law pertaining to their own official duties. This precludes us from giving legal opinions or advice to private individuals

Attorney General Ashley Moody (2019-2025)
Rule 9.900 (m) Notice of Constitutional Question 5D23-2005

69. Gillespie gave notice in Fifth DCA Appeal 5D23-2005 under Rule 9.900 (m) Notice of Constitutional Question, on September 27, 2023, that he served his Constitutional Challenge to Florida Statute 934.03, *Interception and Disclosure of Wire, Oral, or Electronic Communication Prohibited*, to Attorney General Ashley Moody, and to State Attorney William Gladson Fifth Judicial Circuit of *Interception of wire, oral, or electronic communications prohibited*, United States District Court, Middle District of Florida, Ocala Division, Neil Joseph Gillespie v. State of Florida, case no. 5:21-CV-00416-PGB-PRL. (Appendix S-6).

70. A Return of Service for Ashley Moody, Attorney General, is attached to Appendix S-6 and shows service November 5, 2021 @10:24 AM at 107 W Gaines Street, Tallahassee, FL 32399 by James Kady for ABC Legal. A Return of Service for William Gladson, State Attorney for the Fifth Judicial Circuit, is attached, and shows service November 5, 2021 @8:17 AM at Marion County Judicial Center, 110 NW 1st Ave Ste 5000 Ocala, FL 34475-6614, by Kenneth Kelley for ABC Legal. (Appendix S-6)

71. On April 4, 2022, United States District Judge Paul G. Byron entered the attached Order of Dismissal (DOC 23) without prejudice under the *Younger v. Harris* abstention doctrine, 401 U.S. 37 (1971), on the premise that ordinarily a pending state prosecution provides the accused a

fair and sufficient opportunity for vindication of federal constitutional rights." *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1264 n. 7 (11th Cir. 2004).

72. As of today the pending state prosecution in 2019-CF-4193 and 2021-CF-286 has not provided the accused a fair and sufficient opportunity for vindication of his federal constitutional rights, contrary to the holding in the Order (DOC 23) of United States District Judge Paul G. Byron. Note: U.S. District Judge Paul Byron and U.S. Senior District Judge James Moody, Jr. each served in the Middle District of Florida. Senior Judge Moody was then and is now the father of Ashley Moody. There are other Moody family conflicts with Gillespie in this case.

73. As of today Appeal 5D23-2005 in 2019-CF-4193 and 2021-CF-286 has not provided the accused a fair and sufficient opportunity for vindication of his federal constitutional rights.

Request to Florida Governor Rick Scott December 14, 2018, case SC11-1622
Filing # 82153209 E-Filed 12/14/2018 03:38:36 PM

74. Gillespie requested Florida Governor Rick Scott (Appendix S-6) as the state's constitutional supreme executive, action against certain justices of the Florida Supreme Court for criminality in case SC11-1622, including,

Justice Barbara J. Pariente Justice R. Fred Lewis
Justice Peggy A. Quince Justice Jorge Labarga
Justice James E. C. Perry (retired)

75. The above justices failed to uphold the Florida Constitution, and their oath of office, when the court treated Gillespie's appeal of the decision in 2D10-5197 as a petition for writ of mandamus,

> "Petitioner's Notice of Appeal, filed in this Court on August 8, 2011, has been treated as a petition for writ of mandamus seeking reinstatement of the proceedings in the district court of appeal below."

then denied my petition on the same grounds:

> "To the extent the petitioner seeks a writ of mandamus directed towards the district court, the petition is denied because a writ of mandamus cannot be issued to direct the manner

in which a court shall act in the lawful exercise of its jurisdiction."

So the court planned to deny Gillespie's petition from the start, before my petition was filed, and before considering the merits. Gov. Scott, a lawyer admitted to practice himself, did not respond.

76. Ryan Christopher Rodems concocted an illegal settlement of this case with certain corrupt judges of the Thirteenth Judicial Circuit, and entered the illegal settlement in state court (05-CA-7205) and federal court (5:10-cv-00503-WTH-TBS). Mr. Rodems' settlement was illegal because he was not authorized to settle lawsuits on behalf of the state of Florida. Only the Florida Attorney General can do so, and Rodems is not the AG. As set forth in Gillespie's request to Gov. Scott, Mr. Rodems illegal settlement amounts to bribery, F.S. § 838.015 Bribery, and F.S. § 838.016 Unlawful compensation or reward for official behavior:

No. 1 Thirteenth Judicial Circuit FL (Chief Judge) $1,984+ bribe
No. 2 Judge Claudia R. Isom, Thirteenth Circuit $1,984+ bribe (Bar ID: 200042)
No. 3 Judge James M. Barton II, Thirteenth Circuit $1,984+ bribe (Bar ID: 189239)
No. 4 Judge Martha J. Cook, Thirteenth Circuit $1,984+ bribe (Bar ID: 242640)
No. 5 David A. Rowland, Gen Counsel 13th Circuit $1,984+ bribe (Bar ID: 861987)
No. 6 Gonzalo B. Casares, ADA Coordinator 13th $1,984+ bribe
No. 7 Robert W. Bauer, (my counsel, 05-CA-7205) $1,984+ bribe (Bar ID: 11058)
No. 8 Law Office RWB PA (counsel, 05-CA-7205) $1,984+ bribe

77. As shown in Gillespie's letter to Gov. Scott, Mr. Rodems' illegal settlement also violates F.S. § 838.022 Official misconduct, F.S. § 839.13 Falsifying records, and F.S. § 837.06 False official statements. Gov. Scott failed to respond, or take any action that Gillespie knows about.

Request for Criminal Prosecution to Attorney General Ashley Moody (May 1, 2019)
Delivered by UPS Ground Tracking #1Z 645 89F P2 9799 5695

78. Gillespie referred the matter to Attorney General Ashley Moody on May 1, 2019. (Appendix S-6). As of today Gillespie does not show a substantive response from her.

Moody Family Conflicts

79. Moody family conflicts, actual conflicts or appearance of conflict, includes:

| | |
|---|---|
| James S. Moody Jr. | Ashley Moody |

FL Bar ID 143250
US District Court
801 N Florida Ave Ste 13A
Tampa, FL 33602-3848

FL Bar ID 487198
United States Senate
387 Russell Bldg # Ofc
Washington, DC 20510-6003

James S. Moody, III
FL Bar ID 715611
Hillsborough Circuit Judge
800 E Twiggs St Ste 314
Tampa, FL 33602-3520

Jeffrey Mitchell Moody
FL Bar ID 160570
Morgan & Morgan
76 S Laura St Ste 1100
Jacksonville, FL 32202-5413

James Lawrence Moody
Bar Number: 20111
Office of the State Attorney
110 NW 1st Ave Ste 5000
Ocala, FL 34475

80. The Defendant, Neil J. Gillespie, d/b/a Justice Network, is a nonlawyer advocate engaged in advocacy, education, news gathering and dissemination, and helping people fight injustice.

81. Harold Minnis, DC 331307, was a client of Gillespie who was refused legal assistance by the Morgan & Morgan law firm, including the following Morgan & Morgan Ocala lawyers:

Morgan & Morgan, Ocala
1007 E. Silver Springs Boulevard
Ocala, FL 34470

Raissa Lynne Booze, Bar #1000430
rbooze@forthepeople.com
Tel: 352-644-2000

Keith Boykins, Bar #96286
kboykins@forthepeople.com

Lindsey Reigh Cappola, Bar #123742
lcappola@forthepeople.com

Christopher Jason Hinckley, Bar #41155
chinckley@forthepeople.com

Alberto H Oliveri, Bar #114942
aoliveri@forthepeople.com

82. Gillespie met Harold Minnis, then MCJ Inmate ID A0258175, as shown in Appendix S-3. Harold Minnis is age 63 and has End-Stage Renal Disease (ESRD). Harold needs kidney dialysis three times a week in order to stay alive. As shown in Appendix S-3, Gillespie's letter to the Honorable Robert W. Hodges, Marion County, Florida, on January 2, 2025 Gillespie drove Harold Minnis to the Marion County Jail to surrender because he was homeless and unable to report a change of address, because he had no address; Harold was homeless, living on the street.

83. The Marion County Jail refused to accept Harold Minnis, so Gillespie reported this as an emergency call to 911. Previously Gillespie provided this information to Harold's pubic defender, Tracya N Smith, Florida Bar No. 1027725, but got no response. The docket for State v. Minnis, case no. 2025-CF-0383, maintained by Gregory Harrell, Clerk and Comptroller, does not show an attorney for Mr. Minnis. The docket shows "Bar ID 88888888" by Harold's name.

84. Gillespie emailed Morgan & Morgan on December 16, 2024 (Appendix S-6) but got no response. Gillespie emailed Morgan & Morgan again on December 30, 2024 (Appendix S-6) and got no response. As shown in the second email, a Florida Bar LRS referral to J.W. Chalkley declined to represent Mr. Minnis. Gillespie now believes Mr. Rodems of Morgan & Morgan is one person behind the denial of disability rights and civil rights of Mr. Harold Minnis.

85. Harold Minnis was arrested on January 29, 2025, and prosecuted by State Attorney Bill Gladson for not reporting a change of address. (Appendix S-6). Mr. Minnis was convicted and sent back to prison. Mr. Minnis has claims against Morgan & Morgan.

86. Fifth Judicial Circuit State Attorney Brad King did not prosecute Sarah Thompson for a failure to report address change crime under 775.13 (Appendix O). Instead Brad King prosecuted Gillespie for defending his home against Thompson's Home-invasion robbery (812.135). Sarah may well be alive today if SA King did his job. But instead, Sarah Thompson is dead.

87. Fifth Judicial Circuit State Attorney Bill Gladson did not prosecute Sarah Thompson for a failure to report address change crime under 775.13 (Appendix O). Instead Gladson prosecuted Gillespie for defending his home against Thompson's Home-invasion robbery (812.135). Sarah may well be alive today if Bill Gladson did his job. But instead, Sarah Thompson is dead.

88. Marion County Sheriff Billy Woods did not arrest Sarah Thompson for a failure to report address change crime under 775.13 (Appendix O). Instead Sheriff Woods arrested Gillespie for

defending his home against Thompson's Home-invasion robbery (812.135). Sarah may well be alive today if Sheriff Woods did his job. But instead, Sarah Thompson is dead.

89. MCSO General Counsel Tim McCourt did not arrest Sarah Thompson for a failure to report address change crime under 775.13 (Appendix O). Instead MSCO lawyer Tim McCourt facilitated Gillespie's arrest by omission for defending his home against Thompson's Home-invasion robbery (812.135). Sarah may well be alive today if MCSO lawyer Tim McCourt did his job. But instead, Sarah Thompson is dead.

90. See Appendix S-1, Gillespie's email Sep-03-2025 to MCSO lawyer Marissa Duquette:

> Dear Ms. Duquette,
> Good evening. Forwarded below is my Service of Court Documents in a 20 year-old lawsuit against my former lawyers that I voluntarily dismissed on Sep-02-2025. While you are free to reach your own conclusion, it appears a lawyer named Ryan Christopher Rodems of Morgan & Morgan had a hand in my arrest and prosecution, two times in Marion County, for lawfully recording phone calls, along with Ashley Moody and possibly certain members of the Moody family. Clearly Florida Attorney General Pam Bondi (now Attorney General of the United States) had no issue with my well-known practice of lawfully recording phone calls, which has been publicly disclosed for years online, https://www.nosue.org/telephone-recording/

91. Appendix S-2: PLAINTIFF'S NOTICE OF VOLUNTARY DISMISSAL 2005-CA-7205
Filing # 230699291 E-Filed 09/02/2025 11:05:52 PM

92. Appendix S-3: PLAINTIFF'S CONFLICT WITH MORGAN & MORGAN
Filing # 230699291 E-Filed 09/02/2025 11:05:52 PM

Ryan C. Rodems, Morgan & Morgan email May 25, 2025 "They let you out of jail?"

93. Appendix S-4: American Bar Association: Contempt Show Cause for Ryan Christopher Rodems
Filing # 230699291 E-Filed 09/02/2025 11:05:52 PM

94. Appendix S-5: GILLESPIE'S REQUEST TO FLORIDA AG PAM BONDI FOR AGO
Filing # 230699291 E-Filed 09/02/2025 11:05:52 PM

95. Appendix S-6: FLORIDA ATTORNEY GENERAL ASHLEY MOODY
Filing # 230699291 E-Filed 09/02/2025 11:05:52 PM

**2012 Request to AG Bondi Opinion One-Party Consent Recording (Appendix F)**

96. On August 1, 2012, Gillespie contacted Florida Attorney General Pam Bondi for an Attorney General Opinion: (Appendix F-1)

> This is my request to the Attorney General for a legal opinion of my long-time, well-known practice of lawfully recording phone calls. It is public knowledge that "All calls on home office business telephone extension (352) 854-7807 are recorded for quality assurance purposes pursuant to the business use exemption of Florida Statutes chapter 934, section 934.02(4)(a)(l) and the holding of Royal Health Care Servs., Inc. v. Jefferson-Pilot Life Ins. Co., 924 F.2d 215 (11th Cir. 1991 )." This is announced on my Telephone Recording webpage (the same webpage has a updated URL, see below)
>
> https://www.nosue.org/telephone-recording/

**Death of Michelle Ogurek, Drug Addiction Ignored by MCSO (Appendix H)**

97. Michelle Ogurek was a mother to three children, one still in high school, when Gillespie contacted MCSO General Counsel Tim McCourt with concerns that she was addicted to drugs. Michelle Ogurek was supposed to be a live-in care provider, but was unable to stay because she had an aggressive Chow Chow dog with her, was addicted to drugs, and unable to work.

98. The name Michelle Ogurek appears in a probable cause affidavit Oct-30-2019 used to arrest Gillespie for lawful one-party consent phone recording, Report #MCSO55ARR00119S, Case #MCSO19OFF28054, Officer A. Lewis, and later Florida v. Gillespie 2019-CF-4193.

> ON OCTOBER 21, 2019, GILLESPIE ALSO E-MAILED GENERAL COUNSEL MCCOURT AND STATED THAT THE OCTOBER 9, 2019 INCIDENT REPORT CONTAINED A FALSE STATEMENT ABOUT HIM MADE BY OGUREK

99. Osceola County Sheriffs Office, Deputy Report for Incident 23I066469, Drug overdose death of Michelle Ann Reid Ogurek, age 56 found June 15, 2023.

100. Florida Death Certification for Michelle Ann Reid Ogurek, State File No. 202310740.

101. District Nine Medical Examiner Report, Case File ME23-1203, autopsy and toxicology report for Michelle Ann Reid Ogurek, age 56, found June 15, 2023. (accidental death, fentanyl and oxycodone intoxication).

**Declaration of Neil J. Gillespie Arrest in Pennsylvania Feb-04-2021**
Political Arrest and Incarceration

102. Gillespie's Declaration within the United States pursuant to the provisions of 28 U.S.C. § 1746(2) on personal knowledge unless otherwise stated, ¶¶ 2, 3, 5 and 6, concern his political campaign Neil J. Gillespie for President, ID: C00627810 (Candidate ID P60022993).

¶4: On or about October 22, 2020 I was diagnosed with a detached retina of my left eye.

¶7: On January 20, 2021 I traveled from my home in Ocala, Marion County, Florida to Pennsylvania for retina surgery at Wills Eye Hospital in Philadelphia. I was unable to get competent and timely retina surgery in Ocala.[fn1]

[fn1: Previously I moved for a 60 day stay for eye surgery under the Americans With Disabilities Act in Marion County cases 2019-CF-4193 and 2020-CF-2417. Marion County Judge Gary Sanders denied my motion and entered a failure to appear order for my arrest. Previously Judge Sanders telephoned my counsel of choice, David Oscar Markus, Fla. Bar No. 119318 who then declined to represent me.]

¶8. On January 23, 2021 I arrived in Philadelphia and went to the Wills Eye Hospital ER, located at Jefferson Health. I arrived late and returned the next day, January 24, 2021.

¶9. On January 25, 2021 I checked into Room 108 at the Red Roof Inn, 3100 Cabot Boulevard West, Langhorne, Bucks County, PA 19047. (Exhibit 3). I brought my computers, a printer and related equipment, and other personal property needed for several weeks. During my stay I used the free Red Roof Inn Wi-Fi to send emails and use the Internet.

¶10. On January 28, 2021 I had retina surgery done at Wills Eye Hospital. I returned to Room 108 at the Red Roof Inn to recover and await my follow-up appointments at Wills Eye Hospital.

¶11. On February 3, 2021 I slipped and fell on ice and snow in the hotel's parking lot while walking to my vehicle. I was treated for injuries at the Saint Mary Medical Center Emergency Room (ER) in Langhorne, PA for a rib contusion and minor fracture. I entered the ER on February 3, 2021 and was discharged on February 4, 2021 at 3:10 AM.

¶12. I left the hospital and returned to Room 108 at the Red Roof Inn and slept for a few hours. I awoke and watched television, including a MSNBC show hosted by Joe Scarborough.

¶13. On February 4, 2021, David Aronberg, the State Attorney for the 15th Judicial Circuit, Palm Beach County, Florida, was a guest on the MSNBC show hosted by Joe Scarborough.

¶14. On February 4, 2021 I sent an email at 7:56 AM to State Attorney Aronberg, that appears at Exhibit 4. The text of my email shows:

> David Andrew Aronberg
> Office of the State Attorney
> 401 N Dixie Hwy Ste 2800
> West Palm Beach, FL 33401-4209
> Office: 561-355-7246
> Email: dave@sa15.org
>
> Re: 18 U.S.C. 2331(5) domestic terrorism
> Mr. Aronberg:
>
> This morning on MSNBC I heard you, Joe Scarborough and other guests lament the lack of a domestic terrorism law. I believe 18 U.S.C. 2331(5) is the federal domestic terrorism statute. https://www.law.cornell.edu/uscode/text/18/2331 [law.cornell.edu]
> Thank you.
> Sincerely,
> /s/
> NEIL J. GILLESPIE
> 8092 SW 115th Loop
> Ocala, Florida 34481
> Tel. 352-854-7807
> Email: neilgillespie@mfi.net

¶15. Mr. Aronberg responded to my email at 5:58 PM on February 4, 2021: (Exhibit 4) Thank you, Neil. Domestic terrorism is indeed defined in the law, which makes it all the worse that there are no penalties attached to it. That's the reason why we say there's no law on the books -- it's just definitional. All the best, Dave

¶16. I was arrested shortly after getting the email from Mr. Aronberg. Three Falls Township policemen came to Room 108 at the Red Roof Inn on February 4, 2021. The policemen banged loudly on my door, and threaded to smash the door open. I opened the door. The policemen were shouting and had their guns drawn. They accused me of threatening judges. I was partially naked and had a bandage over my left eye. I told the policemen I came to Pennsylvania for eye surgery. Their demeanor immediately changed. The policemen did not have an arrest warrant or any paperwork authorizing my arrest. I was arrested, handcuffed and put in a police vehicle.

¶ 17. After my arrest I was taken to the Falls Township Police Station and put in a jail cell. I asked for a lawyer. My request was denied. I was allowed to use my cell phone, and called my brother Mark Gillespie in Texas. I called a friend Steve Catalano in Bucks County. A Docket shows Michael Collins was the arresting officer for incident no. 21017979383. (Exhibit 5)

¶18. Around midnight on February 4, 2021 while held in the Falls Township Police Station jail cell, I attended a video hearing before Bucks County Court of Common Pleas Judge Michael W. Petrucci. Judge Petrucci denied my request for counsel. Judge Petrucci said I had no right to a lawyer. No transcript was available. Judge Petrucci denied my request for bond or pretrial release. The Docket for my arrest is No. MJ-07207-MD-0000009-2021. (Exhibit 5)

103. Gillespie's Declaration continues with ¶19 through ¶29. Paragraph 29 at Exhibit 17 shows Kamala Harris made a change to the status of her law license to inactive on February 1, 2021.

USDC MDFL 5:21-cv-00463, Petition for Writ of Habeas Corpus by Neil J. Gillespie
Exhibit 17, Order of Dismissal w/o prejudice (no hearing) Judge requires a form
U.S. District Judge Wendy W. Berger, member of The Florida Bar, ID No. 974838

Case 5:21-cv-00463-WWB-PRL Document 1-2 Filed 09/13/21 Page 142 of 336 PageID 1635
Petition Exhibit 2, Kamala Devi Harris, #146672, The State Bar of California
License Status: Active on 12/13/2020; Admitted on 6/14/1990; member for 30+ years

- CHANGE: Kamala Devi Harris #146672 License Status: Inactive on 2/1/2021, verified 5/22/2025 https://apps.calbar.ca.gov/attorney/Licensee/Detail/146672

104. Also see, DECLARATION OF NEIL J. GILLESPIE re Kamala Harris Election Fraud

**APPENDIX T: SUPREME COURT OF THE UNITED STATES**
COMPLAINT OF ELECTION FRAUD IN THE 2020 PRESIDENTIAL ELECTION

105. Governor Ron DeSantis is a member of The Florida Bar, ID #15976, a member in good standing, "Eligible to Practice Law in Florida" https://www.floridabar.org/mybarprofile/15976

106. Ron DeSantis, Florida Bar, ID #15976, is a member of the judicial branch of government.

107. The Florida Constitution, Article II, Section 3, Branches of Government:

SECTION 3. Branches of government.—The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.

108. Gillespie contends lawyers admitted to practice law are officers of the court and members of the judicial branch of government (Ex parte Garland, 71 U.S. 333 (1866), and cannot under the separation of powers doctrine serve in an elected executive branch office such governor, see

Gillespie's campaign website post, **Donald J. Trump: President of the United States**

https://neil2024.blogspot.com/2025/02/donald-j-trump-president-of-united.html

> Lawyers have turned our political system into a never-ending legal contest of lawsuits and court battles, investigations, subpoenas, depositions, and impeachment threats and trials. This is the Democratic Party. Bill Clinton, lawyer. Hillary Clinton, lawyer. Barack Obama, lawyer. Michelle Obama, lawyer. Joe Biden, Lawyer. Kamala Harris, lawyer. A Republican lawyer corrupting our political system is Ron DeSantis, a member of The Florida Bar.
>
> President Trump exposed another fiction, that we live under the rule of law. We actually live under the threat of arrest or indictment by corrupt prosecutors. Prosecutorial misconduct is rampant in Florida where I live, according to a news release June 17, 2024 by the National Association of Criminal Defense Lawyers (NACDL)...

109. Gillespie contends that Sarah Thompson's death may be a political assassination. On March 28, 2020, Gillespie emailed a campaign job offer to Sarah. Unfortunately Sarah was too impaired by addiction to work. Gillespie's job offer to Sarah appears at Appendix A-1:

> **From:** "Neil Gillespie" <neilgillespie@mfi.net>
> **To:** "Neil Gillespie" <neilgillespie@mfi.net>; <scarah6985@yahoo.com>; "Sarah Thompson" <8ada558itch@gmail.com>
> **Sent:** Saturday, March 28, 2020 6:41 PM
> **Subject:** Sarah, I have an important job for you regarding my 2020 presidential campaign
>
> Sarah, I have an important job for you regarding my 2020 presidential campaign. I need you to contact each of the 50 states and get me qualified as a write-in candidate. For example, I already contacted the state of Iowa. Here are my notes:
>
> As you may know, Iowa already had its caucuses, which are meaningless, and only open to party members, https://en.wikipedia.org/wiki/Iowa_caucuses
>
> In most states, the Secretary of State oversees elections. Paul D. Pate is the Iowa Secretary of State, First Floor, Lucas Building, 321 E. 12th St., Des Moines, IA 50319
>
> WEB: https://sos.iowa.gov/elections/electioninfo/primary/index.html
> EMAIL: sos@sos.iowa.gov
> PHONE: (888) 767-8683
> https://sos.iowa.gov/elections/voterinformation/
> https://sos.iowa.gov/elections/electioninfo/general/index.html
>
> General Election
> Filing Periods

> The filing periods for the November 3, 2020, General Election are:
> President/Vice President: July 27, 2020 - August 14, 2020 (5:00 p.m.)
> U.S. Senate, U.S. Rep and State Office: February 24 – March 13, 2020 (5:00 p.m.)
> County Office: March 2 – March 20, 2020 (5:00 p.m.)
>
> Phone numbers for the Iowa parties
> Democrat: 515-244-7292
> Republican: 515-282-8105
>
> That's it. Easy as pie. Just takes time.
>
> In many states, including Florida, a presidential candidate must name his/her vice president, even for a write in candidate. I need a vice president, even a temporary stand-in vice presidential candidate. The requirements for vice president:
>
> 1. Age 35+
> 2. U.S. Citizen, born in the United States
> 3. Residency in the United States for the past 14 years.
> 4. Must reside in a different state than the presidential candidate.
>
> Do you think your mother would be interested in being my temporary stand-in vice presidential candidate?
>
> Love, Neil
> Neil J. Gillespie For President 2020
> https://neil2020.blogspot.com/

110. Gillespie provided a copy of his FEC complaint of *Election Fraud in the 2020 Presidential Election* to President Trump along with a cover letter Dec-17-2020 stating:

> "Mr. President: Please find enclosed my Federal Elections Commission Complaint of Election Fraud in the 2020 Presidential Election. As set forth in my complaint, you are the only lawful major candidate for president in 2020 because Joe Biden, Kamala Harris, and Mike Pence are lawyers admitted to practice and Officers of the Court, and therefore prohibited by the U.S. Constitution separation of powers doctrine from election to the executive branch of government." (Appendix A-4 page 8)

111. As of today the Federal Elections Commission has not provided records responsive to Gillespie's Freedom of Information Act (FOIA) request dated April 24, 2025. (Appendix A-4) Gillespie's FOIA to Lisa J. Stevenson, Esq., Acting General Counsel, states:

> Dear Ms. Stevenson,
>
> This is a request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

Enclosed you will find a letter to me from Jeff S. Jordan, Assistant General Counsel, Federal Election Commission, incorrectly dated January 6, 2020, in response to my complaint of election fraud in the 2020 presidential election. Mr. Jordan wrote in part, "This acknowledges receipt of your letters to the Federal Election Commission on December 14th and December 17th, 2020."

While I understand Mr. Jordan died June 7, 2021, my notarized complaint of election fraud in the 2020 presidential election was not properly considered by the Commission. I am unable to find reference to my complaint on the Commission's website. I am unable to locate a complaint number. I am unable to find evidence the Commission followed its own complaint process. https://www.fec.gov/legal-resources/enforcement/complaints-process/

My notarized complaint of election fraud in the 2020 presidential election was provided by email on December 14, 2020 to <EnfComplaint@fec.gov>, and a paper complaint was delivered by UPS on December 17, 2020 to the Office of General Counsel, Federal Election Commission, 1050 First Street, NE, Washington, DC 20002. Tellingly the letter of Mr. Jordan is dated January 6, 2020, and provided by email Wednesday, January 06, 2021 5:29 PM from <CELA@fec.gov>.

Pursuant to FOIA, provide all records related to my complaint of election fraud in the 2020 presidential election. Provide all records of my emails to the Commission in 2020 and 2021. Provide records for Sarah Thompson, an associate of mine who died May 12, 2021 in Ocala, Florida. Ms. Thompson was mentioned in my emails to the Commission. Thank you.

Sincerely,
*signature*
NEIL J. GILLESPIE, Candidate ID: P60022993
Principal Campaign Committee ID: C00627810
2801 SW College Rd., STE 3
Ocala, FL 34474
Email: NeilGillespie2024@yahoo.com
Email: Neil4Justice@yahoo.com
Tel: 352-239-9037

112. On December 18, 2020, three new FEC Commissioners, Shana M. Broussard, Sean J. Cooksey and Allen Dickerson, nominated by President Trump, were sworn in as members of the Federal Election Commission, returning a quorum to the agency charged with administering and enforcing federal campaign finance law. (Appendix T-4, Motion For Leave To File, Rule 17, Procedure in An Original Action, page 2, paragraph 3).

113. The FEC press release December 18, 2020 quotes Chair James "Trey" Trainor III: https://www.fec.gov/updates/shana-broussard-sean-cooksey-allen-dickerson-sworn-commissioners/

> "I am gratified that the Commission is finally back at full strength so that we can tackle the large backlog of enforcement cases and other vital work," said Chair James "Trey" Trainor III. "I look forward to working with my outstanding new colleagues, each of whom brings valuable experience and perspectives to our common mission of administering and enforcing the federal campaign finance law in a just and fair manner."

114. Tellingly the Commission waited until January 6, 2021 to respond. (J6). The response of Jeff Jordan, Assistant General Counsel, is mis-dated January 6, 2020. (Appendix A-4).

> Dear Mr. Gillespie:
>
> This acknowledges receipt of your letters to the Federal Election Commission on December 14th and December 17th, 2020.
>
> The Federal Election Commission (the "Commission") is an independent regulatory agency charged with administering and enforcing the Federal Election Campaign Act of 1971, as amended, and Chapters 95 and 96 of Title 26, United States Code. The Commission has jurisdiction over the financing of campaigns for federal office -- the U.S. House, Senate, and President.
>
> After careful review of your correspondence, we have determined that your letter does not state any acts that appear to constitute a violation under our jurisdiction.
>
> Sincerely,
> Jeff S. Jordan (*by TDK*)
> Assistant General Counsel
> Federal Election Commission
> Office of General Counsel
> Complaints Examination and Legal Administration

115. Gillespie contends the FEC response was a Right to Sue letter. On January 13, 2020 Gillespie appealed the FEC response to the Supreme Court of the United States, where it was received January 19, 2021. (Appendix T). Gillespie was arrested February 4, 2021 in PA after retina surgery January 28, 2021 at Wills Eye Hospital in Philadelphia, and held 428 days on no bond until April 7, 2022 when he was released on his own recognizance.

116. <u>Appendix T</u> shows Gillespie's *Complaint of Election Fraud in the 2020 Presidential Election* to the U.S. Supreme Court. Filed: January 13, 2021 - Returned: February 8, 2021.

Gillespie contends lawyers admitted to practice law are officers of the court and members of the judicial branch of government (Ex parte Garland, 71 U.S. 333 (1866), and cannot constitutionally under the separation of powers doctrine serve in an elected executive branch office such president, or vice president, which is also a legislative branch office, President of the U.S. Senate. This seditious conspiracy by the judicial branch is a threat to our Republic, and a crime against the American People: MASS INCARCERATION. We lead the world in the percentage of people incarcerated. Americans are not bad people, but when lawyers run every branch of government, this is the outcome. In particular, the so-called War On Drugs in the Untied States is a war on Americans with addiction, a medical condition, currently mishandled by the judiciary that results in unnecessary death, human suffering, and wasted money. See,

**Exhibit T: Neil J. Gillespie v Federal Election Commission, et al.**

- Motion For Leave To File, USSC Rule 17, Procedure in An Original Action
- USSC Rule 23 Stay Inauguration of Joe Biden and Kamala Harris as President/VP

1. Cover letter stamped "Received Jan 19 2021 Office of the Clerk Supreme Court, U.S."
2. Gillespie's $300 filing fee check #1229 payable to U.S. Supreme Court
3. *USSC Rule 23 Stay* inauguration Biden/Harris pending decision (not stamped received)
4. *Motion For Leave To File, Rule 17, Procedure in An Original Action*, stamped "Received Jan 19 2021 Office of the Clerk Supreme Court, U.S." Appearing at Exhibit 1 right to sue letter of the Federal Election Commission, misdated January 6, 2020 (actually 2021) by Jeff S. Jordan (by TDK), Assistant General Counsel, FEC
5. Motion For Leave To Proceed In Forma Pauperis, stamped "Received Jan 19 2021 Office of the Clerk Supreme Court, U.S."
6. Rule 29 Proof of Service (not stamped received)
7. Complaint of Election Fraud In The 2020 Presidential Election, submitted December 14, 2020 to the Federal Election Commission, with notarized signature of Neil J. Gillespie, and Exhibits 1 through 8
8. Appendix A, Petition For Writ of Mandamus And Constitutional Challenge, Florida Supreme Court, Petition No. SC16-2031, stamped "Received, 11/09/2016 10:53:47 AM, Clerk, Supreme Court"
9. Papers returned to Gillespie with letter February 8, 2021, USSC Clerk Scott S. Harris, by Clayton R. Higgins, Jr., Case Analyst, (202) 479-3019
10. USSC Return Priority Mail Envelope to Gillespie, Postmarked February 9, 2021, $7.40, U.S. Postage, USPS Tracking #9205 5902 4503 8800 0000 2022 28

**USSC Petition No. 20-929, Neil J. Gillespie v. State of Florida**
Gillespie's March 15, 2021 jail house certified mail letter to Chief Justice Roberts

117. Separately, Gillespie's Petition No. 20-929 for writ of certiorari in Florida Supreme Court Case SC20-1255 (5D20-1632), filed November 23, 2020, was also pending while he was incarcerated, and appears in Appendix K. Petition No 20-929 is docketed on the USSC website:

> Title: Neil J. Gillespie, Petitioner v. Florida
> Docketed: January 11, 2021
> Lower Ct: Supreme Court of Florida
> Case Numbers: (SC20-1255)
> Decision Date: August 25, 2020

118. The Questions Presented assert a right to relief under habeas corpus regarding:
1. Forced appointment of counsel, prohibited by Faretta v. California
2. Threat of incarceration or submission to a competency evaluation
3. Failure of trial judge to recuse on a meritorious motion to disqualify
4. Provide relief in state criminal proceedings from restraint by excessive bail

119. The Statement of The Case shows Gillespie, age 64, was college-educated, a former business owner, never convicted of a crime, but became subject to lawfare in 2019 when he contested the corrupt foreclosure of a HECM reverse mortgage (2013-CA-115). In 2008 Gillespie obtained a reverse mortgage to assist his mother, Penelope Gillespie, age 78, an unremarried widow diagnosed with Alzheimer's Disease, who was defrauded by Bank of America and a family member. The Marion County Sheriff's Office (MCSO) failed to adequately investigate the crime. Eventually Gillespie sued the foreclosure judge, Ann Melinda Craggs, and the Fifth Judicial Circuit. In that case (2018-CA-2640) Gillespie was granted leave to amend his complaint. Then Gillespie started getting arrested by the MCSO. The Petition also describes Gillespie's involvement with Sarah Thompson, an unregistered felon addicted to drugs.

120. On February 23, 2021, while Gillespie was held in the Bucks County Jail (PA), he mailed handwritten pleadings to the U.S. Supreme Court in Petition No. 20-929:

1. Supplemental Brief, USSC 20-929
2. Habeas Petition, USSC 20-929

3. Motion to Reconsider Order Denying 60 Day Stay for Eye Surgery, Marion Co. Case 19CF4193 & 20CF2417

121. Marion County Judge Gary Sanders denied Gillespie a 60 day stay for eye surgery, but Gillespie left Florida anyway and got retina surgery January 28, 2021 at Wills Eye Hospital in Philadelphia. Unknown to Gillespie at the time, Judge Sanders planned to arrest Gillespie again on January 20, 2021 on another one-party consent phone recording charge (2021-CF-286). This was a continuation of lawfare that began in 2019 with Gillespie's arrest for one-party consent phone recording (2019-CF-4193). Gillespie thought he resolved the one-party consent phone recording question in 2012 by requesting an Attorney General Opinion from Florida AG Pam Bondi, and his correspondence with FBI Special Agent In Charge Paul Wysopal, Tampa.

122. On March 15, 2021, while Gillespie was held in the Bucks County Jail (PA), he mailed a certified letter to Supreme Court Chief Justice John Roberts regarding Petition No. 20-929, and:

1. Supplemental Brief, USSC 20-929
2. Habeas Petition, USSC 20-929
3. Motion to Reconsider Order Denying 60 Day Stay for Eye Surgery, Marion Co. Case 19CF4193 & 20CF2417

123. Gillespie never heard back from the U.S. Supreme Court, and his pleadings were not docketed. Florida Attorney General Ashley Moody got a copy of Gillespie's certified letter to Supreme Court Chief Justice John Roberts from Mark Gillespie, see Exhibit K.

124. The US Supreme Court website shows proceedings and orders for Petition No. 20-929: https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-929.html

Title: Neil J. Gillespie, Petitioner v. Florida
Nov 23 2020, Petition for a writ of certiorari filed. (Response due February 10, 2021)
Feb 10 2021, Waiver of right of respondent State of Florida to respond filed.
Feb 17 2021, DISTRIBUTED for Conference of 3/5/2021
Mar 08 2021, Petition DENIED.

125. On April 18, 2022 Gillespie was evaluated for competency by Dr. Stephen I. Bloomfield, Ed.D., a Licensed Psychologist appointed by Marion County Judge Peter M. Brigham. On April 20, 2022 Dr. Bloomfield provided a report of his evaluation of Gillespie to Judge Brigham. Dr. Bloomfield's report states in the conclusion: (Appendix K)

> In that regard it is my opinion that pursuant to the criteria set forth in 916.12 Florida Statute and Rules 3.210 and 3.211, that Mr. Gillespie has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational, as well as factual understanding of the proceedings against him specifically the six listed in the Court.
>
> It is my opinion that he is Competent to Proceed and nothing impairs his ability to proceed with his case.

126. Appendix K-6 shows a letter Dec-02-2020 from Clerk Scott Harris re USSC 20-929:

> The above-entitled petition for writ of certiorari was postmarked November 23, 2020 and received December 1, 2020. The papers are returned for the following reason(s):
>
> Pursuant to the Court's order in 18-7225, you are required to submit the $300.00 filing fee when submitting petitions in noncriminal matters.

Appendix K-6 also shows Gillespie's Mar-04-2019 email objecting to the USSC denying his motion for leave to appear *in forma pauperis* and demanding Gillespie pay a $300 filing fee, and a story April 30, 2019 in the ABA Journal online: *SCOTUS denies cert in case on pro se treatment filed by David Boies and Richard Posner*

**RESPONSE BY SUPREME COURT OF THE UNITED STATES (Appendix T-9)**
COMPLAINT OF ELECTION FRAUD IN THE 2020 PRESIDENTIAL ELECTION

127. Gillespie was incarcerated when the Supreme Court returned his papers February 8, 2021. Gillespie's brother Mark, who lived in Texas, saved his mail, with help from Gillespie's next-door neighbor Stephanie "Stevie" Pickrell in Ocala who coordinated with Mark. Gillespie located the original returned Supreme Court papers in 2024 from boxes of correspondence obtained in 2022 from Mark's widow. Mark Gillespie died July 3, 2022 at age 63.

128. The Supreme Court's letter February 8, 2021 from Clerk Scott S. Harris, by Clayton R. Higgins, Jr., Gillespie's Case Analyst, appears at Appendix T-9. The letter amounts to *Fraud Upon The Court* and is demonstrably dishonest as shown below. The letter states:

> RE: In Re Neil Gillespie
>
> Dear Mr. Gillespie:
>
> The above-entitled petition for an extraordinary writ seeking unspecified relief was received on January 19, 2021. The papers are returned for the following reason(s):
>
>> Rebuttal: The case caption is Neil J. Gillespie v. Federal Election Commission, and sought specific relief: Stay the Inauguration of Joe Biden and Kamala Harris as president and vice president pending a decision in Gillespie v. Federal Election Commission, et al.
>
> The petition does not show how the writ will be in aid of the Court's appellate jurisdiction, what exceptional circumstances warrant the exercise of the Court's discretionary powers, and why adequate relief cannot be obtained in any other form or from any other court. Rule 20.1.
>
>> Rebuttal: Neil J. Gillespie v. Federal Election Commission was not a "petition"; it was a Rule 17 Motion to File In An Original Proceeding, a Complaint Of Election Fraud In The 2020 Presidential Election. The so-called J6 "insurrection" at the Capitol was the "*exceptional circumstances [that] warrant the exercise of the Court's discretionary powers*". It was self-evident that no other court could timely *Stay the Inauguration of Joe Biden and Kamala Harris as president and vice president pending a decision in Gillespie v. Federal Election Commission, et al.*
>
> The petition does not state the reasons for not making application to the district court of the district in which you are held. Rule 20.4(a) pertaining to petitions for writs of habeas corpus.
>
>> Rebuttal: Neil J. Gillespie v. Federal Election Commission was not a "petition for writ of habeas corpus". The petition does not state any reasons for not making application to the district court of the district in which "you are held" because this case is not about being "held". Here the Court is conflating Gillespie's petition for writ of habeas corpus in a different case, Petition No. 20-929, with this case. This is not an error, it is evidence of *Fraud Upon The Court* by the Court itself. Fraud upon the court involves a deliberate scheme to undermine the judicial process.
>
> You have not appended a copy of the judgment or order in respect of which the writ is sought. Rule 20.3 pertaining to petitions for writs of prohibition and mandamus.
>
>> Rebuttal: Gillespie "appended a copy" of the right to sue letter from the Federal

> Election Commission, the letter by Jeff S. Jordan, Assistant General Counsel, mis-dated January 6, 2020 instead of January 6, 2021, as "Exhibit 1". See Gillespie's *Motion For Leave To File, Rule 17, Procedure In An Original Action, Complaint of Election Fraud in the 2020 Presidential Election*. Finally, the Court's reference to "Rule 20.3" is misplaced because Gillespie did not seek relief under "prohibition and mandamus". This is another example of *Fraud Upon The Court*.

You must specify the type of relief being sought. Rule 20.

> Rebuttal: Gillespie specified the relief being sought: A Rule 23 Stay directed to Justice Thomas "To stay the inauguration of Joe Biden and [Kamala] Harris as president and vice president pending a decision in Gillespie v. Federal Election Commission, et al. Under 28 USC § 42, Justice Thomas is designated Circuit Justice for the Eleventh Circuit: Alabama, Florida, Georgia. USSC Rule 23.1: A stay may be granted by a Justice as permitted by law. The Court's reference to Rule 20 is misplaced. Rule 22 governs applications to individual justices.

The petition does not follow the form prescribed by Rule 14 as required by Rule 20.2.

> Rebuttal: Rule 14 governs contents of a petition for writ of certiorari. This is not a petition for cert. Here the Court is conflating Gillespie's Petition No. 20-929 for writ of certiorari with this case. This is not an error, it is evidence of Fraud Upon The Court by the Court itself. Fraud upon the court involves a deliberate scheme to undermine the judicial process.

A copy of the corrected petition must be served on opposing counsel.
Also enclosed is your check in the amount of $300.00.

**Civil Rights Complaint US Judge Sheri Polster Chappell (Appendix U)**

129. Gillespie was a candidate for mayor of the City of Ocala in the General Election and Special Election, each set for September 16, 2025. The Ocala Gazette Editorial Board wrote,

> It's time for a new mayor of Ocala, Ocala Gazette Editorial Board, August 10, 2022
> https://www.ocalagazette.com/its-time-for-a-new-mayor-of-ocala/
>
> "Historically, the mayor's duties have been largely ceremonial. The mayor has no vote on the Ocala City Council but does hold veto power. The pay is a nominal $550 a month. However, there is one aspect of the job that literally involves life and death. Because of the structure of Ocala government, the mayor, not the city council, has sole oversight of the Ocala Police Department."

130. Longtime incumbent Kent Guinn was mayor on May 12, 2021 when former State Attorney Brad King worked for the Ocala Police Department as a sworn officer. Brad King

worked for the Ocala Police Department on May 12, 2021 when Sarah Thompson died of a drug overdose, and the Ocala Police Department investigated Sarah's death and issued Incident Report #202100066603. Sarah died of a drug overdose May 12, 2021 in Room 118 of the Stay & Save Extended Stay Motel rented by Matthew Paul Smith, DC #N81023, a convicted drug trafficker.

131. Bill Gladson made Smith a deal: Judge Tatti released Smith on February 17, 2021, with 188 days time served and probation. Smith faced a mandatory minimum 3 years in prison and a $50,000 fine under Fla. Stat. 893.135 for trafficking in 10.66 gams of fentanyl. (Appendix C).

132. Ben Marciano was Mayor on March 24, 2023 when Gillespie made a complaint to the Ocala Police Department against Essential Tax Relief for Fraudulent Tax Return Preparation and Identify Theft, OPD report number 202310000312. Sergeant Melissa Buetti failed to competently investigate the complaint. Mayor Marciano later backed the bad investigation.

133. On August 5, 2025 Gillespie filed a federal voting rights lawsuit challenging the General Election and Special Election in the City of Ocala, Florida, for his right to vote in the City of Ocala, Florida, and to appear on the ballot as a candidate for Mayor. The case is Neil J. Gillespie v. Wesley Wilcox, Marion County Supervisor of Elections, et al, U.S. District Court, Middle District Florida, Ocala Division, Case 5:25-cv-486-SPC-PRL. Sheri Polster Chappell, United States District Judge, presiding, and U.S. Magistrate Judge Philip R. Lammens.

134. Gillespie's amended complaint (DOC 10) alleges the Special Election in the City of Ocala held September 16, 2025 violates Florida Election Law thereby affects every voter in the City of Ocala. The amended complaint alleges violation of USC Title 52, Voting and Elections, FRCP 57 Declaratory Judgment, 28 U.S.C. § 2201 Creation of remedy, FRCP 65 Injunctions and Restraining Orders, FRCP 5.1 Constitutional Challenge. The court has supplemental jurisdiction for Florida Election Law under 28 U.S.C. § 1367.

135. District Judge Chappell violated Gillespie's civil rights by failing make any rulings in the case. As of today October 15, 2025, Judge Chappell has not ruled on an amended application to proceed in district court without prepaying fees or costs. (DOC 3). The court has refused to issue summons. (DOC 7). The court has ignored a notice under FRCP 73 and 28 USC 636 that Gillespie does not consent to a trial or rulings by a U.S. Magistrate Judge. (DOC 5). U.S. Magistrate Judge Lammens denied (DOC 9) Gillespie's motion (DOC 6) to e-file on the Court's CM/ECF system. Judge Chappell wrongly denied Gillespie's objection to rulings by a Magistrate Judge, and wrongly prohibited Gillespie from filing on the Court's CM/ECF system. (DOC 13).

136. On September 16, 2025 Gillespie filed a Civil Rights Complaint against Sheri Polster Chappell, United States District Judge, with the Department of Justice to Gregory W. Kehoe, United States Attorney, Middle District of Florida, U.S. Attorney's Office, 400 North Tampa Street, Tampa, FL. (Appendix U).

**Justice Sotomayor's "speed dial" retort in USSC No. 24A1153**
Department of Homeland Security, et al. v. D.V.D., et al.

137. On July 3, 2025, Supreme Court Justice Sonia Sotomayor concluded her dissent in Department of Homeland Security, et al. v. D.V.D., et al. (Motion for Clarification), with whom Justice Jackson joined, with a retort that even Justice Sotomayor may not fully appreciate:

> "Today's order clarifies only one thing: Other litigants must follow the rules, but the administration has the Supreme Court on speed dial. Respectfully, I dissent."

138. Usha Vance may have the Supreme Court on speed dial. Usha Vance, wife of JD Vance, is a lawyer who previously clerked with Justice Brett Kavanaugh on the Court of Appeals for the District of Columbia Circuit (2014 to 2015) and Chief Justice John Roberts (2017 to 2018).

139. According to a story by Gram Slattery and Helen Coste published by Reuters on July 7, 2024: "JD Vance once compared Trump to Hitler. Now, he is Trump's vice president-elect"[3].

> "Eight years ago, in the lead-up to the 2016 presidential election, JD Vance was a bitter critic of Donald Trump.
>
> Publicly, he called the Republican businessman an "idiot" and said he was "reprehensible." Privately, he compared him to Adolf Hitler."

140. Gillespie provided a copy of his FEC *Complaint of Election Fraud in the 2020 Presidential Election* to President Trump along with a cover letter Dec-17-2020 stating:

> "Mr. President: Please find enclosed my Federal Elections Commission Complaint of Election Fraud in the 2020 Presidential Election. As set forth in my complaint, you are the only lawful major candidate for president in 2020 because Joe Biden, Kamala Harris, and Mike Pence are lawyers admitted to practice and Officers of the Court, and therefore prohibited by the U.S. Constitution separation of powers doctrine from election to the executive branch of government." (Appendix A-4 page 8)

141. Given the foregoing, it appears Gillespie's *Complaint of Election Fraud in the 2020 Presidential Election* was correct. This does not mean President Trump won the 2020 election based on Gillespie's Complaint[4]. It means Joe Biden and Kamala Harris stole the 2020 election from the American People. Chief Justice Roberts knows it. Kamala Harris knows it. And President Trump knows it. This gives President Trump considerable leverage over the Supreme Court. Chief Justice John Roberts personally engaged in *Fraud Upon The Court* after receipt of Gillespie's certified mail of March 2021 in Petition No. 20-929, which the Court conflated, with malice aforethought, with Gillespie's FEC *Complaint of Election Fraud in the 2020 Presidential Election*, in the Court's letter dated February 8, 2021 returning Gillespie's papers to him.

142. Gillespie commended President Trump for a great political comeback in 2024[5]. See

---

[3] Somehow JD Vance, a lawyer admitted to practice, become Trump's vice president, even after Vance compared Trump to Adolf Hitler. President Trump usually does not tolerate criticism.

[4] Vice President Mike Pence disqualified the 2020 Trump/Pence ticket

[5] For the record, on November 5, 2024, Gillespie cast a write-in vote for himself for president in the 2024 general election as a No Party Affiliation (NPA) candidate.

DEFENDANT'S NOTICE OF PROSECUTORIAL MISCONDUCT CASE 2020-CF-2417

https://neil2024.blogspot.com/2025/02/donald-j-trump-president-of-united.html

143. President Trump exposed the "Rule of Law" trope as nonsense. We The People live under the misrule of judges and prosecutors. Trump broke the trope. Lawyers may disagree, fine. But the American People know it, and elected Donald Trump, who was convicted of 34 felonies, or perhaps guilty of one misdemeanor repeated 34 times, or maybe not guilty at all. That's the difference a judge makes. Judge Merchan or Judge Cannon.

## CONCLUSION

144. On April 19, 2023 Gillespie moved pursuant to Fla. R. Crim. P. 3.170(l) to withdraw his pleas of no contest in case 2019-CF-4193 (one-party consent phone recording), case 2021-CF-0286 (one-party consent phone recording), and case 2022-CF-1143 (claim of immunity 776.032) made on March 20, 2023 while held in the Marion County Jail because the pleas violated his rights as a Defendant, were unjust, and resulted in unlawful sentences and manifest injustice. Gillespie's pleas were involuntary to get out of jail while held on a no-bond order, the result of Judge Brigham holding Gillespie in direct criminal contempt on January 25, 2023 for an alleged incident January 3, 2023 during a hearing on a motion to disqualify Judge Brigham.

145. On August 2, 2024 the Fifth District Court of Appeal in 5D2023-0888 entered an *Opinion* that reversed and remanded Judge Brigham in the three cases, 2019-CF-4193, 2021-CF-0286, and 2022-CF-1143, where Judge Brigham held Gillespie in direct criminal contempt.

146. The Fifth District Court of Appeal in 5D2023-0888 entered a *Mandate* August 29, 2024.

147. On September 10, 2024, Marion County Administrative Judge Lisa Herndon, pursuant to the August 2, 2024, *Opinion* from the Fifth District Court of Appeal in 5D2023-0888, entered as the *Mandate* of the Fifth District Court of Appeal on August 29, 2024, entered *Order of Reassignment* and removed from the docket of Judge Brigham cases 2019-CF-4193, 2021-0286, and 2022-CF-1144, and reassigned the cases to the Honorable Robert Hodges.

148. On September 18, 2024 the Honorable Robert Hodges entered *Order Dismissing Contempt Allegation And Vacating Direct Criminal Contempt Conviction* of Neil Joseph Gillespie in Marion County, Florida cases 2019-CF-4193, 2021-CF-0286 and 2022-CF-1143.

149. On August 1, 2012, Gillespie requested an Attorney General Opinion from Florida Attorney General Pam Bondi re Chapter 934 for one-party consent phone recording, see

**APPENDIX F: ONE-PARTY CONSENT TELEPHONE RECORDING**
Fla. Stat. 934.03, Marion County cases 2019-CF-4193 and 2021-CF-0286

150. On May 25, 2025 in a twenty year-old civil lawsuit in Hillsborough County (2005-CF-7205) (Appendix S: Gillespie v. Barker, Rodems & Cook) the Defendant's lawyer, Ryan C. Rodems, by and through Morgan & Morgan, asked Gillespie if "they" let him out of jail. This odd question caused Gillespie pause. What was Mr. Rodems referring to, and how did that question about Gillespie being "let out of jail" relate to this case? Gillespie revisited his old files in this case for the answer, and found his request to Florida Attorney General Pam Bondi.

151. Appendix F shows Gillespie gave notice in Fifth DCA Appeal 5D23-2005 under Rule 9.900 (m) Notice of Constitutional Question, on September 27, 2023, that he served his Constitutional Challenge to Florida Statute 934.03, *Interception and Disclosure of Wire, Oral, or Electronic Communication Prohibited*, to Attorney General Ashley Moody, and to State Attorney William Gladson Fifth Judicial Circuit of *Interception of wire, oral, or electronic communications prohibited*, U.S. District Court, Middle District of Florida, Ocala Division, Neil Joseph Gillespie v. State of Florida, case no. 5:21-CV-00416-PGB-PRL. (Appendix S-6).

152. On April 4, 2022, United States District Judge Paul G. Byron entered Order of Dismissal (DOC 23) without prejudice under the *Younger v. Harris* abstention doctrine, 401 U.S. 37 (1971), on the premise that ordinarily a pending state prosecution provides the accused a fair and

sufficient opportunity for vindication of federal constitutional rights." *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1264 n. 7 (11th Cir. 2004).

153. As of today the state prosecution in 2019-CF-4193 and 2021-CF-286 has not provided the accused a fair and sufficient opportunity for vindication of his federal constitutional rights.

154. Regarding this case 2020-CF-2417, Gillespie paid $50 to the State Attorney's Office in September 2025 for "...video of a MCSO interview with Sarah M. Thompson allegedly made by Deputy N. Rosaci, or any other person, in Case 2020-CF-2417." As of today the State Attorney's Office has not provided the video. Instead, the Marion County Sheriff's Office claims it has the video, and demands $15.99 for the cost of the records. The State Attorney's Office refused to refund Gillespie's $50. So it appears that matter is headed for separate litigation.

155. Nonetheless, State Attorney Bill Gladson violated 782.07(2): A person who causes the death of any disabled adult (Sarah Thompson) by culpable negligence under s. 825.102(3) commits aggravated manslaughter of an elderly person or disabled adult, a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

156. Bill Gladson knew Sarah Thompson has a serious addiction to unlawful substances. Gladson knew or should have known substance abuse is a serious mental illness.

> "And while in some circles, it is popular to chalk substance abuse up to flawed character and lack of willpower, for at least a century, the courts have recognized it for what it is: a serious mental illness. See Linder v. United States, 268 U.S. 5, 18 (1925)."

157. Bill Gladson knew Sarah Thompson and Matthew Smith had a personal relationship, and were in fact together when Thompson was arrested February 5, 2020 for drug possession (Marion County 2020-CF-516)

158. Bill Gladson knew Matthew Smith was arrested August 14, 2020 for trafficking in 10.66 grams of fentanyl, in violation of Fla. Stat. 893.135.1C4A, in Marion County, Florida criminal case no. 2020-CF-3414.

159. Bill Gladson knew a violation of Fla. Stat. 893.135.1C4A in 2020 was punishable by a mandatory minimum 3 years in prison, and a $50,000 fine.

> 893.135 Trafficking (2020); mandatory sentences; suspension or reduction of sentences; conspiracy to engage in trafficking [10.66 GRAMS IN THIS CASE]
> 4.a. A person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 4 grams or more of:
> (III) Fentanyl, as described in s. 893.03(2)(b)9.;
> b. If the quantity involved under sub-subparagraph a.:
> (I) Is 4 grams or more, but less than 14 grams, such person shall be sentenced to a mandatory minimum term of imprisonment of 3 years, and shall be ordered to pay a fine of $50,000.

160. Bill Gladson was required to request a mandatory minimum 3 years in prison, and a $50,000 fine for Matthew Smith's violation of Fla. Stat. 893.135.1C4A, in Marion County, Florida criminal case no. 2020-CF-3414. Judge Tatti was required to sentence Matthew Smith in case no. 2020-CF-3414 to a mandatory minimum 3 years in prison, and a $50,000 fine.

161. Bill Gladson failed to seek the mandatory minimum sentence in case 2020-CF-3414.

162. Judge Tatti failed to impose the mandatory minimum sentence in case 2020-CF-3414.

163. Instead, Bill Gladson made Matt Smith a deal: Judge Anthony Tatti released Matthew Smith on February 17, 2021, with 188 days time served and probation.

164. Sarah Thompson died May 12, 2021 of a drug overdose in Matthew Smith's Room 118 at the Stay & Save Extended Stay Motel in the City of Ocala.

165. Brad King engaged in a conspiracy with his executive director Bill Gladson to rig the 2020 election for State Attorney in favor of Bill Gladson to be elected automatically. (Appendix E). After Gladson took office as State Attorney, Brad King joined the Ocala Police Department.

166. Brad King worked for the Ocala Police Department on May 12, 2021 when Sarah died in Smith's Room 118 at the Stay & Save Extended Stay Motel, and the Ocala Police Department investigated Sarah's death and issued Incident Report #202100066603. (Appendix B).

DEFENDANT'S NOTICE OF PROSECUTORIAL MISCONDUCT CASE 2020-CF-2417

167. As shown in this notice, OPD Incident Report #202100066603 was falsified by law enforcement to cover-up the homicide of Sarah Thompson.

RESPCTFULLY SUBMITTED October 15, 2025.

Neil Joseph Gillespie, Defendant *pro se*
2801 SW College Rd. STE 3
Ocala, FL 34474-4430
Phone: 352-239-9037
Email: NeilGillespie@mail.com
Email: Neil4Justice@yahoo.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY I furnished this Notice of Prosecutorial Misconduct in 2020-CF-2417 on October 15, 2025 to:

State Attorney's Office
110 North West 1st Avenue
Suite 5000
Ocala, FL 34475
Eservicemarion@Sao5.Org

and to the names on the Florida Portal *Notice of Service of Court Documents*.

Neil Joseph Gillespie, Defendant *pro se*

**DEFENDANT'S NOTICE OF PROSECUTORIAL MISCONDUCT CASE 2020-CF-2417**

LIST OF APPENDICES and Neil Gillespie's Declarations under 28 U.S.C. § 1746(2)

DECLARATION OF NEIL J. GILLESPIE re Pennsylvania Arrest Feb-04-2025 (98 pages)
DECLARATION OF NEIL J. GILLESPIE re Kamala Harris Election Fraud (5 pages)

APPENDIX A: FEEDERAL ELECTION COMMISSION (FEC) (194 pages)

APPENDIX B: DEATH OF SARAH THOMPSON, MAY 12, 2021 (47 pages)

APPENDIX C: CONVICTED DRUG TRAFFICKER MATTHEW PAUL SMITH (49 pages)

APPENDIX D: GILLESPIE v GOOGLE LLC (88 pages)

APPENDIX E: RIGGED 2020 GENERAL ELECTION FOR STATE ATTORNEY (60 pages)

APPENDIX F: ONE-PARTY CONSENT TELEPHONE RECORDING (159 pages)

APPENDIX G: OCALA POLICE DEPTARTMENT (OPD) PUBLIC RECORDS (40 pages)

APPENDIX H: DEATH OF MICHELLE ANN REID OGUREK (103 pages)

APPENDIX I: HARBORING A FUGITIVE FROM JUSTICE (37 pages)

APPENDIX J: AG ASHLEY MOODY PUBLIC RECORDS OF SARAH THOMPSON (71 pages)

APPENDIX K: Gillespie's letter March 15, 2021 to Chief Justice John Roberts, USSC (47 pages)

APPENDIX L: TRANSCRIPTS OF ONE-PARTY CONSENT PHONE CALLS (31 pages)

APPENDIX M: SARAH THOMPSON DOC U51563 Marion County 2014-CF-2361 (72 pages)

APPENDIX N: SARAH THOMPSON CRIMINAL CASES 2020-2021 (125 pages)

APPENDIX O: SARAH THOMPSON PASCO 2018 NEW CRIMES REGISTER 775.13 (66 pages)

APPENDIX P: SARAH M THOMPSON BACKGROUND (22 pages)

APPENDIX Q: SARAH M THOMPSON ADVENT HEALTH (75 pages)

APPENDIX R: MCSO HOME INVASION TRANSCRIPTS JUNE 7, 2020 (164 pages)

APPENDIX S: GILLESPIE v BARKER, RODEMS & COOK (256 pages)

APPENDIX T: USSC GILLESPIE v FEDERAL ELECTION COMMISSION (123 pages)

APPENDIX U: Civil Rights Complaint against Sheri Polster Chappell US Judge (80 pages)

APPENDIX V: RESERVED: CAPITAL ONE, WORDPRESS, CFPB, THE FLORIDA BAR

APPENDIX X: RESERVED:

APPENDIX Y: RESERVED: HEALTH DEPARTMENT RETINA SURGERY COMPLAINT

APPENDIX Z: RESERVED: