EXHIBIT
1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

FEB 17 2026

David J. Smith
Clerk

CONFIDENTIAL

Before the Chief Judge of the
# Eleventh Judicial Circuit

---

Judicial Complaint Nos. 11-26-90021 and 11-26-90022

---

## ORDER

An individual has filed a Complaint against a United States magistrate judge and a United States district judge under the Judicial Conduct and Disability Act of 1980, 28 U.S.C. §§ 351–364, and the Rules for Judicial-Conduct and Judicial-Disability Proceedings of the Judicial Conference of the United States.

As an initial matter, after Complainant filed his Complaint, he filed two supplements. The filing of the supplements is permitted. *See* 11th Cir. JCDR 6.7.

### Background

The record establishes that Complainant filed a *pro se* civil complaint against one defendant, a motion for leave to proceed *in forma pauperis*, a motion for permission to file electronically, and a "Notice of Non-Consent (Objection) to U.S. Magistrate Judge." The Subject Magistrate Judge entered an order denying the motion

to file electronically. Complainant then filed an amended complaint against multiple defendants and a "Motion to Article III Federal Judge to E-File." The Subject District Judge issued an order overruling Complainant's objection to the order denying his motion to file electronically.

The Subject Magistrate Judge entered an order taking Complainant's *in forma pauperis* motion under advisement, concluding in part that the amended complaint was a shotgun pleading, and providing him with an opportunity to file a second amended complaint. Complainant then filed a notice of voluntary dismissal, and the Subject District Judge entered an order denying all pending motions as moot and closing the case. Afterward, a deputy clerk issued a notice stating that a local rule provides that a seal under the rule expires 90 days after a case is closed and all appeals are exhausted.

**Complaint**

Complainant alleges that the Subject Judges engaged in misconduct, violated his civil rights, and committed a crime by failing to timely rule on his complaint, amended complaint, and motion to proceed *in forma pauperis*. He alleges the Subject Judges ignored filings, that the Subject District Judge "wrongly denied" his objections to the Subject Magistrate Judge's rulings, and that he was "wrongly prohibited" from using the court's electronic-filing system. He alleges the Subject District Judge tried "to seal a record of her own misconduct, misconduct of her colleagues, and the homicide" of a certain individual. He also takes issue with the actions of other individuals, and he attached documents to his Complaint.

## Supplement

In the first supplemental filing, Complainant requests that his Complaint be transferred to another judicial council because it "also involves" other circuit judges, district judges, and a clerk of court. In his second supplemental filing, Complainant provided a court-issued notice pertaining to sealed documents.

## Discussion

Judicial-Conduct Rule 4(b)(1) provides in part that "[c]ognizable misconduct does not include an allegation that calls into question the correctness of a judge's ruling, including a failure to recuse." The Commentary on Rule 4 explains the rationale for this rule as follows:

> Rule 4(b)(1) tracks the Act, 28 U.S.C. § 352(b)(1)(A)(ii), in excluding from the definition of misconduct allegations "[d]irectly related to the merits of a decision or procedural ruling." This exclusion preserves the independence of judges in the exercise of judicial authority by ensuring that the complaint procedure is not used to collaterally call into question the substance of a judge's decision or procedural ruling. Any allegation that calls into question the correctness of an official decision or procedural ruling of a judge — without more — is merits-related.

Furthermore, Judicial-Conduct Rule 4(b)(2) provides that cognizable misconduct does not include "an allegation about delay in rendering a decision or ruling, unless the allegation concerns an improper motive in delaying a particular decision or habitual delay

in a significant number of unrelated cases." The "Commentary on Rule 4" states that "a complaint of delay in a single case is excluded as merits-related."

As an initial matter, Complainant's request to transfer this proceeding to the judicial council of another circuit is **DENIED**. The Complaint fails to present a basis for a finding of misconduct. To the extent Complainant's allegations concern the substance of the Subject Judges' official actions, findings, rulings, and orders in Complainant's case, the allegations are directly related to the merits of the Subject Judges' decisions or procedural rulings. Judicial-Conduct Rule 11(c)(1)(B). Complainant's remaining claims are based on allegations lacking sufficient evidence to raise an inference that the Subject Judges acted with an illicit or improper motive, committed a crime, or otherwise engaged in misconduct. Judicial-Conduct Rule 11(c)(1)(D). For these reasons, this Complaint is **DISMISSED**.

/s/ William H. Pryor Jr.
Chief Judge

EXHIBIT 2

ChatGPT ⌄ ✦ Get Plus × ⇪ Share

VOTING RIGHTS FEDERAL LAWSUIT 5....
PDF

EVALUATE MY VOTING RIGHTS LAWSUIT

Below is a **clear, candid legal evaluation** of your **First Amended Complaint** based on federal voting-rights law, Florida election law, and typical Rule 12 dismissal standards. This is **not legal advice**, but a litigation-risk assessment a federal judge or opposing counsel would likely make.

I will break this into (A) **what is strong**, (B) **what is weak or vulnerable**, (C) **jurisdictional and procedural risks**, and (D) **concrete recommendations to improve survivability**. All analysis is grounded in the complaint you filed VOTING RIGHTS FEDERAL LAWSUIT 5... .

## A. STRONG ASPECTS OF YOUR CASE

### 1. Voter Registration / Domicile Claim

This is your **strongest claim**.

You allege:

- Continuous physical presence since Jan. 2, 2023
- Intent to remain
- Documentary proof (DL, SSA letters, vehicle registration, jury notice)
- Declaration of domicile
- Florida Division of Elections guidance allowing nontraditional residences
- Homelessness protections under Florida and federal law

Florida courts define legal residence as **fact + intent**, not zoning classification VOTING RIGHTS FEDERAL LAWSUIT 5... . Your allegations align with:

- *Walker v. Harris*
- *Bloomfield*

- *Perez v. Marti*
- *Andrews v. Hartzog*

👉 A **declaratory judgment** that your address qualifies as a legal voting residence is **plausible** and likely to survive a motion to dismiss.

## 2. Failure to Follow Florida Special Election Statutes

Your statutory notice argument is **well-developed**:

You allege violations of:

- Fla. Stat. § 100.141 (Governor/DOS authority)
- § 100.151 (notice + SOE coordination)
- § 50.0311 (publication requirements)

Specific factual allegations include:

- No DOS-issued notice
- Only one publication
- Publication after qualifying closed
- Mayor acting ultra vires

These are **nonconclusory, factual allegations**, which is exactly what federal courts require at the pleading stage VOTING RIGHTS FEDERAL LAWSUIT 5... .

👉 This portion **could survive Rule 12(b)(6)** as a state-law violation tied to federal voting rights.

## 3. Standing

You plausibly allege:

- Direct injury (unable to vote in municipal elections)
- Direct injury (ballot exclusion)
- Causation (SOE + City actions)
- Redressability (injunction / declaratory relief)

You also avoid seeking money damages, which **reduces immunity barriers**.

👉 Standing is **adequately pled.**

## B. WEAK OR HIGH-RISK CLAIMS

### 1. Title 52 Federal Voting Rights Claims

This is a **major vulnerability.**

Most of your allegations involve:

- Florida statutory violations
- Municipal charter conflicts
- Administrative failures

Federal courts repeatedly hold:

> "Violations of state election law, without more, do not establish a federal voting rights violation."

You do **not clearly plead**:

- Racial discrimination
- Intentional vote dilution
- Disparate impact on a protected class
- A burden severe enough to trigger *Anderson–Burdick* balancing

👉 Without this, Title 52 claims are **at risk of dismissal.**

### 2. "Election Fraud" Language

Repeated use of terms like:

- "election fraud"
- "conspiracy"
- "lawfare"
- references to **18 U.S.C. § 241**

This is **dangerous in civil litigation.**

Federal judges expect:

- Neutral tone
- Legal conclusions supported by elements
- No criminal accusations unless DOJ is involved

👉 This language **weakens credibility** and invites dismissal or sanctions.

### 3. Criminal Statutes (18 U.S.C. § 241)

Private citizens **cannot enforce criminal statutes.**

Courts will dismiss these references **with prejudice**.

👉 Including them **harms the complaint** and adds no legal value.

### 4. Nonpartisan vs "Special Election" Argument

Your argument that:

> A special election is unconstitutional because § 97.021(36) defines it as partisan

This is **unlikely to succeed**.

Courts interpret statutory definitions **contextually**, and Florida routinely holds special elections for nonpartisan offices.

👉 This claim is **very weak** and distracts from stronger issues.

### 5. Candidate Petition / Vagueness Doctrine

Mixed strength:

**What works**

- Evidence of disparate acceptance rates
- Shortened qualifying window

- Voter confusion about city limits

**What doesn't**

- Vagueness doctrine usually applies to criminal or punitive laws
- Courts allow reasonable ballot-access requirements
- Payment + petitions is not per se unconstitutional

👉 This claim is **plausible but uphill.**

## C. PROCEDURAL & JURISDICTIONAL RISKS

### 1. You Are Mixing Federal and State Claims

Federal court may:

- Dismiss federal claims
- Decline supplemental jurisdiction over state-law issues

This is especially likely if Title 52 claims fail.

### 2. You Are Seeking Summary Judgment Too Early

Requests for:

- "Summary Final Judgment"
- Court acting as "fact-finding body"

Before discovery, courts **will not grant summary judgment.**

👉 This language signals **procedural misunderstanding.**

### 3. Judicial Immunity / Eleventh Amendment

Claims against:

- Governor
- Secretary of State
- DOS

Risk dismissal unless tightly tied to **prospective injunctive relief under Ex parte Young.**

## D. RECOMMENDATIONS TO STRENGTHEN THE CASE

### 1. Narrow the Case

Focus on:

- Voter registration / domicile
- Failure to provide lawful notice
- Denial of ballot access

Drop:

- Criminal statutes
- Conspiracy rhetoric
- Nonpartisan "special election" argument

### 2. Reframe as Due Process + Equal Protection

You should explicitly plead:

- Arbitrary treatment
- Disparate petition acceptance
- Lack of meaningful opportunity to cure defects
- Procedural due process deprivation

This fits **§ 1983**, not just Title 52.

### 3. Remove "Election Fraud" Language

Replace with:

- "Ultra vires"
- "Statutory noncompliance"
- "Procedural irregularities"
- "Denial of due process"

Judges take those terms seriously.

### 4. Ask for Proper Relief

Instead of striking the election outright, seek:

- Declaratory judgment on voter residence
- Injunction requiring lawful notice
- Reopening or extending qualifying
- Placement on ballot if legally required

Courts prefer **narrow, surgical remedies.**

## OVERALL ASSESSMENT

| Claim | Likelihood |
|---|---|
| Voter residence declaration | **Strong** |
| SOE refusal to register | **Strong** |
| Special election notice violations | **Moderate–Strong** |
| Petition vagueness | **Moderate** |
| Title 52 broad claims | **Weak** |
| Criminal conspiracy | **Very Weak** |
| Nonpartisan special election theory | **Very Weak** |

If you want, next I can:

- Rewrite this as a **clean, judge-ready Second Amended Complaint**
- Draft a **Rule 65 injunction motion**
- Identify **exact claims likely to survive Rule 12**
- Help you prepare for **dismissal briefing**

Just tell me how you want to proceed.

Sources

Filing # 241132450 E-Filed 02/05/2026 11:44:20 PM

EXHIBIT 3

IN THE DISTRICT COURT OF APPEAL
FIFTH DISTRICT OF FLORIDA

| | |
|---|---|
| NEIL JOSEPH GILLESPIE<br>Appellant, *pro se*,<br><br>v.<br><br>STATE OF FLORIDA<br>Appellee. | DCA #: 5D2025-1144<br>Appealed Cases:<br>CASE NO. 2019-CF-4193<br>CASE NO. 2020-CF-2417<br>CASE NO. 2021-CF-0286<br>CASE NO. 2022-CF-1143 |

---

# APPELLANT'S REPLY BRIEF

---

Date: February 5, 2026

NEIL JOSEPH GILLESPIE
Appellant, *pro se*
2801 SW College Rd., STE 3
Ocala, FL 34474
Tel. 352-239-9037
Email: NeilGillespie@mail.com
Email: Neil4Justice@yahoo.com

# APPELLANT'S REPLY

The State contends this Court lacks jurisdiction in this appeal. Furthermore, the State contends the Appellant may seek to invalidate the costs subject to this appeal by challenging his criminal convictions under Fla. R. Crim. P. 3.850. However, the Appellant does not have any criminal convictions to appeal because adjudication was withheld.

Separately, the State's suggestion is absurd given the facts in this matter. First, State Attorney Bill Gladson essentially murdered the victim, Sarah M. Thompson. Second, this matter is a continuation of a 20 year vendetta by Florida lawyer Ryan Christopher Rodems, Bar No. 947652.

On August 11, 2005, the Appellant sued Rodems' law firm for breach of contract and fraud in Hillsborough County, case no. 2005-CA-7205.

On January 13, 2006, Judge Richard Nielson entered an Order on Rodems' Motion to Dismiss and Strike that established a cause of action against the Defendants Barker, Rodems & Cook et al, for $6,224.78.

Twenty years (20) later the case was still unresolved. On September 2, 2025, the Appellant gave Notice of Dismissal in the case. Twenty years of domestic terrorism by Rodems and the Court was enough.

Time for a new approach.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished on February 5, 2026 to the names below on the Florida Portal.

Richard A. Pallas, Jr.
Assistant Attorney General
Office of the Attorney General
444 Seabreeze Blvd.
5th Floor
Daytona Beach, FL 32118
CrimAppDAB@MyFloridaLegal.com

Neil Joseph Gillespie
Appellant, *pro se*
2801 SW College Road, STE 3
Ocala, FL 34474
Tel: 352-239-9037
Email: NeilGillespie@mail.com (Portal E-service primary)
Email: Neil4Justice@yahoo.com (secondary)

CERTIFICATE OF COMPLIANCE
FOR COMPUTER-GENERATED BRIEFS

I HEREBY CERTIFY that this document was computer-generated using Arial 14-point font (Fla. R. App. P. 9.045(b)), and is in compliance with the word count and page limits of Fla. R. App. P. 9.210(a)(2)(B).

Neil Joseph Gillespie
Appellant, *pro se*
2801 SW College Road, STE 3
Ocala, FL 34474
Tel: 352-239-9037
Email: NeilGillespie@mail.com (Portal E-service primary)
Email: Neil4Justice@yahoo.com (secondary)

EXHIBIT 4

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT IN AND FOR HILLSBOROUGH COUNTY, FLORIDA GENERAL CIVIL DIVISION**

NEIL J. GILLESPIE,

Plaintiff, CASE NO.: 05CA7205

vs.

BARKER, RODEMS & COOK, P.A., a Florida corporation, DIVISION: F

WILLIAM J. COOK, DEMAND FOR TRIAL BY JURY

Defendants.

______________________________/

RECEIVED
05 AUG 11 PM 4: 35
CLERK OF CIRCUIT COURT HILLSBOROUGH COUNTY, FLA BRANDON

**COMPLAINT FOR BREACH OF CONTRACT AND FRAUD**

Plaintiff, NEIL J. GILLESPIE, sues defendants, BARKER, RODEMS, & COOK, P.A., a Florida professional service corporation, and WILLIAM J. COOK, a corporate officer and natural person, and alleges:

**Parties**

1. Plaintiff, NEIL J. GILLESPIE, resides in Ocala, Marion County, Florida. (Hereinafter called "GILLESPIE").

2. Defendant BARKER, RODEMS & COOK, P.A. is a Florida professional service corporation and law firm with offices located at 300 W. Platt Street, Suite 150, in the city of Tampa, Hillsborough County, Florida, 33606. (Hereinafter called the "LAW FIRM").

3. Defendant WILLIAM J. COOK is a lawyer, a member of the Florida Bar, a corporate officer of the LAW FIRM, and a natural person. (Hereinafter called "COOK").

**Jurisdiction and Venue**

4. This is an action for damages that exceed $15,000.00.

5. The events complained of occurred in the city of Tampa, Hillsborough County, Florida, 33606. The LAW FIRM has offices located at 300 W. Platt Street, Suite 150, Tampa, Hillsborough County, Florida, 33606.

**Background Information**

6. GILLESPIE hired the LAW FIRM to represent him in litigation with Amscot Corporation. GILLESPIE and the LAW FIRM had a written Representation Contract. The litigation failed and Amscot settled for business reasons and to avoid an appeal. The LAW FIRM was not satisfied with its contractual entitlement to 45% of the Total Recovery for attorney's fees. The LAW FIRM wanted more money. In fact, the LAW FIRM took over 90% of the Total Recovery. In an effort to break the Representation Contract and legitimize taking 90% of the Total Recovery, COOK used deceit as described in this Complaint. Ultimately though, COOK lied to GILLESPIE about a Court ruling. COOK told GILLESPIE that the *United States Court of Appeals for the Eleventh Circuit* awarded the LAW FIRM $50,000 in attorney's fees and costs, triggering a "whichever is higher clause" for Court awards. The LAW FIRM then created a false Closing Statement to effect the deception. In fact, GILLESPIE later discovered that the *United States Court of Appeals* never awarded $50,000 to the LAW FIRM, but ruled that each party must bear their own costs and attorney's fees. The LAW FIRM's unjust enrichment was $18,675.54.

**COUNT I - BREACH OF CONTRACT**

7. GILLESPIE realleges and incorporates by reference paragraphs 1 through 6, and alleges and incorporates by reference paragraphs 22 through 51.

8. GILLESPIE entered into a written Class Representation Contract with the LAW FIRM to perform legal services. (Hereinafter the "Representation Contract"). (Exhibit 1).

9. The legal service performed by the LAW FIRM was a contingency lawsuit, further identified as the matter styled Eugene R. Clement, et al. v. Amscot Corporation, Case No. 8:99-cv-2795-T-26C in the United States District Court, Middle District of Florida, Tampa Division; and on appeal Eugene R. Clement, et al. v. Amscot Corporation, Case No. 01-14761-A in the United States Court of Appeals, For the Eleventh Circuit. (Herein after called the "Action"). The subject matter was "payday loan" consumer litigation.

10. There were three plaintiffs in the Action: Eugene R. Clement, Gay Ann Blomefield, and Neil Gillespie.

11. The Action sought class action status but the LAW FIRM's various motions for class action status were denied by the Court.

12. The Action settled in GILLESPIE's favor on October 30, 2001. The Action settled for business reasons, and the LAW FIRM did not prevail on the merits or appeal.

13. The Total Recovery for the Action was $56,000 (Exhibit 2).

14. The LAW FIRM refused to honor the terms of the Representation Contract with GILLESPIE when disbursing his share of the $56,000 Total Recovery.

15. Under the terms and conditions of the Representation Contract, and Florida Bar Rule 4-1.5(f)(4)(B)(i), the LAW FIRM was entitled to $31,325.46 calculated as follows:

a. Attorney's fees of $25,200 (45% of the Total Recovery); and

b. Cost and expenses, $3,580.67; and

c. Expenses paid to a former law firm, $2,544.79 (Jonathan L. Alpert).

16. Contrary to law and the Representation Contract, the LAW FIRM took $50,000 from the Total Recovery under the guise of court-awarded attorney's fees and costs.

17. The LAW FIRM's unjust enrichment was $18,675.54.

18. GILLESPIE's lawful share of the settlement is $8,224.78. (Exhibit 3).

19. The LAW FIRM paid GILLESPIE $2,000.00.

20. The LAW FIRM owes GILLESPIE $6,224.78.

WHEREFORE plaintiff demands judgment for $6,224.78 against defendants, together with interest, costs, expenses, and attorney's fees.

**COUNT II - FRAUD**

21. GILLESPIE realleges and incorporates by reference paragraphs 1 through 20.

22. On August 1, 2001, United States District Judge Richard Lazzara issued an order in the Action denying Class Certification as moot, dismissed Count I with prejudice, dismissed Counts II and III without prejudice to bring in state court, and closed the file.

23. Soon after the ruling described in paragraph 22, COOK told GILLESPIE that during a telephone conversation with lawyer John Anthony, the attorney for Amscot Corporation ("Amscot"), that John Anthony offered COOK a $5,000 "consulting fee" or "non-refundable retainer" to refrain from appealing the ruling or filing state law claims. COOK described this payment as an "improper payoff attempt" and not an offer to settle. COOK said that "the Florida Bar likely would prohibit such an agreement." Nonetheless COOK did not report John Anthony's "improper payoff attempt" to the Florida Bar.

24. When COOK told GILLESPIE that "the Florida Bar would likely prohibit such an agreement", GILLESPIE believed that John Anthony did something unethical if not

unlawful. Because COOK did not report John Anthony's "improper payoff attempt" to the Florida Bar, GILLESPIE became suspect of COOK's motivation and alliances.

25. COOK told GILLESPIE that Amscot did not want to pay the plaintiffs anything because Amscot resented the plaintiffs for suing. COOK told GILLESPIE that this was a "sticking part" or barrier to a settlement. COOK told GILLESPIE that Amscot did not resent COOK or the LAW FIRM, and Amscot wanted to pay money to COOK and the LAW FIRM to settle the Action. COOK maintained that the "sticking part" was a $1,000 payment to each of three plaintiffs, not a $50,000 payment to the LAW FIRM. Because this argument was counterintuitive (and later proved false), GILLESPIE became further suspect of COOK's motivation and alliances.

26. COOK's "sticking part" argument was his segue into evading the Representation Contract with GILLESPIE. COOK deceitfully used the "sticking part" argument to frame the settlement in terms useful to the LAW FIRM and against the interests of his clients.

27. COOK falsely told GILLESPIE that the LAW FIRM incurred costs and expenses in the Action of about $33,000. COOK used this amount as a basis to justify his $50,000 demand from Amscot. GILLESPIE later learned that the actual costs and expenses were only $3,580.67, plus $2,544.79 paid a former law firm, for a total $6,125.46.

28. On August 15, 2001, COOK wrote GILLESPIE that he would appeal the ruling described in Paragraph 22, but not file a State lawsuit, and demand $1,000 each to settle the plaintiff's claims, and $50,000 for the LAW FIRM's attorney's fees and costs from Amscot. COOK's offer was consistent with his "sticking part" ruse. COOK's separate negotiation with Amscot placed COOK in a position of conflict with his clients. (Ex. 4).

29. On August 16, 2001 GILLESPIE wrote COOK and specifically challenged his "sticking part" argument. (Exhibit 5). GILLESPIE wrote to COOK:

> "I agree with you that the Defendant will probably not accept your settlement offer. I believe the sticking point is your request for $50,000 in attorney's fees and costs. I do not believe the $1,000 request each for myself, Mr. Clement and Ms. Blomefield is a barrier to settlement. Therefore I suggest you ask for a lesser amount of attorney's fees and costs. Given your lack of success in this matter thus far, I suggest you ask for $10,000 in attorney's fees and costs. I believe this is a more realistic amount. Given how poorly the case has gone up to now, I believe it is in our interest to settle quickly."

GILLESPIE was concerned that the ultimate loss of the case would leave him indebted to Amscot for its costs and attorney's fees. COOK's separate negotiation with Amscot placed COOK in a position of conflict with GILLESPIE.

30. In a memo dated Monday, August 20, 2001, COOK wrote the following to memorialize his conversation with GILLESPIE: (Exhibit 6).

a. COOK: "I explained to him that I did not believe that the sticking part was created through the attorney's fees, but rather it was the payment to the clients."

b. COOK: "I told him of my conversation with John Anthony in which he offered to pay this firm $5,000.00 but would not agree to pay our client's anything."

c. COOK: "I told him I rejected that offer. He asked me why I had not mentioned the settlement offer to him previously. I told him it was not a settlement offer. It was an improper payoff attempt."

d. COOK: "I told him that the $50,000.00 demand was not set in stone and we would consider the $10,000.00 offer that he suggested.

31. Once COOK admitted to GILLESPIE that the LAW FIRM would accept $10,000 for legal fees, anything more was lawfully part of the Total Recovery to which plaintiffs were entitled a percentage under the terms of the Representation Contract. The proposed settlement was economic in nature, for business reasons, and was not based on any legal victory, nor constrained by Truth In Lending Act (TILA) limitations or its fee-shifting provision. This settlement was market driven and COOK was rolling the dice, not collecting lawyer's fees. COOK's demand was speculative and the LAW FIRM had taken a proprietary interest in the action, under the guise of collecting lawyer's fees.

32. COOK submitted an offer to Amscot on August 20, 2001, asking for $1,000 for each plaintiff, forgiveness of any outstanding loans (GILLESPIE did not have an outstanding loan), and $50,000 payment to the LAW FIRM for attorney's fees and costs.

33. Amscot countered COOK's offer in the preceding paragraph with an offer to pay each plaintiff $1,000, forgive any outstanding debts (GILLESPIE did not owe Amscot any money), and a $10,000 payment to the LAW FIRM, in a letter dated August 24, 2001.

34. Unexpectedly Amscot offered and then paid the LAW FIRM $50,000.

35. Likewise Amscot offered and then paid each plaintiff $2,000.

36. The $2,000 paid by Amscot to GILLESPIE was substantially less than $10,000 COOK told GILLESPIE he might recover as a class-action representative. In fact the $2,000 received was only 20%, or one-fifth, the recovery GILLESPIE expected.

37. The LAW FIRM never sent a bill to Amscot for legal services, nor provided Amscot any basis for the $50,000 in attorney's fees and cost. Amscot unexpectedly

increased its offer to COOK by $40,000, with little or no negotiation. COOK was happy that he did not report Mr. Anthony's prior "improper payoff attempt" to the Florida Bar.

38. Once Amscot agreed to pay the plaintiffs a monetary settlement, COOK's earlier "sticking part" argument failed as a strategy to evade the Representation Contract with GILLESPIE. Therefore COOK utilized a new ruse. COOK told GILLESPIE that the *United States Court of Appeals for the Eleventh Circuit* awarded $50,000 in attorney's fees and costs to the LAW FIRM, and that this fact precluded recovery under the Representation Contract, citing a "whichever is higher" provision for court-awarded attorney's fees and costs.

39. The LAW FIRM prepared a phony Closing Statement dated October 31, 2001 falsely reflecting the $50,000 court-awarded attorney's fees and costs. (Exhibit 7).

40. The Closing Statement prepared by the LAW FIRM did not list any costs and expenses. In fact the LAW FIRM incurred $3,580.67 in costs and expenses, and paid a former law firm, Jonathan Alpert, $2,544.79, for a total of $6,125.46. COOK did not disclose this information to GILLESPIE until May 9, 2003, over nineteen months later. Also, the LAW FIRM did not disclose that approximately 600 hours of legal work was spent on the Amscot case for GILLESPIE's benefit until June 23, 2003, over twenty months later. Since much of this time was spent at the Jonathan Alpert law firm, and has already been paid by Mr. Alpert, this could represent double-billing by the LAW FIRM. However the details of this information remain secret and concealed at this time.

41. Informed Consent. GILLESPIE lacked the knowledge to make an informed choice when he signed the Closing Statement because of the deceptions used by COOK and the LAW FIRM described in paragraphs 27, 40, and elsewhere in this Complaint.

42. GILLESPIE relied upon COOK's false statements, and the LAW FIRM's false Closing Statement, specifically the fact that the *United States Court of Appeals for the Eleventh Circuit* awarded $50,000 in attorney's fees and costs, and in reliance thereupon GILLESPIE approved the settlement.

43. The LAW FIRM took $50,000 from the Total Recovery of the Action under the guise of court-awarded costs and attorney's fees on or about November 1, 2001, and paid GILLESPIE $2,000. The LAW FIRM also paid $2,000 each to Eugene R. Clement and Gay Ann Blomefield. This event occurred in the LAW FIRM office in the city of Tampa, Florida, Hillsborough County. (Exhibit 2).

44. On May 9, 2003 COOK disclosed to GILLESPIE the actual costs and expenses incurred by the LAW FIRM in the Action. Because of the significant discrepancy between the actual amount ($6,125.46) and the false amount ($33,000) that COOK said were incurred in paragraph 27, GILLESPIE further investigated the settlement.

45. GILLESPIE located the Appellate Court file and read that the *United States Court of Appeals for the Eleventh Circuit* granted a Motion for Dismissal with the parties bearing their own costs and attorney's fees. This proved the falsity of COOK's assertion that the Appellate Court awarded $50,000 to the LAW FIRM. (Exhibit 7).

46. COOK and the LAW FIRM committed fraud because:

a. COOK's statement to GILLESPIE that the Appellate Court awarded the LAW FIRM $50,000 in attorney's fees and costs was a material fact that was untrue, as was the LAW FIRM's Closing Statement to GILLESPIE listing court-awarded fees and costs of $50,000. The Closing Statement's disclosure was a material fact that was untrue; and

b. The falsehood described above was known by COOK and the LAW FIRM to be untrue at the time it was made; and

c. The falsehood by COOK and the LAW FIRM was stated for the purpose of inducing GILLESPIE to approve a settlement; and

d. GILLESPIE relied upon the falsehood from COOK and the LAW FIRM as true and correct, and approved the settlement on October 30, 2001; and

e. By approving the settlement GILLESPIE suffered financial loss of $6,224.78, by accepting the sum of $2,000 instead of the sum of $8,224.78 to which GILLESPIE was entitled under law and the Representation Contract.

47. GILLESPIE notified the LAW FIRM of its Breach of Contract and Fraud June 13, 2003. LAW FIRM partner Chris A. Barker responded but failed to satisfactorily explain the facts described in this complaint. Mr. Barker refused to account for the LAW FIRM's attorney's fees, and refused to honor the terms of the Representation Contract.

48. Mr. Barker wrote GILLESPIE on June 23, 2003 and terminated further discussion. Additionally Mr. Barker wrote that "Furthermore, approximately 600 hours of legal work was spent on the Amscot case for your benefit." But Mr. Barker refused to account for the hours, and it is possible that much of this time was spent at the Jonathan Alpert law firm and has already been paid by Mr. Alpert.

49. GILLESPIE wrote Mr. Barker on June 24, 2003, requesting a meeting for a explanation of the situation. Mr. Barker did not reply. GILLESPIE wrote, in part:

> "Yesterday I spoke with Jonathan Alpert about this situation. He reviewed the enclosed documents, but was at a loss to explain

them. Mr. Alpert suggested that I meet with you and Bill for an explanation. I am willing to do this on neutral territory."

50. GILLESPIE filed an ethics complaint against COOK on June 7, 2004 with the Florida Bar. The initial investigator, William L. Thompson, spent over six months on the complaint, then left employment with the Florida Bar. After changing investigators the Florida Bar wrote on February 9, 2005 that there was insufficient evidence of a violation of the Rules Regulating the Florida Bar to warrant further proceedings, and that its disposition had no effect on any further legal remedy GILLESPIE may choose. During its review, the Florida Bar used an "objective evidence" standard to reach its decision. When GILLESPIE questioned the findings, the Florida Bar could not support its decision. In essence the Florida Bar merely adopted COOK's response, which itself was inaccurate and self-serving. Also, the Florida Bar's inquiry was narrow, so narrow that when GILLESPIE asked if John Anthony's "improper payoff attempt" was unethical, or if COOK was required to report the incident, the Florida Bar responded by saying that the issue was not considered and that a separate complaint must be filed. On June 7, 2005, Susan Bloemendaal, Chief Discipline Counsel wrote that GILLESPIE was "…free to pursue a lawsuit against Mr. Cook and/or his law firm should you so desire." GILLESPIE chose a lawsuit rather than pursue another complaint or a fee grievance.

51. When GILLESPIE joined this Action as a plaintiff, he believed Amscot had violated consumer law as COOK advised. During the course

of litigation the Court ruled otherwise, and GILLESPIE accepted the fact that COOK was wrong and that Amscot acted lawfully. Also during the course of litigation it became clear to GILLESPIE that COOK was deceitful, and that the Breach of Contract and Fraud described in this Complaint were far worse than anything of which Amscot was accused. GILLESPIE recently apologized to Amscot's President, Ian Mackechnie. (Exhibit 8).

WHEREFORE plaintiff demands judgment for punitive damages in the amount of three times his loss of $6,224.78, or $18,674.34 for fraud against defendants, together with interest, costs, expenses, and attorney's fees.

**Demand for Trial by Jury**

Pursuant to Rule 1.430(b) of the Fla. R. Civ. P., plaintiff demands trial by jury.

RESPECTFULLY SUBMITTED this 11th day of August, 2005.

Neil J. Gillespie, Plaintiff pro se
8092 SW 115th Loop
Ocala, Florida 34481
Telephone: (813) 810-0151

# Gillespie v. Barker, Rodems & Cook, PA, et al.

## Exhibits

| | |
|---|---|
| Exhibit 1 | Class Action Representation Contract |
| Exhibit 2 | Closing Statement, Barker, Rodems & Cook, PA |
| Exhibit 3 | Lawful Settlement of Action, spreadsheet |
| Exhibit 4 | August 15, 2001 letter, Cook to Gillespie |
| Exhibit 5 | August 16, 2001 letter, Gillespie to Cook |
| Exhibit 6 | August 20, 2001 Cook memorandum |
| Exhibit 7 | U.S. Court of Appeal for the Eleventh Circuit, Motion to Dismiss with Prejudice (Granted) |
| Exhibit 8 | July 25, 2005 letter, Gillespie to Amscot |

# CLASS REPRESENTATION CONTRACT

## I. PURPOSE

I/We, Neil Gillespie, do hereby retain and employ the law firm of Barker, Rodems & Cook, P.A., to investigate my potential claim resulting from my payday loans with AMSCOT Corporation and, if advisable, to pursue necessary litigation on my behalf.

I/We understand that I/we may be one of several plaintiff(s) or part of a class of plaintiff(s) represented by Barker, Rodems & Cook, P.A.

## II. COSTS AND EXPENSES

I/We hereby agree to pay for the costs and expenses of the investigation and preparation of my/our claims for damages. Should it be necessary to institute a lawsuit or arbitration proceeding, I/we agree to pay all costs and expenses associated with any Court or arbitration proceeding. If an appeal of any decision is filed, regardless of the person or party filing such appeal, I agree to pay the costs and expenses associated with initiating or responding to such appeal.

I/We authorize Barker, Rodems & Cook, P.A., to advance and pay any costs and expenses it deems appropriate to the handling of my case. I/We will pay Barker, Rodems & Cook, P.A., for the costs and expenses advanced out of the portion of any recovery remaining after attorneys' fees have been subtracted. I/We will then receive the portion of what remains, which is known as the "net recovery". Thus, the "total recovery" (all monies received or collected, including attorneys' fees, if awarded) less Barker, Rodems & Cook, P.A.'s attorneys' fees and any costs and expenses will equal the "net recovery".

I/We understand that my/our portion of the "net recovery" will be a prorated or per person share which will be proportional to that of all other class members. The amount of money I/we receive will be determined by dividing the "net recovery" (the amount of any recovery remaining after attorneys' fees and expenses have been subtracted) by the number of class members who are determined eligible to receive proceeds from any judgment or settlement. I/We understand that the Court or other tribunal may approve a different ratio or formula depending upon the circumstances.

If there is no recovery, or if the total recovery is not adequate to pay for all of the costs and expenses advanced, I/we understand that Barker, Rodems & Cook, P.A., will not seek payment from me for any expenses.

EXHIBIT
1

If I/we terminate this contract, then Barker, Rodems & Cook, P.A., may seek payment from me/us for any costs and expenses allowed by law.

## III. ATTORNEYS' FEES

In almost all cases in America, each party to a lawsuit or arbitration proceeding pays its own attorneys' fees. In rare cases, the Defendant(s) may pay all or part of the attorneys' fees or the Court or arbitration panel may award attorneys' fees based upon a statute or otherwise.

I/We agree to pay Barker, Rodems & Cook, P.A., an attorneys' fee if it is successful in obtaining any monies or other benefit on my behalf. I/We understand that Barker, Rodems & Cook, P.A., will receive the attorneys' fees awarded by a Court or arbitration panel or will receive the applicable percentage of the "total recovery" (all monies received from the Defendant(s) including, but not limited to, money for actual damages, punitive damages, interest, penalties, attorneys' fees and expenses), whichever is higher. The applicable percentages shall be as follows:

A. 33.334% of the "total recovery" prior to the time that an answer is filed or a demand for appointment of arbitrator(s) is made; thereafter,

B. 40% of the "total recovery" from the time of the filing of an answer or the demand for appointment of arbitrator(s), through the entry of a judgment;

C. An additional 5% of the "total recovery" after a Notice of Appeal is filed by any person or party or if post-judgment relief or action is required for recovery on the judgment.

In the event that my/our claim is settled on terms of an agreement calling for payment in installments, whether monthly, annually or otherwise, in the future, my/our attorneys' contingent fee percentage shall be calculated on the costs of any structured settlement or, if the cost is unknown, on the present money value of the structured settlement. If both the damages and the attorneys' fees are to be paid out in future installments, this limitation shall not apply.

I/We understand that if there is no recovery, I/we will not be indebted to Barker, Rodems & Cook, P.A., for any attorneys' fees.

If I/we terminate this contract, then Barker, Rodems & Cook, P.A., may seek payment from me/us for any attorneys' fees allowed by law.

## IV. BARKER, RODEMS & COOK, P.A. MAY WORK WITH OTHER LAWYERS ON MY CASE

I/We understand that Barker, Rodems & Cook, P.A., in its discretion, may work with other lawyers on my/our case if deemed necessary. If Barker, Rodems & Cook, P.A., agrees to work with other lawyers on my/our case, I/we understand that the attorneys' fees I/we will have to pay will not increase. Other law firms or lawyers hired by Barker, Rodems & Cook, P.A., will be paid out of the attorneys' fees agreed to in this contract and, if I/we so desire, I/we will be advised regarding how the attorneys' fees are divided.

## V. WHAT THIS CONTRACT COVERS

### A. Scope of Representation

At the time of signing this contract, I/we also signed a Statement of Client's Rights as well as an Acknowledgment regarding investigation of my claim. These three documents encompass the entire agreement between me/us and Barker, Rodems & Cook, P.A. These signed agreements take the place of any prior, oral or written agreements and may only be changed or modified by a separate, written agreement signed and dated by me/us and Barker, Rodems & Cook, P.A.

This contract is to be interpreted in accordance with Florida law.

I/We understand that Barker, Rodems & Cook, P.A., has no duty to represent me/us in any matters other than my/our potential claim resulting from my payday loans with AMSCOT Corporation.

I/We understand that if Barker, Rodems & Cook, P.A., determines, at some later date, that my claim should not or cannot be reasonably prosecuted by the Firm, the Firm may notify me in writing of this decision and withdraw as my attorneys. Under such circumstances, I shall be responsible to Barker, Rodems & Cook, P.A., only for any fees and costs permitted by law.

### B. Documents and Information

I/we authorize the lawyers to utilize my/our documents and/or information in any regulatory, enforcement, or other proceedings of any kind as may be necessary in the lawyers' sole discretion.

## APPROVAL OF THIS CONTRACT

The undersigned client(s) has/have, before signing this contract, received and read the Statement of Client's Rights and understands each of the rights set forth therein. The undersigned client(s) has/have signed the Statement and received a signed copy to refer to while being represented by the undersigned attorneys.

This contract may be cancelled by written notification to the attorneys at any time within three (3) business days of the date the contract was signed, as shown below, and if cancelled the client(s) shall not be obligated to pay any fees to the attorneys for the work performed during that time. If the attorneys have advanced funds to others in representation of the client(s), the attorneys are entitled to be reimbursed for such amounts as the attorneys have reasonably advanced on behalf of the client(s).

I/We have read this contract and any documents specifically referenced herein, and agree to all terms referenced within such documents.

DATED:______________________________ DATED: ______________________________

______________________________ of
Barker, Rodems & Cook, P.A.
300 West Platt Street, Suite 150
Tampa, Florida 33606
813/489-1001

______________________________
Client

______________________________
Client





[redacted]

**BARKER, RODEMS & COOK, P.A.**
**CLOSING STATEMENT**

Style of Case: Eugene R. Clement, Gay Ann Blomefield, and Neil Gillespie v. AMSCOT Corporation.

As of: October 31, 2001

Our File No.: 99.4766

| | |
|---|---|
| ATTORNEYS' FEES & COSTS | $ 50,000.00 |
| PAYMENTS TO CLIENTS | |
| EUGENE R. CLEMENT | $ 2,000.00 |
| GAY ANN BLOMEFIELD | 2,000.00 |
| NEIL GILLESPIE | 2,000.00 |
| **TOTAL** | $ 56,000.00 |

---

In signing this closing statement, I acknowledge that AMSCOT Corporation separately paid my attorneys $50,000.00 to compensate my attorneys for their claim against AMSCOT for court-awarded fees and costs. I also acknowledge that I have received a copy of the fully executed Release and Settlement Agreement dated October 30, 2001.

[signature] 11-1-01
Neil Gillespie (Date)

BARKER, RODEMS & COOK, P.A.

By: [signature]
WILLIAM J. COOK, ESQUIRE

0( 34

EXHIBIT
2

# Lawful Settlement of Action

Style of Case: Eugene R. Clement, Gay Ann Blomefield, and Neil Gillespie v. AMSCOT Corporation

| | |
|---|---|
| Total Recovery | $ 56,000.00 |
| Legal Fees (45%) - Barker, Rodems & Cook, P.A. | $ 25,200.00 |
| Costs and expenses - Barker, Rodems & Cook, P.A. | $ 3,580.88 |
| Costs paid to Alpert law firm | $ 2,544.79 |
| Total amount due Barker, Rodems, & Cook, P.A. Under the Contract and Bar Rule 4-1.5(f)(4)(B)(i) | $ 31,325.67 |
| Total amount due plaintiffs Under the Contract and Bar Rule 4-1.5(f)(4)(B)(i) | $ 24,674.33 |
| Individual amount due each of three plaintiffs | $ 8,224.78 |
| Amount already paid to each plaintiff by Barker, Rodems & Cook, P.A. | $ 2,000.00 |
| Amount owing to each plaintiff from Barker, Rodems & Cook, P.A. | $ 6,224.78 |

tabbies EXHIBIT 3



[redacted]

**BARKER, RODEMS & COOK**
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

CHRIS A. BARKER
RYAN CHRISTOPHER RODEMS
WILLIAM J. COOK

300 West Platt Street, Suite 150
Tampa, Florida 33606

Telephone 813/489-1001
Facsimile 813/489-1008

August 15, 2001

Neil J. Gillespie
Apartment C-2
1121 Beach Drive NE
St. Petersburg, Florida 33701-1434

**Re:** ***Eugene R. Clement, individually and on behalf of others similarly situated, AMSCOT Corporation***
**Case No. : 99.2795-Civ-T-26C**
**Our File No. : 99-4766**

Dear Neil:

This confirms that you authorized us to appeal the decision in the above-referenced case. We will not be filing a new lawsuit in State court. In addition, you authorized us to demand $1,000.00 to settle your claim plus $50,000.00 in attorneys' fees and costs.

Of course, we will keep you updated on the appeal and any settlement negotiations. As we discussed, however, we do not believe that the Defendant will accept our settlement offer.

Sincerely,

William J. Cook

WJC/mss

tabbles EXHIBIT 4



[redacted]

*Neil J. Gillespie*
1121 Beach Drive NE, Apt. C-2
St. Petersburg, Florida 33701-1434

Telephone and Fax: (727) 823-2390

VIA FAX AND FIRST CLASS MAIL

August 16, 2001

William J. Cook, Attorney at Law
Barker, Rodems & Cook, PA
300 West Platt Street, Suite 150
Tampa, Florida 33606

Re: ***Eugene R. Clement, individually and on behalf of others similarly situated, AMSCOT Corporation***
**Case No. : 99.2795-Civ-T-26C**
**Your File No. : 99-4766**

Dear Bill,

Thank you for your letter dated August 15, 2001 relative to the above captioned case. I agree with you that the Defendant will probably not accept your settlement offer. I believe the sticking point is your request for $50,000 in attorney's fees and costs. I do not believe the $1,000 request each for myself, Mr. Clement and Ms. Blomefield is a barrier to settlement. Therefore I suggest you ask for a lesser amount of attorney's fees and costs.

Given your lack of success in this matter thus far, I suggest you ask for $10,000 in attorney's fees and costs. I believe this is a more realistic amount. Given how poorly the case has gone up to now, I believe it is in our interest to settle quickly.

Thank you for your kind consideration.

Sincerely,

Neil J. Gillespie

cc: Kindly provide a copy of this letter to Mr. Clement and Ms. Blomefield

EXHIBIT
5

**MEMORANDUM**

| | | |
|---|---|---|
| TO | : | File |
| FROM | : | WJC |
| DATE | : | Monday, August 20, 2001 |
| RE | : | Clement v. AMSCOT |
| | : | 99.4766 |

---

I spoke with Neil Gillespie on August 17, 2001. We had a fairly lengthy conversation about the pluses and minuses of going forward with the appeal and the settlement offer. I explained to him that I did not believe that the sticking part was created through the attorneys' fees, but rather it was the payment to the clients. I told him of my conversation with John Anthony in which he offered to pay this firm $5,000.00 but would not agree to pay our clients anything. I told him that I rejected that offer. He asked me why I had not mentioned the settlement offer to him previously. I told him that it was not a settlement offer. It was an improper payoff attempt. At the end of the conversation, when I told him that I would wait until Monday before I sent the settlement offer, he told me that that was not necessary. He simply wanted to advise me that he was not necessarily happy with the $50,000.00 settlement demand. I told him that the $50,000.00 demand was not set in stone and we could consider the $10,000.00 offer that he suggested. I told him that it was not likely that we would receive such an offer, however.

WJC

WJC/mss

EXHIBIT
tabbies
6

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 07 2001
THOMAS K. KAHN
CLERK

No. 01-14761-AA

EUGENE R. CLEMENT,
individually and on behalf of others similarly situated,

Plaintiff-Appellant,

8:99-cv-2795-T-26 EAJ

GAY ANN BLOMEFIELD,
NEIL GILLESPIE,

Plaintiffs-Intervenors-Counter-Defendants-Appellants,

versus

AMSCOT CORPORATION,
A Florida Corporation,

Defendant-Intervenor-Counter-Claimant-Appellee.

On Appeal from the United States District Court for the Middle District of Florida

BEFORE: EDMONDSON and BARKETT, Circuit Judges.

BY THE COURT:

The parties joint stipulation for dismissal of this appeal with prejudice, which is construed as a motion to dismiss this appeal with prejudice, with the parties bearing their own costs and attorney's fees, is GRANTED.

A TRUE COPY - ATTESTED:
CLERK U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

BY: [signature]
DEPUTY CLERK
ATLANTA, GEORGIA

EXHIBIT 7

21

JO 39

**Neil J. Gillespie**
8092 SW 115th Loop
Ocala, Florida 34481

Telephone: (813) 810-0151

July 25, 2005

Ian Mackechnie, President
Amscot Corporation
600 N. Westshore Blvd., 12th Floor
Tampa, Florida 33609

RE: Clement, et al. v. Amscot Corporation, Case No. 8:99-cv-2795-T-26C, US District Court, Middle District Florida, Tampa Division; on appeal, Case No. 01-14761-A US Court of Appeals, For the Eleventh Circuit

Dear Mr. Mackechnie,

I was a plaintiff in the above captioned lawsuit. While this action is settled, I regret becoming involved, and was pressured into it by my lawyer, William Cook. I am sorry for the consequences you suffered. About two years ago I found discrepancies in the case file. This is part of my attempt to uncover the truth. As I see it, you paid $43,000.00 too much to settle this case. Here's why.

Prior to my involvement in the above captioned lawsuit, Mr. Cook represented me in a lawsuit against ACE, America's Cash Express, for payday loan roll-over transactions. The lawsuit was joined by Florida Attorney General Robert Butterworth. I still believe the ACE litigation was justified. However, in my view Amscot was not as culpable as ACE, and I initially declined Mr. Cook's solicitation to join the lawsuit. But Mr. Cook said that I was selfish for not suing Amscot, and I relented.

During the course of litigation it became apparent to me that Mr. Cook and his associates were incompetent and not truthful. During the settlement negotiations I tried to settle this case for $10,000.00 in legal fees and $1,000.00 to each of the three plaintiffs (see copy of my letter, enclosed). You ultimately paid $56,000.00 to settle, and I believe this was the result of our lawyers' collusion. This is my opinion, and I welcome any supporting evidence. In the alternative, perhaps your lawyer John Anthony was just a very poor negotiator, and you paid $43,000.00 too much to settle the lawsuit.

I filed a complaint against William Cook with the Florida Bar (TFB No. 2004-11,734(13C) to no avail. I am available to discuss this further if you wish. Thank you.

Sincerely,

Neil J. Gillespie

EXHIBIT 8

EXHIBIT 5

05-7205

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT OF THE STATE OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY, CIVIL DIVISION**

**NEIL J. GILLESPIE,**

**PLAINTIFF,**

**CASE NUMBER ~~05-CA-72105~~**

**vs.**

**DIVISION " F "**

**BARKER, RODEMS & COOK, P.A., a Florida Corporation; and WILLIAM J. COOK,**

**DEFENDANTS.**

FILED
CLERK OF CIRCUIT CT.
2006 JAN 13 AM 11:03
HILLSBOROUGH CNTY, FL
CIRCUIT CIVIL
am

______________________________/

**ORDER ON DEFENDANTS' MOTION TO DISMISS AND STRIKE**

**THIS CAUSE** came on for hearing on September 26, 2005, upon Defendant's Motion to Dismiss and Strike, and counsel for the parties being present and having made arguments and the court having considered the Plaintiff's Rebuttal to Defendant's Motion to Dismiss and Strike. Defendant's Reply to Plaintiff's Rebuttal to Defendant's Motion to Dismiss and Strike and the Plaintiff's Second Rebuttal to Defendant's Motion to Dismiss and Strike, and the court being advised fully in the premises, it is thereupon,

**ADJUDGED** as follows:

1. Defendant's Motion to Dismiss and Strike is granted in part and denied in part.

2. Those portions of Defendant's Motion to Dismiss and Strike seeking to dismiss the Complaint are denied. Defendant shall have fifteen days from the date of this order within which to file responsive pleadings.



[redacted]

3. Those portions of Defendant's Motion to Dismiss and Strike seeking to strike portions of the Complaint is granted in the following particulars:

a. Paragraphs 47, 48, 49 and 50 of the Complaint are stricken.

b. Exhibit 8 to the Complaint is stricken.

c. All references to or demands for punitive damages are stricken or failure to comply with §768.72 of the Florida Statutes.

**ORDERED** in Chambers, at Tampa, Hillsborough County, Florida, this

_____ day of JAN 13 2006, 20_____.

RICHARD A. NIELSEN
CIRCUIT JUDGE

Copies furnished to:

Ryan C. Rodems, Esquire
300 West Platt Street, Suite 150
Tampa, Florida 33606

Neil J. Gillespie
8092 SW 115th Loop
Ocala, Florida 34481

STATE OF FLORIDA )
COUNTY OF HILLSBOROUGH)
THIS IS TO CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE DOCUMENT ON FILE IN MY OFFICE. WITNESS MY HAND AND OFFICIAL SEAL THIS 31st DAY OF August 2010
PAT FRANK
CLERK OF CIRCUIT COURT
BY Donna Healy D.C.

IN THE UNITED STATES COURT OF APPEALS

EXHIBIT 6

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 07 2001
THOMAS K. KAHN
CLERK

No. 01-14761-AA

EUGENE R. CLEMENT,
individually and on behalf of others similarly
situated,

Plaintiff-Appellant,

GAY ANN BLOMEFIELD,
NEIL GILLESPIE,

8: 99-cv-2795-T-26 EAJ

Plaintiffs-Intervenors-
Counter-Defendants-Appellants,

versus

FILED

AMSCOT CORPORATION,
A Florida Corporation,

Defendant-Intervenor-Counter
-Claimant-Appellee.

---

On Appeal from the United States District Court for the
Middle District of Florida

---

BEFORE: EDMONDSON and BARKETT, Circuit Judges.

BY THE COURT:

The parties joint stipulation for dismissal of this appeal with prejudice, which is construed as a motion to dismiss this appeal with prejudice, with the parties bearing their own costs and attorney's fees, is GRANTED.

A TRUE COPY - ATTESTED:
CLERK U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

BY: [signature]
DEPUTY CLERK
ATLANTA, GEORGIA

121



UF could not maintain my speech obturator



Dr. Kusiak's photo of my oral-nasal fistula, 1985





CPCF Journal, unoperated adult July 1992, Vol. 29 No.4, page 371

EXHIBIT 7

<u>Mr. Rodems' breached his duty to avoid a limitation on independent professional judgment, violated</u> Rules 4-1.7, 4-1.9, 4-1.10; <u>McPartland v. ISI Inv. Services, Inc</u>., 890 F.Supp. 1029, M.D.Fla., 1995

Transcript, March 3, 2006, page 6

```
MR. GILLESPIE: Now, you call here and just
marched into a tirade of insults.
MR. RODEMS: No, actually I haven't insulted
you at all. I've never said anything about you. I
just said that you don't really know the law
because you don't know how to practice law.
```

Transcript, March 3, 2006, page 7

```
MR. RODEMS: Didn't you at one time purchase a
car so that you could get the cash rebate to get
```

Transcript, March 3, 2006, page 8

```
some dental work done? We're going to get to the
discovery, anyhow, so just tell me, did that really
happen?
MR. GILLESPIE: What?
MR. RODEMS: Did you purchase a car so that
you could get the cash rebate to get some dental
work done?
MR. GILLESPIE: Listen, this is why you need
to be disqualified.
MR. RODEMS: No, I mean, that's -- because I
know that? Because I know that to be a fact?
MR. GILLESPIE: You know it to be a fact from
your previous representation of me.
MR. RODEMS: Well, you know, see that's --
MR. GILLESPIE: If it is -- if it's a fact,
anyway.
MR. RODEMS: You need to study the rules and
regulations of the Florida Bar because when you
make --
MR. GILLESPIE: I think, I think I bought a
car so I would have something to drive. I don't
know why you buy cars, but that's why I bought it.
```

Transcript, March 3, 2006, page 9

```
MR. RODEMS: Okay. Well, I just want to be
clear because I understand that in talking with you
it's very important to be precise because you don't
really have a good command of the language that,
you know, lawyers speak.
```

415-13
Rev. 1-81

# AMERICAN ONCOLOGIC HOSPITAL

## PROGRESS REPORT

Note progress of case, complications, changes in diagnosis condition on discharge, instructions to patient

CHART COPY

GILLESPIE, Neil #74123

7/22/85

The patient is a 29 year old white male referred by Dr. Carver who is status post left unilateral Class IV lip and palate repair at approximately age two years old. He is unclear about the details of the degree of his defects, the surgical procedures, who performed this, or exactly where it was done. Apparently, after the initial bout of surgeries to repair the lip and hard and soft palate, he had no further surgical intervention. He had no ongoing follow-up for this problem. At approximately age 13 to 14 years old, he underwent orthodontic treatment at Temple University Hospital's Dental School and this ultimately resulted in the placement of a retainer with a prosthetic left lateral incisor. He has worn this since that time. He notices drainage of food into the left nasal floor. His left and right nostrils are opened, although the left is somewhat stuffy and occluded.

His main concerns upon presentation are related to the persistent cleft in the left alveolus, the draining fistula, and the possibility of foregoing the need for a prosthetic device. In addition, however, it is obvious on confronting the patient that he has a moderate amount of nasal deformity, flattening of the left side in the premaxillary region, and lip distortion, particularly at the vermilion. In addition, the patient has a significantly hypernasal speech pattern with obvious velopharyngeal incompetence.

On physical examination beginning externally, the patient has a slightly large nose with a small dorsal hump. The size of the nose is slightly larger than proportional to his face, although not exaggeratedly so. The right alar dome is full. The left alar cartilage is posteriorly and laterally displaced and somewhat hypoplastic compared to the left side. The left alar base is also laterally displaced. The nostril sill is flattened, and there is an obvious fistula between the distal nasal floor and the oral cavity. The left columella, likewise, is somewhat hypoplastic and twisted. The upper lip scar is well healed and appears to be a LeMesurier or Tennison-Randall type repair. The upper lip tubercle is preserved, but the vermilion border is somewhat irregular. Length appears, however, to be satisfactory. There is a lateral orbicularis bulge of the left upper lip. Internally, there is a wide cleft of the left alveolar ridge at the level of the lateral incisor with a fistula into the nasal floor. This runs posteriorly and nearly to the end of the secondary palate. The soft palate has a linear scar. it is very short, and there is lateral movement but no central movement of note.

continued....

OVER

GILLESPIE, Neil
Page Two
7/22/85

My impression and recommendation to the patient generated three specific areas of interest. One relates to the scar revision of his upper nose and the relationships of his nasal tip, nose, and secondary deformities in this area. The second area of interest in importance is the alveolar cleft with the naso-oral fistula. The third area is the palate with obvious velopharyngeal incompetence and a foreshort and scarred palate.

My initial recommendations will be that the patient undergo orthodontic evaluation. I will arrange for him to see Dr. Rosario Mayro for evaluation as well as x-rays to assess his occlusal relationships. It also should be noted that he, in general, had a fairly satisfactory occlusal relationship with some lateral collapse and crossbite on the minor segment on the left and evaluate his adequacy as a candidate for bone grafting, which I think he would qualify. Subsequent to this, I will have him see Dr. Harvey Rosen concerning the actual surgical procedure and also he will be seen by Miss Marilyn Cohen, a speech pathologist with special interest in patients having cleft lip and palate for an evaluation concerning feasibility of posteropharyngeal flap in a patient of this age group. Concerning the external revisions, this can be accomplished concerning the upper lip, possibly at the same time as the fistula closure with orbicularis redirection, a revision of the nostril sill and the lateral alar base, and also possibly tip rhinoplasty or this can be accomplished at a later date with a formal rhinoplasty in concert with other procedures. In addition, the vermilion border should be repaired. This can be done by Z-plasty technique.

The patient, therefore, will be seen by the consultants and a general plan with timing for surgery, etc., will be made. We will arrange to make these arrangements and follow-up with the patient. No letter.

REC'D AUG 1985

Joseph Kusiak, M.D.
Plastic & Reconstructive Surgery

JK:bsm
T--8/1/85
D--7/23/85

BARKER, RODEMS & COOK
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

CHRIS A. BARKER
RYAN CHRISTOPHER RODEMS
WILLIAM J. COOK

300 West Platt Street, Suite 150
Tampa, Florida 33606

Telephone 813/489-1001
Facsimile 813/489-1008

March 27, 2001

Neil J. Gillespie
Apartment C-2
1121 Beach Drive NE
St. Petersburg, Florida 33701-1434

**Re: Vocational Rehabilitation**

Dear Neil:

I am enclosing the material you provided to us. We have reviewed them and, unfortunately, we are not in a position to represent you for any claims you may have. Please understand that our decision does not mean that your claims lack merit, and another attorney might wish to represent you. If you wish to consult with another attorney, we recommend that you do so immediately as a statute of limitations will apply to any claims you may have. As you know, a statute of limitations is a legal deadline for filing a lawsuit. Thank you for the opportunity to review your materials.

Sincerely,

William J. Cook

WJC/mss

Enclosures

***Neil J. Gillespie***
1121 Beach Drive NE, Apt. C-2
St. Petersburg, Florida 33701-1434

Telephone and Fax: (727) 823-2390

March 22, 2001

William J. Cook, Attorney at Law
Barker, Rodems & Cook, PA
300 West Platt Street, Suite 150
Tampa, Florida 33606

Dear Bill,

Thank you for agreeing to consider my claim of discrimination/negligence against the State of Florida and its Vocational Rehabilitation Program. Enclosed please find the following:

1. My *Second and Third* (final) *Amended Petitions for Administrative Hearing*. These documents set forth much of my claim.

2. My *Motion for Summary Final Order*. The Administrative Law Judge (Johnston) failed to rule on my motion. The state's response was to try and expand the issues and compel another psychiatric exam. Seeing this was going nowhere, I motioned to withdrawal the request. (See my motion, the order and final order, enclosed).

3. October 5, 1998 letter from Douglas Ligibel, Fla. DVR. This "addendum" letter sets forth the state's claim that I was not cooperative as a reason to deny services.

4. Binder with the Fla. Vocational Rehabilitation web site printed out. (not current)

5. Photo of me taken June 6, 1994 (at 150 pounds) before afflicted with depression (current weight 290 pounds).

6. A brief medical history relevant to VR.

In essence, the state discriminated against me based on disability and refused services as set forth in the petitions. As a result I became severely depressed. The state is negligent because its own psychologist (Dr. Justice) warned of my depression risk, a warning the state ignored. The state also misdiagnosed my condition(s). There may be a breach of privacy relevant to my file. During the time referenced by Mr. Ligibel in his October 5, 1998 letter (item 3, above) my contact with the state was monitored by a private lawyer, Mark Kamleiter, who disputes the allegations contained therein.

Sincerely,

Neil J. Gillespie
enclosures
Ps. Bill, these are mostly original documents, please copy and return if needed. Thanks.

EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**NEIL J. GILLESPIE,**

**Plaintiff,**

**Case No.:5:10-cv-00503-WTH-DAB**

**vs.**

**THIRTEENTH JUDICIAL CIRCUIT, FLORIDA, et al.**

**Defendants.**
______________________________/

**NOTICE OF ASSIGNMENT OF CLAIMS AND MOTION FOR DISMISSAL OF ACTION WITH PREJUDICE**

On June 21, 2011, Plaintiff Neil J. Gillespie assigned all claims in this action to Ryan Christopher Rodems, Chris A. Barker, and William J. Cook. See Exhibit "1".

Assignees hereby move the Court for an Order dismissing this action with prejudice, pursuant to Fed. R. Civ. P. 41(a)(2).

RESPECTFULLY SUBMITTED this 21st day of June, 2011.

**/s/ Ryan Christopher Rodems**
RYAN CHRISTOPHER RODEMS, ESQUIRE
Florida Bar No. 947652
Attorney for Assignees
BARKER, RODEMS & COOK, P.A.
400 North Ashley Drive, Suite 2100
Tampa, Florida 33602
Telephone: (813) 489-1001
Fax: (813) 489-1008
E-mail: rodems@barkerrodemsandcook.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served this 21st day of June, 2011 by electronic transmission to Catherine Barbara Chapman, Esquire, catherine@guildaylaw.com, counsel for Defendants The Law Office of Robert W. Bauer, P.A., and Robert W. Bauer. No other defendant has been served.

**/s/ Ryan Christopher Rodems**
RYAN CHRISTOPHER RODEMS, ESQUIRE

EXHIBIT 1

## SETTLEMENT AGREEMENT AND GENERAL MUTUAL RELEASE

This settlement agreement and general mutual release, executed on June 21, 2011, by and between Neil J. Gillespie, hereinafter "Party A" and Barker, Rodems & Cook, P.A., its agents and employees, and Chris A. Barker, and William J. Cook, and Ryan Christopher Rodems, hereinafter "Party B".

WHEREAS disputes and differences have arisen between the parties, as detailed in the pleadings and records filed in the case styled Neil J. Gillespie v. Barker, Rodems & Cook, P.A., and William J. Cook, Esquire, Case No. 05CA7205, pending in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida and Gillespie v. Thirteenth Judicial Circuit, Florida, et al., 5:10-cv-00503-WTH-DAB, pending in the United States District Court, Middle District of Florida, Ocala Division; WHEREAS, the parties wish to fully and finally resolve all differences between them from the beginning of time through June 21, 2011; WHEREAS, the parties represent that none of the claims released herein have been assigned to a third-party;

NOW THEREFORE, in consideration of the assignment to Party "B" of all claims pending or which could have been brought, based on the allegations of Party "A", against any person or entity, without limitation, in Gillespie v. Thirteenth Judicial Circuit, Florida, et al., 5:10-cv-00503-WTH-DAB and dismissal with prejudice of their claims in the case styled Neil J. Gillespie v. Barker, Rodems & Cook, P.A., and William J. Cook, Esquire, Case No. 05CA7205, and dismissal of the appeal, Case No. 2D10-5197, pending in the Second District Court of Appeal, with the parties to bear their own attorneys' fees and costs, and the agreement of Party "B" to record a Satisfaction of Judgment regarding the Final Judgment entered on March 27, 2008, in Neil J. Gillespie v. Barker, Rodems & Cook, P.A., and William J. Cook, Esquire, Case No. 05CA7205:

Each party (the releasing party) hereby releases, without limitation, the other party (the released party) from any and all actions, suits, claims, debts, accounts, bills, bonds, attorneys' fees or costs, judgments, or any claims, without limitation, whether in law or equity, and whether known or unknown, which the releasing party now has or ever had resulting from any actions or omissions by the released party from the beginning of time through June 21, 2011.

This mutual release shall be acknowledged before a notary public and may be signed in counterpart.

PARTY A

[signature]

NEIL J. GILLESPIE

Neil J. Gillespie
Provided Florida Driver's License
Class E # G 421.630.56.099.0
Signed this 21st day of June, 2011
in Hillsborough County, Florida

KIMBERLY HIMES
Notary Public - State of Florida
My Comm. Expires Nov 16, 2013
Commission # DD 909677
Bonded Through National Notary Assn.

Kimberly Himes

PARTY B

[signature]

CHRIS A. BARKER, individually and as an officer of and on behalf of Barker, Rodems & Cook, P.A.

[signature]

RYAN CHRISTOPHER RODEMS
individually and as an officer of and on behalf of Barker, Rodems & Cook, P.A

RCR

[signature]

WILLIAM J. COOK
individually and as an officer and on behalf of Barker, Rodems & Cook, P.A.

RCR

STATE OF FLORIDA
COUNTY OF Hillsborough

The foregoing instrument was acknowledged before me this 21st day of June, 2011, by NEIL J. GILLESPIE.

Kimberly Himes
Notary Public - State of Florida

Personally Known ________ OR Produced Identification ✓
Type of Identification Produced Florida Driver's License
#: G421-630-56-099-0

KIMBERLY HIMES
Notary Public - State of Florida
My Comm. Expires Nov 16, 201
Commission # DD 909677
Bonded Through National Notary Ass

STATE OF FLORIDA
COUNTY OF Hillsborough

The foregoing instrument was acknowledged before me this 21st day of June, 2011, by WILLIAM J. COOK.

Lynne Anne Spina
Notary Public - State of Florida

Personally Known ✓ OR Produced Identification ________
Type of Identification Produced ________

NOTARY PUBLIC-STATE OF FLORIDA
Lynne Anne Spina
Commission #DD941173
Expires: DEC. 26, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

STATE OF FLORIDA
COUNTY OF Hillsborough

The foregoing instrument was acknowledged before me this 21st day of June, 2011, by RYAN CHRISTOPHER RODEMS.

Kimberly Himes
Notary Public - State of Florida

Personally Known ________ OR Produced Identification ✓
Type of Identification Produced Florida Driver's License
#: R352-723-66-444-0

KIMBERLY HIMES
Notary Public - State of Flo
My Comm. Expires Nov 16, 2
Commission # DD 90967
Bonded Through National Notary A

STATE OF FLORIDA
COUNTY OF Hillsborough

The foregoing instrument was acknowledged before me this 21st day of June, 2011, by CHRIS A. BARKER, individually and as officer for BARKER, RODEMS & COOK, P.A.

Lynne Anne Spina
Notary Public - State of Florida

Personally Known ✓ OR Produced Identification ________
Type of Identification Produced ________

NOTARY PUBLIC-STATE OF FLORIDA
Lynne Anne Spina
Commission #DD941173
Expires: DEC. 26, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

EXHIBIT 9

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

NEIL J. GILLESPIE,

Plaintiff,

-vs- Case No. 5:10-cv-503-Oc-10TBS

THIRTEENTH JUDICIAL CIRCUIT, FLORIDA, et al.,

Defendants.

---

**ORDER OF DISMISSAL**

The Plaintiff, proceeding *pro se*, has filed a Complaint against eleven (11) Defendants which, by its title, purports to state a claim under the Americans With Disabilities Act, 42 U.S.C. §§ 12131, *et seq.*, as well as various violations of his constitutional rights.[1] (Doc. 1). The Complaint is due to be dismissed for several reasons.

First, the Plaintiff has never effected service of summons on any of the Defendants, or complied with any of the requirements of Fed. R. Civ. P. 4. Second, the Complaint consists of 39 pages of rambling, largely incomprehensible allegations and fails to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a)(2). Third, the Complaint fails to allege the basis for the Court's subject-matter jurisdiction as required by Fed. R. Civ. P. 8(a)(1) – the parties are clearly all citizens of Florida and therefore not diverse, and the Plaintiff has not alleged any

---

[1]The Plaintiff voluntarily dismissed all claims against two (2) of the Defendants, Barker Rodems & Cook, P.A., and Ryan Christopher Rodems, on October 29, 2010 (Docs. 22, 25-26).

intelligible facts that would support a finding of the existence of federal question jurisdiction. See 28 U.S.C. §§ 1331-1332. And fourth, it appears that the Plaintiff has assigned all of his claims in this case to Defendants Ryan Christopher Rodems, Chris A. Barker, and William J. Cook, who have moved for voluntary dismissal with prejudice under Fed. R. Civ. P. 41(a)(2). (See Doc. 32).[2]

Accordingly, upon due consideration, it is hereby ORDERED that the Plaintiff's Complaint (Doc. 1) is DISMISSED. The Clerk is directed to enter judgment accordingly, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 27th day of February, 2012.

[signature]

UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record
Neil J. Gillespie, *pro se*

---

[2]The Court is aware that the Plaintiff has challenged the validity of the settlement agreement and assignment of claims on the grounds that it was procured by fraud, executed under duress, and without informed consent (Docs. 33, 39, 61, 63). However, the core of the settlement agreement containing the assignment involved the resolution of various matters pending in state court, and the settlement agreement itself appears to have been executed as part of a state court proceeding. (Doc. 32, 40). As such, the state court is the appropriate judicial body with the jurisdiction to resolve any disputes over the validity and/or enforceability of the settlement agreement and assignment. This Court will not (absent subject-matter jurisdiction) entertain any disputes within the purview of the settlement agreement unless and until the state court enters a judgment declaring the settlement agreement and assignment invalid. Cf. Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994).

EXHIBIT 10

No. 12-7747

| | |
|---|---|
| Title: | Neil J. Gillespie, Petitioner<br>v.<br>Thirteenth Judicial Circuit of Florida, et al. |
| Docketed: | December 14, 2012 |
| Linked with 12A215 | |
| Lower Ct: | United States Court of Appeals for the Eleventh Circuit |
| Case Nos.: | (12-11028-B) |
| Decision Date: | July 13, 2012<br>Rule 12.4 |

| ~~~Date~~~ | ~~~~~~~Proceedings and Orders~~~~~~~~~~~~~~~~~~~~ |
|---|---|
| Aug 13 2012 | Application (12A215) to extend the time to file a petition for a writ of certiorari from October 11, 2012 to December 10, 2012, submitted to Justice Thomas. |
| Sep 13 2012 | Application (12A215) granted by Justice Thomas extending the time to file until December 10, 2012. |
| Dec 10 2012 | Petition for a writ of certiorari and motion for leave to proceed in forma pauperis filed. (Response due January 14, 2013) |
| Dec 20 2012 | Waiver of right of respondents Rayan Christopher Rodems; and Barker, Rodems & Cook, P.A. to respond filed. |
| Jan 24 2013 | DISTRIBUTED for Conference of February 15, 2013. |
| Feb 13 2013 | Supplemental brief of petitioner Neil J. Gillespie filed. (Distributed) |
| Feb 19 2013 | Petition DENIED. |
| Mar 18 2013 | Petition for Rehearing filed. |
| Mar 27 2013 | DISTRIBUTED for Conference of April 12, 2013. |
| Apr 15 2013 | Rehearing DENIED. |

| ~~Name~~~~~~~~~~~~~~~~~~~~~ | ~~~~~~~Address~~~~~~~~~~~~~~~~~~ | ~~Phone~~~ |
|---|---|---|
| **Attorneys for Petitioner:** | | |
| Neil J. Gillespie | 8092 SW 115th Loop<br>Ocala, FL 34481<br>neilgillespie@mfi.net | (352) 854-7807 |
| Party name: Neil J. Gillespie | | |
| **Attorneys for Respondents:** | | |
| Ryan Christopher Rodems<br>Counsel of Record | Barker, Rodems & Cook, P.A.<br>501 East Kennedy Blvd., Suite 790<br>Tampa, FL 33602 | (813)-489-1001 |
| Party name: Rayan Christopher Rodems; and Barker, Rodems & Cook, P.A. | | |

Telephone Recording

This petition challenges the constitutionality of Fla. Stat. 934.01 et seq., Security of Communications, and its requirement for two-party consent to record telephone calls, which conflicts with federal one-party consent in 18 USC § 2511, and the laws of most states.

Gillespie purchased a $15 *Telephone Handset Recording Control* from Radio Shack on December 20, 2005 to record phone calls from doctors treating his Mother who was hospitalized. It was a form of enhanced note-taking. On March 3, 2006 Gillespie partially recorded a phone call from Mr. Rodems, who argued with Gillespie, and misquoted him in an affidavit Rodems submitted to the court March 6, 2006. Mr. Rodems requested a bailiff be present at an upcoming hearing, alleging a threat of violent physical attack in Judge Nielsen's chambers. A subsequent investigation by Tampa Police lawyer Kirby Rainesburger concluded February 22, 2010:

> I'm not suggesting that Mr. Rodems was right or accurate in representing to the court as an "exact quote" language that clearly was not an exact quote. I'm only concluding that his misrepresentation does not, in my judgment, rise to the level of criminal perjury. No further action is contemplated by this agency at this time.

Gillespie realized the need to record any future calls from Mr. Rodems to avoid a repeat of this problem, and found online and purchased a DynaMetric Call Saver kit that recorded and saved telephone phone calls to .wav files rather than clunky cassette tapes. He also installed a voice announcer: "This call is being recorded for quality assurance purposes". Gillespie relied on the holding of Royal Health Care Servs., Inc. v. Jefferson-Pilot Life Ins. Co.

On July 25, 2012 attorney Eugene P. Castagliuolo accused Gillespie of wrongfully recording a phone call June 14, 2011 where he admitted to mental problems. Mr. Castagliuolo threatened to sue Gillespie under chapter 934 Fla. Stat., and also threatened Michael Borseth, a court reporter who made the transcript. Gillespie reported Mr. Castagliuolo's threat to Florida

Attorney General Pam Bondi by letter August 1, 2012. Mr. Castagliuolo has been threatening Gillespie for the past year over a number of issues related to his representation of Gillespie at Mr. Rodems' deposition. Gillespie's letter to the Attorney General stated on page 2, in part:

> I believe Mr. Castagliuolo is misinformed about Chapter 934, Florida Statutes as interpreted by Royal Health Care Servs., Inc., 924 F.2d 215 (11th Cir. 1991). In my personal opinion Florida law prohibits the "interception" of certain communications, not all recording. The U.S. Eleventh Circuit Court of Appeals has held that because only interceptions made through an "electronic, mechanical or other device" are illegal under Florida law, telephones used in the ordinary course of business to record conversations do not violate the law. In other words, the telephone set "intercepts" the call, not the recording device, and the phone call is lawfully recorded after lawful interception. This is in contrast to a court-ordered wiretap where a call is "intercepted" before it reaches the telephone set. A land-line home office telephone, really any land-line home phone, is the type that intercepts a call before it is recorded.

On August 10, 2012 Gillespie received an email response from Samantha Santana of the Florida Attorney General's Office. Ms. Santana wrote in part:

> It appears that you provided a copy of your complaint about Attorney Eugene Castagliuolo to The Florida Bar, which is the appropriate agency to address this matter. Please follow up with The Bar directly for further assistance.

Gillespie submitted a Bar complaint the next day, August 11, 2012.

<u>Notice of Telephone Recording</u>

Gillespie provided notice[1] in Gillespie v. Barker, Rodems & Cook, 05-CA-7205, Plaintiff's Notice of Telephone Recording, December 30, 2009: (after Mr. Bauer's withdrawal)

> All calls on plaintiff's home office business telephone extension are recorded for quality assurance purposes pursuant to the business use exemption of Florida Statutes chapter 934, section 934.02(4)(a)(1) and the holding of *Royal Health Care Servs., Inc.* v. *Jeffirson-Pilot Life Ins. Co.,* 924 F.2d 215 (11th Cir. 1991).

---

[1] Notice of Mr. Rodems' Written Consent to Record, December 29, 2006.
The Florida Bar, by certified letter to Paul Hill, General Counsel, October 30, 2008.
The Tampa Police Department, during Mr. Rainesburger's investigation of Mr. Rodems.
Gainesville Florida Police Dept./City Attorney Thomas B. Arden, by letter November 4, 2011.
The Florida Attorney General, by letter August 1, 2012, and perhaps at other times.

Filing # 182766078 E-Filed 09/27/2023 11:44:34 PM

EXHIBIT 11

IN THE FIFTH DISTRICT COURT OF APPEAL
STATE OF FLORIDA

NEIL JOSEPH GILLESPIE,
Appellant,
v.

STATE OF FLORIDA,
Appellee.
______________________________/

CASE NO. 5D23-2005
LT CASE NOS. 2022-CF-1143
2019-CF-4193
2021-CF-0286

AMENDED NOTICE TO ATTORNEY GENERAL
RULE 9.900 (m) Notice of Constitutional Question

NOTICE IS GIVEN of compliance with the Florida Rules of Appellate Procedure 9.425, with respect to a constitutional challenge brought pursuant to section 934.03 of the Florida Statutes, *Interception of wire, oral, or electronic communications prohibited*. This Notice is amended to include the Appellant's affidavit regarding a jail Emessage received from his appointed counsel regarding the Constitutional Challenge.

The undersigned complied by serving Ashley Moody, Attorney General for the State of Florida, and William Gladson, State Attorney for the Fifth Judicial Circuit, with a waiver of service summons and complaint challenging the constitutionality of section 934.03 of the Florida Statutes, *Interception of wire, oral, or electronic communications prohibited*, United States District Court, Middle District of Florida, Ocala Division, Neil Joseph Gillespie v. State of Florida, case no. 5:21-CV-00416-PGB-PRL.

AMENDED NOTICE TO ATTORNEY GENERAL
RULE 9.900 (m) Notice of Constitutional Question

A Return of Service for Ashley Moody, Attorney General, is attached, and shows service November 5, 2021 @10:24 AM at 107 W Gaines Street, Tallahassee, FL 32399 by James Kady for ABC Legal.

A Return of Service for William Gladson, State Attorney for the Fifth Judicial Circuit, is attached, and shows service November 5, 2021 @8:17 AM at Marion County Judicial Center, 110 NW 1st Ave Ste 5000 Ocala, FL 34475-6614, by Kenneth Kelley for ABC Legal.

On April 4, 2022, United States District Judge Paul G. Byron entered the attached Order of Dismissal (DOC 23) without prejudice under the *Younger v. Harris* abstention doctrine, 401 U.S. 37 (1971), on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1264 n. 7 (11th Cir. 2004).

This Notice is amended with the attached affidavit of Neil J. Gillespie, the Appellant, regarding a jail Emessage received from his appointed counsel, Doyle Gary Lashley, Jr., that states in relevant part:

> 1. I am over the age of eighteen and competent to testify as to the facts and matters set forth below. I make this affidavit upon personal knowledge unless otherwise expressly stated.
>
> 2. On July 30, 2021, I was an incarcerated Defendant in the Marion County Jail since May 10, 2021 in three Marion County Florida criminal cases: 2019-CF-4193, 2020-CF-2417, and 2021-CF-286;

case 2020-CF-2417 was later *nolle prosequi* by the prosecutor on April 28, 2022.

3. Case 2019-CF-4193 and case 2021-CF-286 each alleged I violated Florida Statute 934.03, Interception and disclosure of wire, oral, or electronic communications prohibited.

4. On July 30, 2021, Circuit Judge Peter Brigham failed to inform me that he appointed on that day attorney Doyle Gary Lashley, Jr., FL Bar ID 86786, to represent me.

5. On August 11, 2021, while incarcerated, I filed a *pro se* Complaint in federal court for a Constitutional Challenge to Florida Statute 934.03, Interception and disclosure of wire, oral, or electronic communications prohibited: Neil Joseph Gillespie v. State of Florida, U.S. District Court, Middle District of Florida, Ocala Division, case no. 5:21-cv-00416-PGB-PRL.

6. On August 23, 2021 I learned that Judge Brigham had appointed Mr. Lashley to represent me. I called Mr. Lashley later that day from jail but he refused to take my phone call.

7. On August 24, 2021 I sent Mr. Lashley an Emessage from jail asking him in part to "see case 5:21-cv-00416, U.S. District Court, Middle District of Florida, Ocala Division".

8. On September 1, 2021 Mr. Lashley responded to me in jail with an Emessage Case Update that stated: "5:21-cv-00416 is not relevant to your criminal cases". A paper copy of Mr. Lashley's Emessage to me, as provided to me by the jail, is attached to this affidavit.

FURTHER AFFIANT SAYETH NOT.

The Appellant asserts that case 5:21-cv-00416, U.S. District Court, Middle District of Florida, Ocala Division, is relevant to his criminal cases, and contends the failure of Mr. Lashley to acknowledge that fact, or assist the Appellant with his defense thereto, is evidence of ineffective assistance

of counsel, and evidence of a denial of the Appellant's right to effective counsel under the Sixth Amendment of the U.S. Constitution.

As of today the pending state prosecution in 2019-CF-4193 and 2021-CF-286 has not provided the accused a fair and sufficient opportunity for vindication of his federal constitutional rights, contrary to the holding in the Order (DOC 23) of United States District Judge Paul G. Byron.

RESPECTFULLY SUBMITTED September 27, 2023.

NEIL JOSEPH GILLESPIE
2801 SW College Road, Ste 3
Ocala, FL 34474
Tel: 352-239-9037
Email: celticein@yahoo.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY I furnished the foregoing on September 27, 2023 to the names below on the Florida Portal.

Office of the Attorney General
444 Seabreeze Blvd.
5th Floor
Daytona Beach, FL 32118
CrimAppDAB@MyFloridaLegal.com

Marion County Clerk
Marion County Courthouse
P.O. Box 1030
Ocala, FL 34478-1030
Appeals@marioncountyclerk.org

Neil Joseph Gillespie

Court Stamp Here

| RETURN OF SERVICE | |
|---|---|
| Court: MIDDLE DISTRICT OF FLORIDA<br>OCALA DIVISION | |
| Plaintiff: NEIL JOSEPH GILLESPIE | Case #: 5:21-CV-00416-PGB-PRL |
| Defendant: STATE OF FLORIDA | Hearing Date: |
| Person to be Served: Ashley Moody, Florida State Attorney | Came to Hand Date/Time: 11/05/2021 10:18 AM |
| Manner of Service: Substitute | Service Date/Time: 11/05/2021 10:24 AM |
| Documents: SUMMONS;COMPLAINT | Service Fee: $75.00 |

On **11/05/2021** at:
**107 W Gaines Street, Tallahassee, FL 32399** I served **Ashley Moody, Florida State Attorney** by:

Personally leaving **1** copy(ies) of **SUMMONS and COMPLAINT** at his/her usual place of abode with **Regia Mompeller** , who is 15 years of age or older, a person residing therein of who confirmed the Defendant resides at the above address and informed that person of the contents thereof, with the date and hour of service endorsed thereon by me.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to Regia Mompeller who indicated they were the agency clerk, co-resident with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a black-haired white female contact 45-55 years of age, 5'6"-5'8" tall and weighing 140-160 lbs with glasses**

Notary not required pursuant to F.S. 92.525(2).

I am over 18 years of age, not a party to nor interested in this case and I have the proper authority in the jurisdiction where I effected service, pursuant to Florida Statute Chapter 48. Per U.S. Code § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| James Kady (signature) | 065 / 065 / 065 / 065 / 065 / 065 | 11/05/2021 |
|---|---|---|
| James Kady | Process Server ID | Date Executed |

Ref **REF-9086366**

abclegal **Neil Gillespie <celticein@yahoo.com>**

Tracking # **0078851100**

| RETURN OF SERVICE | Court Stamp Here |
|---|---|
| Court: MIDDLE DISTRICT OF FLORIDA OCALA DIVISION | |
| Plaintiff: NEIL JOSEPH GILLESPIE | Case #: 5:21-CV-00416-PGB-PRL |
| Defendant: STATE OF FLORIDA | Hearing Date: |
| Person to be Served: William McDonald Gladson, 5th Judicial District State Attorney | Came to Hand Date/Time: 11/04/2021 1:56 PM |
| Manner of Service: Substitute | Service Date/Time: 11/05/2021 8:17 AM |
| Documents: COMPLAINT;NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS | Service Fee: $75.00 |

On **11/05/2021** at:
**Marion County Judicial Center, 110 NW 1st Ave Ste 5000 Ocala, FL 34475-6614** I served **William McDonald Gladson, 5th Judicial District State Attorney** by:

Personally leaving **1** copy(ies) of **COMPLAINT and NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS** at his/her usual place of abode with **KATHY DELTORO, ADMINISTRATIVE ASSISTANT**, who is 15 years of age or older, a person residing therein of who confirmed the Defendant resides at the above address and informed that person of the contents thereof, with the date and hour of service endorsed thereon by me.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to KATHY DELTORO, ADMINISTRATIVE ASSISTANT who indicated they were the authorized employee with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white female contact 45-55 years of age, 5'4"-5'6" tall and weighing 140-160 lbs with glasses**

Notary not required pursuant to F.S. 92.525(2).

I am over 18 years of age, not a party to nor interested in this case and I have the proper authority in the jurisdiction where I effected service, pursuant to Florida Statute Chapter 48. Per U.S. Code § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| [signature] | 03-4-14 | 11/08/2021 |
|---|---|---|
| Kenneth Kelley | Process Server ID | Date Executed |

Ref **REF-9086366**

abclegal **Neil Gillespie <celticein@yahoo.com>**

Tracking # **0078957598**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**NEIL JOSEPH GILLESPIE,**

**Plaintiff,**

**v.** **Case No. 5:21-cv-416-PGB-PRL**

**STATE OF FLORIDA,**

**Defendant.**

---

**ORDER OF DISMISSAL**

Plaintiff, a pre-trial detainee at the Marion County Jail proceeding *pro se*, initiated this action by filing a civil rights complaint. (Doc. 1.) Plaintiff complains that the statute under which he is charged is unconstitutional. (*Id.*)

The case is currently before the Court for screening pursuant to the Prison Litigation Reform Act (PLRA). The PLRA requires the Court to dismiss a case if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A. The Court must liberally construe a *pro se* Plaintiff's allegations. *See Haines v. Kerner*, 404 U.S. 519 (1972); *see also Miller v. Stanmore*, 636 F. 2d 986, 988 (5th Cir. 1981).

This Court must abstain from passing on Plaintiff's claims pursuant to the *Younger v. Harris* abstention doctrine. 401 U.S. 37 (1971). "Under *Younger v. Harris* and its

progeny, federal district courts must refrain from enjoining pending state court proceedings except under special circumstances." *Old Republic Union Ins. Co. v. Tillis Trucking Co., Inc.*, 124 F.3d 1258, 1261 (11th Cir. 1997). "The policy of equitable restraint expressed in [*Younger*] . . . is founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1264 n. 7 (11th Cir. 2004).

The exceptions to *Younger* are very narrow and apply only if there is evidence of state proceedings motivated by bad faith, irreparable injury would occur, or there is no adequate alternative state forum where the plaintiff's constitutional issues can be raised. *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1263 (11th Cir. 2004). In his most recent filing, received by the Court on March 10, 2022, Plaintiff has communicated that his state criminal case is ongoing. (Doc. 22.) None of the *Younger* exceptions apply in the present case.

For the reasons stated herein, the complaint (Doc. 1) is **DISMISSED without prejudice**. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on April 4, 2022.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties
SA: OCAP-2

AFFIDAVIT OF NEIL J. GILLESPIE
Emessage of Doyle Gary Lashley, Jr., Esq.

STATE OF FLORIDA )
) SS.:
COUNTY OF MARION )

BEFORE ME, this day personally appeared NEIL J. GILLESPIE, who upon oath deposes upon personal knowledge and states:

1. I am over the age of eighteen and competent to testify as to the facts and matters set forth below. I make this affidavit upon personal knowledge unless otherwise expressly stated.

2. On July 30, 2021, I was an incarcerated Defendant in the Marion County Jail since May 10, 2021 in three Marion County Florida criminal cases: 2019-CF-4193, 2020-CF-2417, and 2021-CF-286; case 2020-CF-2417 was later *nolle prosequi* by the prosecutor on April 28, 2022.

3. Case 2019-CF-4193 and case 2021-CF-286 each alleged I violated Florida Statute 934.03, Interception and disclosure of wire, oral, or electronic communications prohibited.

4. On July 30, 2021, Circuit Judge Peter Brigham failed to inform me that he appointed on that day attorney Doyle Gary Lashley, Jr., FL Bar ID 86786, to represent me.

5. On August 11, 2021, while incarcerated, I filed a *pro se* Complaint in federal court for a Constitutional Challenge to Florida Statute 934.03, Interception and disclosure of wire, oral, or electronic communications prohibited: Neil Joseph Gillespie v. State of Florida, U.S. District Court, Middle District of Florida, Ocala Division, case no. 5:21-cv-00416-PGB-PRL.

6. On August 23, 2021 I learned that Judge Brigham had appointed Mr. Lashley to represent me. I called Mr. Lashley later that day from jail but he refused to take my phone call.

7. On August 24, 2021 I sent Mr. Lashley an Emessage from jail asking him in part to "see case 5:21-cv-00416, U.S. District Court, Middle District of Florida, Ocala Division".

AFFIDAVIT OF NEIL J. GILLESPIE
Emessage of Doyle Gary Lashley, Jr., Esq.

8. On September 1, 2021 Mr. Lashley responded to me in jail with an Emessage Case Update that stated: "5:21-cv-00416 is not relevant to your criminal cases". A paper copy of Mr. Lashley's Emessage to me, as provided to me by the jail, is attached to this affidavit.

FURTHER AFFIANT SAYETH NOT.

NEIL J. GILLESPIE

The foregoing instrument was acknowledged before me, this 15th day of September, 2023, by Neil J. Gillespie, who is personally known to me, or who has produced drivers license as identification and states that he is the person who made this affidavit and that its contents are truthful to the best of his knowledge.

SEAL

MELLISSA DHANRAJ
MY COMMISSION # HH 401205
EXPIRES: May 22, 2027

NOTARY PUBLIC

Mellissa Dhanraj
Print Name of Notary Public

My Commission Expires: May 22, 2027

**NEIL GILLESPIE 0255941 19087 MED;B;114B; ID:16104331 [P 1/1]**

*You have received a JPay letter, the fastest way to get mail*

From : DOYLE LASHLEY, CustomerID: 13303279
To : NEIL GILLESPIE, ID: 0255941
Date : 9/1/2021 2:13:46 AM EST, Letter ID: 16104331
Location : 19087
Housing : MED;B;114B;

**pre-paid stamp included**

Case Update

5:21-cv-00416 is not relevant to your criminal cases